324.     Plaintiff repeats and re-alleges each and every allegation contained herein as if fully stated under this count.

325.     Pursuant to CC 1689, (a) A contract may be rescinded if all the parties thereto consent.   (b) A party to a contract may rescind the contract in the following cases:   (1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party. (2) If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds. (3) If the consideration for the obligation of the rescinding party becomes entirely void from any cause. (4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause. (5) If the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault.   (6) If the public interest will be prejudiced by permitting the contract to stand.

326.     In this alternative claim, should Plaintiff's prior claims not succeed and should declaratory judgment not determine he was factually innocent, it is apparent his settlement agreements with Keck should be subject to rescission under California Code.

327.     In this case, any one of the six elements for rescission are easily met:

1) Plaintiff's consent was by mistake, in the case declaratory judgement determines no factual innocence was rendered,

2) The consideration failed as USC Keck never complied with the agreement, failing to update AAMC or USC Registrar records,

3) By definition, the consideration was voided if declaratory judgment failed,

4) The consideration, factual innocence, clearly failed in a material respect,

5) The contract was unlawful in that no consideration was granted to Plaintiff,

6) Public interest should not allow a settlement that clearly deprived Plaintiff of any consideration and lead to ten years of subsequent enforcement proceedings.

## COUNT XII

## CONSTRUCTIVE FRAUD

### (USC Keck, *Alternate Claim*)

328.    Plaintiff repeats and re-alleges each and every allegation contained herein as if fully stated under this count.

329.    Under California Code 1573, Constructive fraud consists 1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or, 2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud.

330.    In this alternative claim, should Plaintiff's prior claims not succeed and should declaratory judgment not determine he was factually innocent, it is apparent his settlement agreements with Keck would have been formed out of constructive fraud.

331.    The only consideration Plaintiff received in the Individual Settlement was that of "factual innocence."

332.    Keck would have gained an advantage in settling the case, if no consideration was afforded to Plaintiff in his settlement agreement(s).

333.     Keck had a duty to engage in a good faith "meeting of the minds" in forming two complex settlement contracts. Experts in education and medical training, Keck had a particular negotiation advantage in understanding the entire ramification of the settlement terms, and had a duty not to mislead Plaintiff, lead him on, coerce him, or misrepresent facts and/or intents of the parties.

334.     In short, Keck breached their duty in issuing a proposed settlement, and signing it, in which they knew Plaintiff would not be granted the consideration he believed he would receive.

335.     An appropriate remedy would be re-opening of the claims and facts, pre-2008, that had been subject to settlement, and/or allocation of damages. Public interest warrants re-opening of this case in particular, specifically, there exists a real public concern regarding USC's inability to curtail abuses of power and bribery. Ongoing federal and state investigations have revealed a disturbing incidence at USC & Keck confirming a pattern of existence of both of Plaintiff's original claims, i.e. abuse of power and bribery.

## COUNT XIII

### FRAUD

**(USC Keck)**

336.     Plaintiff repeats and re-alleges each and every allegation contained herein as if fully stated under this count. Under common law fraud, the following elements must be met: (1) a representation of fact; (2) its falsity; (3) its materiality; (4) the representer's knowledge of its falsity or ignorance of its truth; (5) the representer's intent that it should be acted upon by the person in the manner reasonably contemplated; (6) the injured party's ignorance of its falsity;

(7) the injured party's reliance on its truth; (8) the injured party's right to rely thereon; and (9) the injured party's consequent and proximate injury.

337.     Here, USC represented it would seal Plaintiff's disciplinary records, as the only consideration for the Individual Settlement agreement.

338.     The representation was false, as USC intentionally did not update its own transcripts with the Registrar, nor did it update clearinghouses such as AAMC where it had an obligation to.

339.     This was a material representation, as its truth or falsity would alter Plaintiff's ability to proceed with medical studies.

340.     USC had detailed knowledge of the requirements of medical training, and indeed knew it never complied with the Settlement Agreements. Counsel Meyer, in 2019, refused to mitigate damages and discuss resolution of the breach.

341.     USC intended Plaintiff to believe they would honor the commitment to seal the records, so that he would dismiss his lawsuit.

342.     Plaintiff, clearly, upheld his end for over a decade and believed USC, despite their improper motives. Plaintiff had every right to rely on a settlement agreement as a binding, valid and enforceable document.

343.     USC's failure to seal the records cause substantial losses to Plaintiff, as documented in this Complaint.

344.     In 2019, Plaintiff learned that USC concealed proof of a long-term breach dating back to 2007. Equitable estoppel prevents USC from raising a statutes of limitations in this case of fraudulent concealment and obstruction of process.

WHEREFORE, The Plaintiff respectfully requests that this Honorable Court:

A. Order damages in excess of $18,500,000 under the jurisdictional authority of this Court;

B. Award triple damages, under the so-called private attorney general provisions of RICO, costs and attorneys' fees;

C. Await the United States Attorney as a criminal prosecutor for RICO criminal violations;

D. Permit discovery of RICO civil and criminal claims to proceed pending appointment of the United States as party;

E. Issue a permanent injunction under USC 28 Section 1331 and/or Bivens restraining Defendant's Program Directors from blocking access to federal GME training and violating Plaintiff's Due Process rights;

F. Issue a permanent injunction upholding the factual innocence and annulment afforded to Plaintiff under the Settlement Agreements;

G. Issue a permanent injunction barring USC from enacting an intimidatory and harmful lifelong campus ban;

H. Issue a permanent injunction restraining the NH Board from issuing a false order, on the internet and national medical clearinghouse databases, that interferes with a federal court ordered settlement agreement.

I. Grant any further relief as may be fair and just under the All Writs Act.

1

**JURY DEMAND**

2

The Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules

3

of Civil Procedure.

4

5

6

Dated: September 13, 2019

7

Respectfully submitted,

8

9

10

/s/ Jeffrey Isaacs

11

Dr. Jeffrey Isaacs (*pro se*)

12

3553 West Chester Pk #177

13

Newtown Square, PA 19073

14

(212) 257-0737

15

jeffreydi@gmail.com

16

17

18

19

20

21

22

23

24

# M Gmail

---

## today's rule 26 (f) meeting

**Susan Christopher** <treyhobbs@sbcglobal.net>
To: jdi@alum.dartmouth.org, "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>

Wed, Apr 11, 2007 at 7:04 PM

Dear Mr. Isaacs,

Thank you for meeting with us today pursuant to rule 26(f) in an effort discuss initial disclosures, discovery, and settlement possibilities.

In summary of today's meeting, we have agreed to the following dates and items:

- In an effort to provide you with more time to gather your documents, witness lists, etc., we have stipulated that our initial disclosures do not have to be served on one another until May 11, 2007.  All required disclosures are listed in rule 26.

- We discussed settlement options.  Robin Dal Soglio will discuss your offer to dismiss all individual defendants upon USC's agreement to seal all of your disciplinary files with our client.  Further, you have requested that we speak with our client regarding a range of money that they would be agreeable to for settlement.  We have committed to providing you with a response to those requests by April 20, 2007.

- We will provide the first draft of our joint report and proposed discovery plan on May 11, 2007.  You will then have the opportunity to propose any changes to the report at that time.

If you have any questions or concerns, please contact us at any time.

Sincerely,

Susan Christopher, Attorney at Law

Dal Soglio & Martens LLP

 Gmail

## Third Amended Complaint

**rdalsoglio@dm-lawfirm.com** <rdalsoglio@dm-lawfirm.com>
To: jdi@alum.dartmouth.org

Fri, Jun 29, 2007 at 11:28 AM

June 29, 2007

<u>VIA FACSIMILE and E-MAIL</u>

Jeffrey David Isaacs
3553 West Chester Pike
PMB #177
Newtown Square, PA 19073
Facsimile: (310) 564-0432
Email: jdi@alum.dartmouth.org

    Re:  <u>Jeffrey David Isaacs v. USC Keck School of Medicine, et al.</u>

Dear Mr. Isaacs:

   We have received your Third Amended Complaint.

   Pursuant to FRCP 15(a), you are not permitted to file another amended complaint without first filing a motion seeking leave of the court to do so. Given that we have been served with no such motion, we demand that you withdraw this Third Amended Complaint. Please provide written confirmation no later than Monday, July 2, at 12:00 p.m. PDT, that you will be withdrawing the Third Amended Complaint (at least until such time as you receive leave of court to file it) and that Defendants therefore do not to file any response at this time.

   If you fail to withdraw the Third Amended Complaint, please be advised that Defendants will seek sanctions against you for their unnecessarily incurred legal fees.

   We look forward to your prompt response in this matter.

        Very truly yours,

        Robin D. Dal Soglio

Robin D. Dal Soglio
**Dal Soglio & Martens LLP**
27240 Turnberry Lane

19-cv-2011 Isaacs v. USC       Exhibits Page 2

Tracking Details

| Opened | |
|---|---|
| Opened | 10-Jan-06 at 19:13:38pm (UTC -5:00) - 1hour25mins20secs after sending |
| Location | Bethesda, Maryland, United States (86% likelihood) |
| Opened on | b12-arbiter-b.net.nih.gov (128.231.88.6:60446),fernwood-arbiter-b.net.nih.gov (128.231.88.7:64823) |
| Language | of recipient's PC: en-us (English/United States) |
| Browser | used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727) |
| Last log | No more activity after 10-Jan-06 at 19:19:24pm (UTC -5:00) - Log data indicates email was read for at least 5mins46secs (approx.) |

| Forwarded | |
|---|---|
| Opened | 10-Jan-06 at 19:36:18pm (UTC -5:00) - 1hour48mins after sending |
| Location | Los Angeles, California, United States (86% likelihood) |
| Opened on | zni100-1.hsc.usc.edu (128.125.75.181:3058) |
| Language | of recipient's PC: en-us (English/United States) |
| Browser | used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1) |
| Last log | No more activity after 10-Jan-06 at 19:37:46pm (UTC -5:00) - Log data indicates email was read for at least 1min28secs (approx.) |

| Forwarded | |
|---|---|
| Opened | 10-Jan-06 at 19:38:42pm (UTC -5:00) - 1hour50mins24secs after sending |
| Location | Los Angeles, California, United States (86% likelihood) |

-38-

No. CV-06-3338 GAF (Ex)
PLAINTIFF'S SECOND REQUEST
FOR PRODUCTION OF DOCUMENTS

Exhibits Page 3

| | |
|---|---|
| Opened on | zni100-1.hsc.usc.edu (128.125.75.181:3063) |
| Browser | used by recipient: Eudora |
| Last log | No more activity after 10-Jan-06 at 19:49:02pm (UTC -5:00)   -   Log data indicates email was open for at least 10mins20secs (approx.) |

**Re-opened (by earlier reader #1)**

| | |
|---|---|
| Opened | 10-Jan-06 at 21:49:36pm (UTC -5:00)   -   4hours1min18secs after sending |
| Location | Bethesda, Maryland, United States (86% likelihood) |
| Opened on | b12-arbiter-b.net.nih.gov (128.231.88.6:38907),fernwood-arbiter-b.net.nih.gov (128.231.88.7:34903) |
| Language | of recipient's PC: en-us (English/United States) |
| Browser | used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727) |
| Last log | No more activity after 10-Jan-06 at 21:57:10pm (UTC -5:00)   -   Log data indicates email was read for at least 7mins34secs (approx.) |

**Re-opened (by earlier reader #2)**

| | |
|---|---|
| Opened | 11-Jan-06 at 00:14:41am (UTC -5:00)   -   6hours26mins23secs after sending |
| Location | Los Angeles, California, United States (86% likelihood) |
| Opened on | vpn-052-038.usc.edu (128.125.52.38:4766) |
| Language | of recipient's PC: en-us (English/United States) |
| Browser | used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1) |

No. CV-06-3338 GAF (Ex)          PLAINTIFF'S SECOND REQUEST
                                 FOR PRODUCTION OF DOCUMENTS

19-cv-2011 Isaacs v. USC                              Exhibits Page 4

| | |
|---|---|
| **Re-Opened (by earlier reader #2)** | |
| Opened | 11-Jan-06 at 09:38:31am (UTC -5:00)  -  15hours50mins13secs after sending |
| Location | San Juan, Puerto Rico (86% likelihood) |
| Opened on | 207.166.116-82.isla.net (207.166.116.82:63526) |
| Language | of recipient's PC: en-us (English/United States) |
| Browser | used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1) |

| | |
|---|---|
| **Re-Opened (by earlier reader #2)** | |
| Opened | 11-Jan-06 at 16:12:42pm (UTC -5:00)  -  22hours24mins24secs after sending |
| Location | Los Angeles, California, United States (86% likelihood) |
| Opened on | zni100-1.hsc.usc.edu (128.125.75.181:4212) |
| Language | of recipient's PC: en-us (English/United States) |
| Browser | used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1) |
| Last log | No more activity after 11-Jan-06 at 16:15:04pm (UTC -5:00)  -  Log data indicates email was read for at least 2mins22secs (approx.) |

| | |
|---|---|
| **Re-opened (by earlier reader #3)** | |
| Opened | 11-Jan-06 at 16:15:07pm (UTC -5:00)  -  22hours26mins49secs after sending |
| Location | Los Angeles, California, United States (86% likelihood) |
| Opened on | zni100-1.hsc.usc.edu (128.125.75.181:4227) |
| Browser | used by recipient: Eudora |

-40-

| Forwarded | |
|---|---|
| Opened | 28-Feb-06 at 18:53:08pm (UTC -5:00)   -   49days1hour4mins50secs after sending |
| Location | Bethesda, Maryland, United States (86% likelihood) |
| Opened on | fernwood-arbiter-b.net.nih.gov (128.231.88.7:9652),b12-arbiter-b.net.nih.gov (128.231.88.6:10654) |
| Language | of recipient's PC: en-us (English/United States) |
| Browser | used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322) |

| Summary  -  as at 22-Sep-07 at 12:40:11pm (UTC -5:00)  -  619days18hours51mins53secs after sending | |
|---|---|
| Total | Opened 9 times by 4 readers |
| Reader #1 | Opened 2 times for 13mins20secs total |
| Reader #2 | Opened 4 times for 3mins50secs total |
| Reader #3 | Opened 2 times for 10mins20secs total |
| Reader #4 | Opened 1 time |

No. CV-06-3338 GAF (Ex)    PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

19-cv-2011 Isaacs v. USG    Exhibits Page 6

Gmail - Isaacs v. USC, et al.                                                                        7/2/19, 4:42 AM

 Gmail

## Isaacs v. USC, et al.

**Robin D. Dal Soglio** <rdalsoglio@dm-lawfirm.com>                Tue, Jul 3, 2007 at 6:37 PM
Reply-To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>
To: jdi@alum.dartmouth.org

Mr. Isaacs,

As you know, I represent the defendants in your lawsuit.  I have previously advised you that your communications to
any and all of the defendants, including the University of Southern California, need to be directed to me and
not directly to the University, including the President's office.  If you continue to direct communications regarding the
lawsuit directly to the University, we will seek appropriate sanctions.
I also am not sure what you mean by whether I represent Mr. Baughman "during discovery."  I have already appeared
on his behalf and, therefore, represent him for purposes of this litigation.

I have confirmed with the University that they are willing to enter into an agreement sealing your KSOM disciplinary
records in exchange for a complete dismissal of all individual defendants.  I will draft the appropriate documentation
and forward it to you for your review next week.

With respect to your offer to settle the rest of the lawsuit against the University for $645,000, the University rejects
the offer.  Moreover, as I mentioned to you on June 4, the University is not willing to discuss settlement in that
approximate range.

Sincerely,

Robin D. Dal Soglio

Robin D. Dal Soglio
**DAL SOGLIO & MARTENS LLP**
27240 Turnberry Lane, Suite 200
Valencia, CA  91355
Tel: (661) 362-0736
Fax: (661) 244-4942

19-cv-2011 Isaacs v. USC                          Exhibits Page 7

 **Gmail**

## Re: Dismissal of CV-06-3338

**Robin D. Dal Soglio** <rdalsoglio@dm-lawfirm.com>
Reply-To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>
To: jdi@alum.dartmouth.org

Wed, Jul 11, 2007 at 5:15 PM

Mr. Isaacs:

As discussed, I will convey this offer to my clients and get back to you.

Robin

----- Original Message -----
**From:** Jeffrey D. Isaacs 99
**To:** rdalsoglio@dm-lawfirm.com
**Sent:** Wednesday, July 11, 2007 1:52 PM
**Subject:** Dismissal of CV-06-3338

Dear Ms. Dal Soglio:
As we discussed, I would like to make a global settlement offer to your client. I hope your client shares my interest in getting rid of this action.
Upon acceptance of this offer, your client will both clear and seal my record, and reimburse me $100,000 for tuition and legal expenses. Subsequently and promptly, I will provide you with written authorization to file in the USDC dropping this case. By completely sealing and clearing my record at USC, your client will be removing any burden on me to disclose these events in future career endeavors. I believe this makes everyone better off. I have been fortunate enough to receive a second chance; to pursue this opportunity is only possible with both the financial liquidity and the clear record provided by this settlement. I feel that whatever happened at USC was a 'runaway train' and hope your client can arrive at the same rational opinion.
This is a formal, active offer and expires at 5 PM PST Thursday, July 12th. This offer is privileged and confidential under all applicable laws with regards to admission of evidence or settlement offers. Both parties agree to accept reasonable, standard terms relating to confidentiality and non-disclosure, to be drafted after acceptance of this offer.
Regards,
Jeffrey Isaacs

# M Gmail

---

## Re: Settlement follow-up

---

**Robin D. Dal Soglio** <rdalsoglio@dm-lawfirm.com>                     Tue, Jul 17, 2007 at 5:50 PM
Reply-To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>
To: Jeffrey.Isaacs@alumni.insead.edu

Mr. Isaacs,

Attached please find the proposed settlement documentation regarding the release of the individual defendants.  If the document is acceptable, please sign and return the original to me.  Otherwise, let me know if you have questions or comments.  I look forward to hearing from you.

Robin Dal Soglio

Robin D. Dal Soglio
**DAL SOGLIO & MARTENS LLP**
27240 Turnberry Lane, Suite 200
Valencia, CA  91355
Tel: (661) 362-0736
Fax: (661) 244-4942

> ----- Original Message -----
> **From:** Jeffrey D. Isaacs 99
> **To:** rdalsoglio@dm-lawfirm.com
> **Sent:** Monday, July 16, 2007 9:36 AM
> **Subject:** Settlement follow-up
>
> Dear Ms. Dal Soglio:
> Could you please confirm via email or fax the status of the partial settlement papers you said you were sending on July 3rd? Also, please confirm that your client has seen and has rejected the most recent global settlement offer. Again, please confirm this by email or fax as soon as possible.
> Regards,
> Jeffrey Isaacs

---

📄 **Isaacs Settlement Agreement re Individual Defs.DOC**
59K



## Re: CV 06-3338 remaining claims

**Robin D. Dal Soglio** <rdalsoglio@dm-lawfirm.com>                Tue, Sep 4, 2007 at 1:50 PM
Reply-To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>
To: JDI <jeffreydi@gmail.com>, treyhobbs@sbcglobal.net

Mr. Isaacs:

I am in receipt of the signed Settlement Agreement for your claims against the individual defendants.  I will prepare the proper Dismissal form for your signature, and then I can file it for you if you wish.  I will forward it shortly.

I will discuss your offer to mediate the remaining claims with my client and get back to you.

Robin Dal Soglio

Robin D. Dal Soglio
**DAL SOGLIO & MARTENS LLP**
27240 Turnberry Lane, Suite 200
Valencia, CA  91355
Tel: (661) 362-0736
Fax: (661) 244-4942

----- Original Message -----
**From:** JDI
**To:** rdalsoglio@dm-lawfirm.com ; treyhobbs@sbcglobal.net
**Sent:** Sunday, September 02, 2007 1:30 PM
**Subject:** CV 06-3338 remaining claims

Dear Ms Dal Soglio:

I would like to know if your client is still interested in mediation for the remaining claim against USC. You had mentioned this as a possibility over the phone a month or two ago. My goal for the mediation would be to settle at an expungement, withdrawal, or withdrawal for medical reasons. I would be willing to defer discovery,  if the Court allows this, while a mediation conference is pending. Please let me know as soon as possible. I also left you voicemail regarding the papers for dismissal with prejudice re the settlement agreement. Please let me know if you will be providing these soon, otherwise, it seems that I would be able to file them on my own unless you indicate otherwise.

Regards,
Jeffrey Isaacs

**ReadNotify.com E-mail Posting-Time Digital Certificate.**  On Sun, 02 Sep 2007 20:30:51 GMT the above e-mail arrived from jeffreydi@gmail.com for rdalsoglio@dm-lawfirm.com, was assigned sequence number #7027937 and ReadNotify reference **e1591c84c4efad714befad461ddbe65e**, digitally signed, and immediately dispatched. NB: This certificate irrevocably links the body and headers of this email to the date and time they were dispatched. The following signature is now published online; to view it, verify it, or for more information, please visit www.ReadNotify.com.

-----BEGIN PGP SIGNATURE-----
Version: GnuPG v1.0.6 (ReadNotify.com TimeStamp Server v2.2)

7/2/19, 5:43 AM

 Gmail

---

## Re: Dismissal of CV-06-3338

---

**Robin D. Dal Soglio** <rdalsoglio@dm-lawfirm.com>            Wed, Jul 11, 2007 at 6:02 PM
Reply-To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>
To: jdi@alum.dartmouth.org
Cc: Susan Christopher <dmattorney@sbcglobal.net>

Mr. Isaacs,

I have communicated your most recent offer to USC and, as I expected, they have rejected it. They also are not interested in making a counter-offer at this time, as it appears that we have vastly diverging views about the value of your case. The defendants and I remain confident that we will prevail in this matter.

Sincerely,
Robin D. Dal Soglio

Robin D. Dal Soglio
**DAL SOGLIO & MARTENS LLP**
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
Tel: (661) 362-0736
Fax: (661) 244-4942

> ----- Original Message -----
> **From:** Jeffrey D. Isaacs 99
> **To:** rdalsoglio@dm-lawfirm.com
> **Sent:** Wednesday, July 11, 2007 1:52 PM
> **Subject:** Dismissal of CV-06-3338
>
> Dear Ms. Dal Soglio:
> As we discussed, I would like to make a global settlement offer to your client. I hope your client shares my interest in getting rid of this action.
> Upon acceptance of this offer, your client will both clear and seal my record, and reimburse me $100,000 for tuition and legal expenses. Subsequently and promptly, I will provide you with written authorization to file in the USDC dropping this case. By completely sealing and clearing my record at USC, your client will be removing any burden on me to disclose these events in future career endeavors. I believe this makes everyone better off. I have been fortunate enough to receive a second chance; to pursue this opportunity is only possible with both the financial liquidity and the clear record provided by this settlement. I feel that whatever happened at USC was a 'runaway train' and hope your client can arrive at the same rational opinion.
> This is a formal, active offer and expires at 5 PM PST Thursday, July 12th. This offer is privileged and confidential under all applicable laws with regards to admission of evidence or settlement offers. Both parties agree to accept reasonable, standard terms relating to confidentiality and non-disclosure, to be drafted after acceptance of this offer.
> Regards,
> Jeffrey Isaacs

19-cv-2011 Isaacs v. USC                        Exhibits Page 11

 **Gmail**

## (no subject)

**JDI** <jeffreydi@gmail.com>                                                    Wed, Oct 17, 2007 at 7:14 PM
To: MPayne@phslegal.com

Hi Michael,

Just to update you, I replied to the USC lawyer about mediation and she's ignored the email and two phone calls. I suspect that she may just be offering mediation to ride out the clock on discovery.

To summarize, I think it would be helpful to have an attorney step in at this point to:

- Get a copy of the settlement agreement they seem to be dishonoring, as a prerequisite to any mediation talks

- See if the mediation options they propose are in good faith

- Get a "stay" on discovery if mediation is going to proceed, if possible

If they don't seem to be cooperative, then I guess I'd want to know what options there are with the court and subpoenas, etc

Thanks,
Jeff

19-cv-2011 Isaacs v. USC                                            Exhibits Page 12

7/2/19, 4:05 AM

 Gmail

## mediation

**JDI** <jeffreydi@gmail.com>                                    Fri, Oct 26, 2007 at 9:25 AM
To: MPayne@phslegal.com

Hello Michael,

Yesterday Robin Dal Soglio's (USC's lawyer) office called me to set up mediation. However, they apparently have chosen a mediator, whereas initially they told me they would suggest a few. I had mentioned using the court's mediation program, and they seemed to ignore this. not sure if you have wrapped up the case you were working on - when you have a chance i would appreciate your input on how i should proceed with this.

Thanks,
Jeff

19-cv-2011 Isaacs v. USC                              Exhibits Page 13

## Re: mediation  ⟫

**jeffreydi@gmail.com**
to Michael ▾

Nov 7, 2007, 9:07 AM    ☆    ↩

Hi Michael,

The total loans USC authorized the bank to issue to me as "cost of attendance" were $63,064. These were three separate loans, one at no interest ($8500), one at 4.5% ($30,000) and the remainder was a private loan at 9%

The tuition for the year I attended was $40,322.

I was also thinking about USC's claim that expunging my record might be logistically difficult. I wanted to tell you that when I went out to the Court for the case scheduling conference, the judge almost laughed when he heard all I wanted was my record cleared. I don't know if the court can play a role in a possible settlement, but if they can, it would seem that this judge would have no problem signing off on an order that clears/expunges my record. So if this is right, it would seem an expungement and refund of tuition should be rather simple for USC - if they want to settle.

Regards,
Jeff

 Gmail

## RE: mediation

**Michael Payne** <MPayne@phslegal.com>                    Wed, Oct 31, 2007 at 3:43 PM
To: JDI <jeffreydi@gmail.com>
Cc: wlisaacs@aol.com

Jeff -

I just had a lengthy discussion with Robin and she seemed relieved to be
speaking to an attorney (she meant no offense to you).  We discussed the
case in general terms and I reminded her that there are two sides to
every story.  I further pointed out that, in my view, the University
handled the situation very badly.

In any event, without attempting to recall the entire conversation, I
told her that I would represent you at the mediation, but that a
negotiated settlement short of mediation was preferable.  She agreed and
asked me what I had in mind.  I told her that I would recommend that you
accept a settlement that expunged your record of admission and
attendance, together with a refund of your tuition.  Her reply was that
she could probably get the University to accept your voluntary
withdrawal, but she thought that the University would not agree to any
significant monetary payment.

I told her that a voluntary withdrawal was something that could be
discussed, but that an expungement was what I was really after.  I also
told her that I saw no reason why such a wealthy University would need
to retain your money under either a withdrawal or an expungement
arrangement.  She promised to run it by the University and she explained
that getting anything approved in the University's administrative system
is difficult.  In fact, she stated that she would only pursue the
expungement idea if I assured her that it would lead to a settlement.  I
gave her that assurance, provided that the tuition was refunded as well.

We decided to put the mediation aside for the moment, and I also told
her that she did not need to respond to any further discovery requests
at this time.  Is there a Court ordered discovery deadline?  If so,
please let me know and I will arrange for a stay pending the completion
of settlement negotiations.

I also asked her for a copy of the settlement agreement and she promised
to e-mail it to me.  She swears that she has already mailed it to you
three times.  What address does she have for you?

I also need to know how much you paid to the University, whether by
direct payment or loan.  If we can get all or part of that back, coupled
with an expungement of your record, I would recommend that you accept
it.  Short of that, since it appears that the disciplinary record has
been sealed, a voluntary withdrawal would also probably work.

19-cv-2011 Isaacs v. USC                              Exhibits Page 15

 Gmail

## RE: Isaacs v. USC

**Michael Payne** <MPayne@phslegal.com>                                          Mon, Dec 31, 2007 at 11:53 AM
To: rdalsoglio@dm-lawfirm.com

Hi Robin -

Thank you for responding and I am sorry about all of the problems you have been having lately.  I will be back in my office on Friday, the 4th, and I would like to speak to you at that time.  It seems to me that a wealthy university like USC shouldn't need to retain money for schooling that it did not provide.  Please remember that Jeff did not attend any second semester classes.  There is a punitive aspect to the University's retention of money under those circumstances that is not warranted.

The "cleaning up" of the record is important, as well, although I would like to go even further than a voluntary withdrawal.  In any event, these are things that we can discuss on Friday.  If a mediator can help to bring this to a conclusion more quickly, I am certainly willing to consider that possibility.  I really believe that this is a case that can be settled with just a little bit more flexibility on the University's part.

Michael

**From:** rdalsoglio@dm-lawfirm.com [mailto:rdalsoglio@dm-lawfirm.com]
**Sent:** Mon 12/31/2007 10:55 AM
**To:** Michael Payne
**Cc:** rdalsoglio@dm-lawfirm.com
**Subject:** Re: Isaacs v. USC

Hi Michael -- I'm sorry that I haven't gotten back to you sooner.  Please be assured that I, too, have approached our discussions with sincere intentions.  It has simply been an unusually busy year-end, together with my daughter's accident and being evacuated from my home due to fires .... I do appreciate your patience.  I am out of the office until this Thursday, Jan. 3, but am checking in remotely this morning.

I have spoken to the client but at this time their position remains unchanged.  They are willing to work with Mr. Isaacs towards a resolution that includes some mechanism to "clean up" his University record, i.e., perhaps to indicate a voluntary withdrawal.  But they are not willing to make any substantial monetary payment.  We obviously disagree that the University's conduct was outrageous, but are confident that it was imminently reasonable.  If you think that an in-person mediation might be useful to explain your position, USC is willing to consider it.

As for the discovery deadline, I am away from the office until Thursday and don't have the deadlines in mind.  I will have to check the file and my office calendar when I return to work on Thursday.  Perhaps we can speak on Thursday afternoon or Friday morning, and address your concerns at that time.  Are you available?

Robin

-----Original Message-----
From: Michael Payne [mailto:MPayne@phslegal.com]
Sent: Monday, December 31, 2007 01:35 AM
To: 'Robin D. Dal Soglio'
Subject: RE: Isaacs v. USC

Robin -

In your last message you stated that you would have a response to me by Monday, December 31, but I have not heard from you. I approached you with a settlement offer in good faith and I hope that I did not misjudge your intentions. You sounded sincere in your willingness to work toward a resolution. Your silence is both puzzling and troubling, particularly since you ignored my comment about the discovery deadline in your December 11 response.

If this case cannot be settled along the lines I suggested, I think that the University will be making a mistake. The more I learn about what happened, the more outrageous the University's conduct becomes. If the only alternative is to take this case to trial, so be it.

I would appreciate a response this week and I wish you a Happy New Year.

Michael

---

From: Robin D. Dal Soglio [mailto:rdalsoglio@dm-lawfirm.com]
Sent: Thu 12/13/2007 6:30 PM
To: Michael Payne
Subject: Re: Isaacs v. USC

Michael -- I am meeting with the client tomorrow and will have a response to you by Monday. Robin

----- Original Message -----
From: Michael Payne <mailto:MPayne@phslegal.com>
To: Robin D. Dal Soglio <mailto:rdalsoglio@dm-lawfirm.com>
Sent: Tuesday, December 11, 2007 12:11 PM
Subject: RE: Isaacs v. USC

Robin -

I hope that your daughter is okay and I certainly understand if you have been occupied with more important matters. As you know, there is a fast approaching discovery deadline. If we cannot settle the case, I need to associate with local counsel in order to proceed. I had hoped that this would not be necessary given my client's very reasonable settlement offer.

Please let me know where we stand on this. If the case is not going to be settled, I need to know whether you will join in a request for an extension of the discovery deadline.

Michael

---

From: Robin D. Dal Soglio [mailto:rdalsoglio@dm-lawfirm.com]
Sent: Monday, November 26, 2007 7:53 PM
To: Michael Payne
Subject: Re: Isaacs v. USC


Michael -- I do apologize for the delay in getting back to you. My 7-year-old daughter was involved in a very serious accident on Halloween, and I have not had the chance to follow up on this. I will speak with my client and get back to you this week. Robin

----- Original Message -----

From: Michael Payne <mailto:MPayne@phslegal.com>

To: Robin D. Dal Soglio <mailto:rdalsoglio@dm-lawfirm.com>

Sent: Tuesday, November 20, 2007 11:43 AM

Subject: FW: Isaacs v. USC


Robin -


Would you please let me know the status of the settlement offer I made on November 7? I understand that there is a discovery cutoff at the end of December.


Michael

_____

From: Michael Payne
Sent: Wednesday, November 07, 2007 11:37 AM
To: 'Robin D. Dal Soglio'
Subject: RE: Isaacs v. USC


Robin -


As a follow-up to our recent conversation about how the case can be settled, I have learned that the total loans USC authorized the bank to issue to Jeff as "cost of attendance" amounted to $63,064. There were three separate loans, one at no interest ($8500), one at 4.5% ($30,000) and the remainder was a private loan at 9%. The tuition for the first year was $40,322.

7/2/19, 4:13 AM

In order to settle the case, I propose that the University refund the tuition in the amount of $40,322, and Jeff will absorb the $23,000 in additional costs. This should not be too difficult for the University to justify since Jeff was not even permitted to attend any of the second semester classes. It seems to me that the University will survive without Jeff's money.

A refund is also consistent with the second part of the offer - that Jeff's record of admission and attendance be expunged. In other words, if Jeff never attended there would obviously not have been a payment of tuition. Given everything that happened, and the fact that each side must bear some responsibility, that would seem to me to be a fair result. I also believe that if the University is reluctant to agree to expunge the record, the Court might be willing to assist us by issuing an order in connection with a settlement. In other words, if the Judge understands that the case can be resolved by expunging the record and by issuing a tuition refund, my guess is that he will do whatever he can to facilitate the settlement.

In any event, you appropriately asked me whether the case could actually be settled on this basis given the considerable effort it will take on your part to obtain the University's approval. I want to confirm that my client will agree to a settlement on the terms I have proposed.

I appreciate your courtesy and please feel free to contact me for further discussion.

Michael

---

From: Robin D. Dal Soglio [mailto:rdalsoglio@dm-lawfirm.com]
Sent: Wednesday, October 31, 2007 5:44 PM
To: Michael Payne
Subject: Isaacs v. USC

Hi Michael,

It was a pleasure speaking with you. I do look forward to working with you towards a resolution of this matter in the best interests of all parties. Towards that end, attached please find a copy of the fully executed Settlement Agreement, which led to the dismissal of the individual defendants.

Robin

7/2/19, 4:16 AM

 Gmail

## Discussion with Robin

**Michael Payne** <MPayne@phslegal.com>                               Tue, Jan 8, 2008 at 4:47 PM
To: JDI <jeffreydi@gmail.com>
Cc: webhost@webhosths.com

Jeff –

USC is not willing to consider a refund of any amount and they have concluded that they cannot, as a matter of University policy or educational ethics, expunge a record. They are willing to change your record to reflect a voluntary withdrawal, but that would be apparently be effective at the end of the first semester. Robin is having a difficult time understanding why an expungement is significantly different from a voluntary withdrawal and I, of course, am not in a position to make it clear to her. Robin's position is that if you voluntarily withdraw from the University, and you don't tell anyone that you attended the University, there will never be a reason for anyone to check with USC. She may be correct.

The University is willing to participate in a mediation where the issue of a tuition refund would still be on the table, and the offer of a voluntary withdrawal would remain on the table, as well. Although I can make a passionate and well-reasoned presentation on your behalf, there is no way of telling how a mediator will react to the University's presentation, which will undoubtedly not cast your actions in the most favorable light.

The more I think about it, if you decide to mediate we should do it in person. It will be difficult for me to do the kind of wheeling and dealing I would need to do with the mediator on the telephone. The issue becomes whether you believe that you can do that much better as the result of a mediation than what is being offered now. Of course, you can proceed with litigation, but then you will need to devote a number of trips to LA and an enormous time to an effort that could end up in a loss of the case. That would definitely be worse than what is being offered.

My advice is to either take the offer of a voluntary withdrawal and put this unhappy matter behind you, or go for the mediation. I can help you with and represent you at the mediation, but since I am not licensed to practice law In California I cannot take over the litigation. In any event, I think that litigating the case any further would be a big mistake. This is the kind of a decision that you must make without emotion and in consideration of everything that is involved. If the fact that you failed to disclose that you attended USC could come back to haunt you later, that problem will remain even if you win the lawsuit (i.e., you will still have failed to disclose that you attended USC). It may actually be easier to explain why you failed to disclose you attendance at USC if you voluntarily withdrew. You could simply say that it was an unhappy experience, that you made a mistake, and that you wanted to put it behind you.

Please let me know what you would like to do. I feel that my discussions with Robin have been exhausted.

19-cv-2011 Isaacs v. USC                               Exhibits Page 20

# M Gmail

## FW: Isaacs v. USC

**Michael Payne** <MPayne@phslegal.com>                    Tue, Jan 29, 2008 at 1:46 PM
To: jeffreydi@gmail.com
Cc: wlisaacs@aol.com

**From:** Robin D. Dal Soglio [mailto:rdalsoglio@dm-lawfirm.com]
**Sent:** Tuesday, January 29, 2008 1:40 PM
**To:** Michael Payne
**Subject:** Re: Isaacs v. USC

Michael --

Unfortunately, after extensive discussion and research, the University has determined that it is not able to alter school records along the lines of our discussions. However, pursuant to the earlier settlement with Mr. Isaacs in connection with his dismissal of the individual defendants, USC will not release any information concerning Mr. Isaacs' disciplinary or academic record without written authorization from him.

In a showing of good faith, the USC is willing to offer Mr. Isaacs $5,000 for a complete dismissal of the lawsuit, with prejudice, and a full general release.

Robin

----- Original Message -----

**From:** Michael Payne

**To:** Robin D. Dal Soglio

**Sent:** Tuesday, January 29, 2008 7:14 AM

**Subject:** RE: Isaacs v. USC

7/2/19, 4:20 AM

Robin –

Your failure to follow-up on our settlement discussions, as you promised to do, and your failure to even reply to my e-mail message below are discourteous and unprofessional. I apparently misjudged your intentions and your willingness to negotiate a reasonable settlement. I thought that I could bring the litigation to an amicable conclusion, but it is obviously impossible for me to do so without the cooperation of opposing counsel.

The settlement offer I made in our recent discussion will be off the table at the end of this week, and the litigation will then resume. I assume that you will join Jeff in a motion to extend discovery and that you will respond to his outstanding discovery requests in an expeditious manner.

Michael

**From:** Michael Payne
**Sent:** Wednesday, January 23, 2008 4:06 PM
**To:** 'Robin D. Dal Soglio'
**Subject:** Isaacs v. USC

Robin –

I really have tried to be reasonable and to work with you to achieve a reasonable resolution of this case. Unfortunately, your lack of response, even when it seemed like there was no impediment to a settlement, is mystifying. I anticipated receiving word from you after our last discussion where a minor point, the granting of a voluntary withdrawal after the first semester, was the last remaining issue. Of course, the possibility of mediating the issue of a tuition refund is also on the table.

At this point, I would appreciate if you would tell me, once and for all, whether the settlement I have proposed is acceptable. If it is not, the outstanding discovery request must be responded to and the litigation must go forward. If that happens, since I am not admitted to practice in California, my client will either continue to go forward pro se, or local counsel will be engaged. Does the University really want this case to go forward when it can be settled so easily?

I would appreciate a timely response.

Michael

Gmail - Isaacs v. USC

7/2/19, 4:22 AM

# M Gmail

## Isaacs v. USC

**Michael Payne** <MPayne@phslegal.com>
To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>

Wed, Jan 30, 2008 at 4:24 PM

Robin –

I interpret your failure to respond to my message yesterday as a refusal to negotiate any further.  Quite frankly, I now understand why Jeff was so frustrated by your slow and untimely responses.  If that is simply your negotiating style when dealing with pro se litigants or opposing counsel, it is unprofessional.  In an event, I am withdrawing from any further involvement.  The only thing that remains is that Jeff needs to know whether you will join in a request for an extension of time to complete discovery.

If you do not respond positively, or promptly, I will assist Jeff to present the matter to the Court.

Michael

**From:** Michael Payne
**Sent:** Tuesday, January 29, 2008 4:12 PM
**To:** 'Robin D. Dal Soglio'
**Subject:** RE: Isaacs v. USC

Robin –

I am a little confused.  I interpret your message to mean that the University will not fix a date of withdrawal at the end of the first semester, as I suggested.  Are you still offering a "voluntary withdrawal?"  If so, might it be possible to settle the case based upon a voluntary withdrawal coupled with mediation on the tuition refund issue?  I don't want to go back to Jeff without a full, and clear, understanding of what the University is actually offering.

You need to give me something to work with if this case has any chance of settling.

 Gmail

## Re: CV 06-3338 remaining claims

**Jeffrey D. Isaacs** <jeffrey.isaacs@alumni.insead.edu>                    Wed, Jan 30, 2008 at 5:50 PM
To: rdalsoglio@dm-lawfirm.com.certified.readnotify.com, Michael Payne <MPayne@phslegal.com>

Ms. Dal Soglio:

On September 5th, you confirmed that you would look into the possibility of mediating this case. There was no ambiguity (see attached email) that such a mediation session would concern further cleaning my academic record, as opposed to monetary settlement. In mid-October, you answered in the affirmative regarding this mediation, and asked to schedule it along with my local attorney, Michael Payne. In the meantime, on September 22nd you were served via a digitally encrypted and tracked PDF file containing the Second Request for Documents. Previously, you consented to this form of electronic service. Furthermore, you signed for the paper courtesy copy I sent to your Valencia office. You have not responded to the Second Request for Documents, and you recently made a settlement offer (which baffles me) of $5000, which was against our prior agreement to mediate a withdrawal or expungement.

When Mr. Payne contacted you in late October to arrange the mediation, you were already in default on responding to my discovery request. Believing your intent to schedule this mediation was sincere, I didn't raise the discovery issue with you. Obviously this would be a moot point, had the case settled.

It also appears you made a verbal offer last week to Mr Payne to permit a voluntary withdrawal, then retracted this offer?

Where is your response to my second request for documents? Given that this is clearly your mistake and/or deceptive strategy, that is, the mediation with a withdrawal on the table that you promised never existed, will you draft the paperwork for an enlargement of time? Your deadline for the discovery production is seriously past due, and this is certainly not the first time you have ignored the Federal Rules.

Please respond by February 1st, in full to my concerns to avoid involvement with the Court. By in full, I mean your written and complete response to the past-due Second document request, along with a stipulation that you will draft the enlargement of time motion, which is necessary due to either your intentional misrepresentation or unintentional 'mistake.'

Regards,
Jeffrey D. Isaacs

On Sep 5, 2007 3:20 PM, Robin D. Dal Soglio <rdalsoglio@dm-lawfirm.com> wrote:

 **Gmail**

---

## Re: Settlement Offer

---

**JDI** <jeffrey.isaacs.wg03@wharton.upenn.edu>
To: rdalsoglio@dm-lawfirm.com.certified.readnotify.com

Fri, Mar 14, 2008 at 6:09 PM

That is correct.  The terms of such a settlement would represent a
total and full cancellation of tuition consideration previously paid,
less reasonable admin charges.

As part of this agreement, I would like a statement (which can be
sealed) that neither party is required to disclose my enrollment at
USC because the enrollment contract was effectively cancelled.  This
is the slight variation from the currently sealed record that permits
me to accept a settlement around $20,000 ,  as it reduces/eliminates
potential career/financial risk down the road.

Hence, this settlement would not seek any revised
transcripts/withdrawal/expungement, it would simply be an agreement of
full non-disclosure and tuition consideration cancellation.



On Fri, Mar 14, 2008 at 5:38 PM, Robin Dal Soglio
<rdalsoglio@dm-lawfirm.com> wrote:
>
>
>
> Dear Mr. Isaacs:
>
>
>
> I want to make sure I understand before I communicate your offer to USC.
> Are you suggesting that the settlement would be somehow referred to as a
> "refund of tuition, less administrative charges."  The documentation would
> then include an agreement between the parties as to what the net amount of
> the settlement would be.  Is that what you are saying?
>
>
>
> Robin D. Dal Soglio
>
>
>
>
>
> From: jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] On Behalf Of JDI
> Sent: Friday, March 14, 2008 12:43 PM
>  To: rdalsoglio@dm-lawfirm.com

> Subject: Re: Settlement Offer
>
>
>
>
>
>
> Ms Dal Soglio:
>
>
>
>
>
> No, I did receive and understand your email yesterday. Perhaps you
>
>
> didn't understand that I was proposing a lower Net Settlement amount,
>
>
> after reimbursement of administrative expenses for USC. In other
>
>
> words, this is an accounting mechanism whereby USC would refund my
>
>
> tuition, but only pay a settlement in the $10-$20,000 range. This
>
>
> would seemingly satisfy the requirements of all parties (i.e. limiting
>
>
> disclosure liability and simultaneously settling the case in a lower
>
>
> range of $20,000 or less.
>
>
>
>
>
> Regards
>
>
> Jeffrey Isaacs
>
>
>
>
>
>
>
>
>
>
>
> On Fri, Mar 14, 2008 at 3:20 PM, Robin Dal Soglio
>

 Gmail

## Re: Rule 37 Conference

**JDI** <jeffreydi@gmail.com>                                              Thu, Mar 20, 2008 at 1:52 PM
To: rdalsoglio@dm-lawfirm.com

i will call in about 15 minutes

On Thu, Mar 20, 2008 at 1:51 PM,  <rdalsoglio@dm-lawfirm.com> wrote:
> Jeff - I am still available and will be until 1:00 my time. Please call at your convenience.
>
>  Robin D. Dal Soglio
>
> Sent from my Verizon Wireless BlackBerry
>
> -----Original Message-----
>
> From: rdalsoglio@dm-lawfirm.com
>
> Date: Thu, 20 Mar 2008 03:11:10
> To:"JDI" <jeffreydi@gmail.com>
> Subject: Re: Rule 37 Conference
>
>
>
> 10:00 am is fine.
>
> Sent from my Verizon Wireless BlackBerry
>
> -----Original Message-----
>
> From: JDI <jeffreydi@gmail.com>
>
> Date: Wed, 19 Mar 2008 22:54:54
> To:rdalsoglio@dm-lawfirm.com
>
> Subject: Re: Rule 37 Conference
>
>
>
>        on-behalf-of jeffreydi@gmail.com; Thu Mar 20 02:54:57 2008 Received: from rv-out-0910.google.com (rv-out-
0910.google.com [209.85.198.191])      by mx (8.13.8/8.13.8/CWT/DCE) with ESMTP id m2K2suHV014253      for ;
Thu, 20 Mar 2008 02:54:57 GMT Received: by rv-out-0910.google.com with SMTP id c24so334081rvf.47 for ; Wed,
19 Mar 2008 19:54:54 -0700 (PDT) DKIM-Signature: v=1; a=rsa-sha256; c=relaxed/relaxed; d=gmail.com; s=beta;
h=domainkey-signature:received:received:message-id:date:from:to:subject:in-reply-to:mime-version:content-type:
content-transfer-encoding:content-disposition:references; bh=m85IhjE1JynaogyvAyy2HcGHNM3rlA
QT6HfRMBXyUog=; b=oXQ9RNRQPqKM4sXqKlLyu/ayUG9hLJ2QwSaJrBIbyhZaP5sG2m+
bWRw47gX8l6AbDkxN11kdXeq788X5ZKY2LstksPyrL8eFfL3sQ83qtnpk27VMnhj4n3LnuINB9T2I/BvAL+
sMP9R8J84exxncB0zwxcPM91uJhsGTVRFrz1w= Received: by 10.141.123.4 with SMTP id a4mr551707rvn.172.
1205981694592; Wed, 19 Mar 2008 19:54:54 -0700 (PDT) Received: by 10.141.53.13 with HTTP; Wed, 19 Mar 2008
19:54:54 -0700 (PDT) Message-ID: Date: Wed, 19 Mar 2008 22:54:54 -0400 From: JDI To: rdalsoglio@dm-

lawfirm.com Subject: Re: Rule 37 Conference In-Reply-To: References:       Reply-To: JDI MIME-Version: 1.0
Content-Type: text/html; charset="ISO-8859-1" Content-Transfer-Encoding: quoted-printable Disposition-Notification-
To: "them" X-Confirm-Reading-To: jeffreydi@gmail.com.kdsbzmpgxtnxyac.emsvr.com Return-Receipt-To:
jeffreydi@gmail.com.kdsbzmpgxtnxyac.emsvr.com Notice-Requested-Upon-Delivery-To: jeffreydi@gmail.com.
kdsbzmpgxtnxyav.emsvr.com Errors-To: jeffreydi@gmail.com.kdsbzmpgxtnxyav.emsvr.com -->
>
> It might be helpful to set a time. I am available from 8-9AM PST and
> after 10AM PST.
>
>
> On Wed, Mar 19, 2008 at 6:23 PM, <rdalsoglio@dm-lawfirm.com <mailto:rdalsoglio@dm-lawfirm.com > wrote:
> > Mr. Isaacs:
> >
> > I will be back in the office tomorrow and will be happy to discuss the discovery issues with you.
> >
> > Robin Dal Soglio
> > Sent from my Verizon Wireless BlackBerry
> >
> >
> >
> > -----Original Message-----
>
> > From: JDI <jeffrey.isaacs.wg03@wharton.upenn.edu <mailto:jeffrey.isaacs.wg03@wharton.upenn.edu> >
> >
> > Date: Wed, 19 Mar 2008 17:48:49
>
> > To:rdalsoglio@dm-lawfirm.com <mailto:rdalsoglio@dm-lawfirm.com> , "Robin Fink" <robinmfink@hotmail.com
<mailto:robinmfink@hotmail.com> >
> > Subject: Rule 37 Conference
> >
> >
>
> > on-behalf-of jeffreydi@gmail.com <mailto:jeffreydi@gmail.com> ; Wed Mar 19 21:48:52 2008 Received: from wf-
out-1314.google.com (wf-out-1314.google.com [209.85.200.171]) by mx (8.13.8/8.13.8/CWT/DCE) with ESMTP id
m2JLmpdN023564 for ; Wed, 19 Mar 2008 21:48:52 GMT Received: by wf-out-1314.google.com with SMTP id
28so658700wfc.14 for ; Wed, 19 Mar 2008 14:48:49 -0700 (PDT) DKIM-Signature: v=1; a=rsa-sha256;
c=relaxed/relaxed; d=gmail.com; s=beta; h=domainkey-signature:received:received:message-id:
date:from:sender:to:subject:mime-version:content-type:content-transfer-encoding:content-disposition:x-google-sender-
auth; bh=EM/O/9KdCprqVEvwByIaxfjZYjfOGdvHh/xtNFUrZRY=; b=cj4aHYoYLCE7wtgSZDVkL+
J4YzNRd7SyBfTzs7Q3Vh3AQ9gLvrWepskGkGNOKS2sEzyZYanzYwpMo1h4Zm
YHpyeX83ERDxJbuuBeqoiQwmOFmJtSz3FUHzrkcyTfTf9DMJM/0P74W1Sse9C20PN4+
BDMEdz5F1JEk08dnxUlhuA= Received: by 10.143.6.1 with SMTP id j1mr684218wfi.45.1205963329256; Wed, 19
Mar 2008 14:48:49 -0700 (PDT) Received: by 10.142.216.7 with HTTP; Wed, 19 Mar 2008 14:48:49 -0700 (PDT)
Message-ID: Date: Wed, 19 Mar 2008 17:48:49 -0400 From: jeffreydi@gmail.com
<mailto:jeffreydi@gmail.com>  To: rdalsoglio@dm-lawfirm.com <mailto:rdalsoglio@dm-lawfirm.com> , "Robin Fink"
Subject: Rule 37 Conference X-Google-Sender-Auth: 9e40791bcd1b825a Reply-To: JDI MIME-Version: 1.0 Content -
Type: text/html; charset="ISO-8859-1" Content-Transfer-Encoding: 7bit Disposition-Notification-To: "them" X-Confirm-
Reading-To: jeffreydi@gmail.com.bolvombnqzxmuoh.emsvr.com <mailto:jeffreydi@gmail.com.
bolvombnqzxmuoh.emsvr.com> Return-Receipt-To: jeffreydi@gmail.com.bolvombnqzxmuoh.emsvr.com
<mailto:jeffreydi@gmail.com.bolvombnqzxmuoh.emsvr.com> Notice-Requested-Upon-Delivery-To:
jeffreydi@gmail.com.bolvombnqzxmuoi.emsvr.com <mailto:jeffreydi@gmail.com.bolvombnqzxmuoi.emsvr.com>
Errors-To: jeffreydi@gmail.com.bolvombnqzxmuoi.emsvr.com <mailto:jeffreydi@gmail.com.
bolvombnqzxmuoi.emsvr.com>  -->
> >
> > Ms Dal Soglio:
> >
> > I attempted to telephone your office today but received voicemail for

> > both you and your paralegal. Three weeks ago you informed me that your
> > paralegal would discuss my discovery issues. Last week I was informed
> > that your firm believes that it has no more discovery to produce. Will
> > you teleconference on this issue, or am I to file a motion to compel
> > without your joint stipulation? It seems you have been aware of my
> > concerns for weeks - if not months - and once again, these delays are
> > rather concerning.
> >
> > Please note that all outstanding settlement offers are canceled, as
> > per the emails last week; Nonetheless I remain willing to discuss them
> > if you have made any progress with your client.
> >
> > Regards
> > Jeffrey Isaacs
> >
> > ReadNotify.com E-mail Posting-Time Digital Certificate. On Wed, 19 Mar 2008 21:48:54 GMT
<http://www.ReadNotify.com/timezone.asp?zone=&amp;when=Wed, <http://www.ReadNotify.com/timezone.asp?
zone=&when=Wed,>  19 Mar 2008 21:48:54 GMT> the above e-mail arrived from jeffreydi@gmail.com
<mailto:jeffreydi@gmail.com> <mailto:jeffreydi@gmail.com> for rdalsoglio@dm-
lawfirm.com <mailto:rdalsoglio@dm-lawfirm.com>  <mailto:rdalsoglio@dm-lawfirm.com> <mailto:rdalsoglio@dm-
lawfirm.com> > , was assigned sequence number #8399695 <http://www.readnotify.com/readnotify/showsig.asp/
8399695.htm#8399695 <http://www.readnotify.com/readnotify/showsig.asp/8399695.htm#8399695> > and ReadNotify
reference 49acad30c8e6081f4309e929f8c1bb41, digitally signed, and immediately dispatched. NB: This certificate
irrevocably links the body and headers of this email to the date and time they were dispatched. The following
signature is now published online; to view it, verify it, or for more information, please visit www.ReadNotify.com
<http://www.ReadNotify.com>  <http://www.readnotify.com/readnotify/postcert.asp/8399695.htm#8399695
<http://www.readnotify.com/readnotify/postcert.asp/8399695.htm#8399695> > . -----BEGIN PGP SIGNATURE-----
Version: GnuPG v1.0.6 (ReadNotify.com TimeStamp Server v2.2) Comment: Certificate #8399695, created Wed, 19
Mar 2008 21:48:54 GMT iQBvAwUBR+GKRjanThAdit3tAQEw6gLQkbYswgIjjREHGt8/d78KaSinYG4lO29v
lFGt9sWbHLlKcYxYzDuP6KKwKDbfKlwsczC4ucpLsd5cLTTB7/Z8egmR4PememQ4 3LSvPGO/YtuxFywZpD3zrZV6
=Le/U -----END PGP SIGNATURE-----
>
> >
> > <>
> >
> > Rule 37 Conference Rule 37 Conference
>
>
>
> ReadNotify.com E-mail Posting-Time Digital Certificate.  On Thu, 20 Mar 2008 02:54:58 GMT
<http://www.ReadNotify.com/timezone.asp?zone=&when=Thu, 20 Mar 2008 02:54:58 GMT>  the above e-mail arrived
from jeffreydi@gmail.com <mailto:jeffreydi@gmail.com> for rdalsoglio@dm-lawfirm.com <mailto:rdalsoglio@dm-
lawfirm.com> , was assigned sequence number #8401223 <http://www.readnotify.com/readnotify/showsig.asp/
8401223.htm#8401223> and ReadNotify reference 7242c15d06dfd77f8d82a78a4adc85af, digitally signed, and
immediately dispatched. NB: This certificate irrevocably links the body and headers of this email to the date and time
they were dispatched. The following signature is now published online; to view it, verify it, or for more information,
please visit www.ReadNotify.com <http://www.readnotify.com/readnotify/postcert.asp/8401223.htm#8401223> . -----
BEGIN PGP SIGNATURE----- Version: GnuPG v1.0.6 (ReadNotify.com TimeStamp Server v2.2) Comment: Certificate
#8401223, created Thu, 20 Mar 2008 02:54:58 GMT iQBvAwUBR+HSAzanThAdit3tAQET7ALPVyz1yVs9
wgQPkzH1xrOqn9TvDt6RUNr7 TXnXHaKXAgKfMq1J3/CjGov1eeYXjJBspneD/
MseTQWwspxBWdzQ1aCl6WgnGEXN FRmxumOfgsvfBCRQpV+m+w3+ =5A6y -----END PGP SIGNATURE-----
>
>   <>
>

 Gmail

## Follow up to Rule 37 Conference

**JDI** <jeffrey.isaacs.wg03@wharton.upenn.edu>                    Thu, Mar 20, 2008 at 5:32 PM
To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>

Ms Dal Soglio:

I understand you will be providing written responses to me on Monday -
I assume these will be electronic so that the March 31st filing
deadline can be met.

It remains my position that USC views this matter in an
over-simplified way, consisting of several procedural rubber stamps
that absolutely failed to investigate the substance of the
cross-allegations.

As discussed, I am attaching some excerpts from interrogatories I
answered for Mr Payne, as well as an affidavit I prepared. As always,
if your client is interested in actually mediating on such issues, I
am available by phone and /or videoconference.

Regards
Jeffrey Isaacs

"Upon leaving the SPC meeting, Fred Kuyt telephoned me, he was very
upset.  He said that he was beyond his ability to help, that this case
had somehow enough become me versus the something much larger.  He
told [in his exact words] me to "sue the fuck" out of USC, that they
had "screwed" me, that it was entirely wrong what had happened. These
were his exact words; he recommended that I sue USC. He said he had
absolutely no respect for Katsufrakis, rather, disdain. He further
commented that Henderson, in his opinion, wasn't "impressive,"
neither as an Oncologist nor a Dean.
…
I felt that this whole ordeal gave Katsufrakis some form of perverse
pleasure. He seemed to take an interest in me that went above and
beyond that of Deans I have previously interacted with at other
schools. In our meeting, Katsufrakis would frequently look strangely
at my clothes, my shoes, etc and treat me in an odd manner. He
commented on my clothes and "sophisticated" style of dress, and made
comments that could be construed as improper advances. There were
always double-entendres; he asked me how I felt being "caught with my
pants down" in reference to the behavior I attribute as a reaction to
harassment from others, and my disability. I believe his handling of
the entire manner had ill intentions. To make matters worse, he knew
that I was afraid of the NIH involvement and played on my fears. He
took advantage of this fact.
…
I had an anxiety disorder (PTSD) and was taking the wrong medication
at the time all this unraveled. To the extent that any of emails

indeed showed anxiety that was not abnormal , there can be little doubt that such anxious behavior immediately ceased upon correction – i.e. cessation - of the incorrect medication. To me, the disability claim in my case is supported by the fact that USC still refuses to acknowledge the role of my disability – and improper medication – on this situation.  I never would have done anything illegal at USC, and their defense that they were looking out for student safety represents an  unfortunate stigma, and nothing more.
…
I am happy that Keck has found a new Dean who seems passionate about an environment that fosters academic enrichment and quest for medical knowledge. As I mentioned in an earlier settlement paper, I also strongly feel USC is better off without Katsufrakis. I believe a good Dean , with  good motives, could have easily averted this whole situation.

19-cv-2011 Isaacs v. USC                    Exhibits Page 31

 **Gmail**

## RE: Receipt of Documents; Motion/Appeal status

**Robin Dal Soglio** <rdalsoglio@dm-lawfirm.com>                    Wed, Mar 26, 2008 at 3:37 PM
To: JDI <jeffrey.isaacs.wg03@wharton.upenn.edu>

Mr. Isaacs:

I believe that the documents produced cover more than one request.  I will
be sending you my portion of the Joint Stipulation later today and it should
clarify that there are very few disputes remaining.

I also have a few additional documents which I plan on producing to you
today.  Would you like me to have the scanned and emailed to you, as I did
yesterday.  If so, I can simply add it to the cost of yesterday's production
to be deducted from your deposit.  Otherwise, I will mail them to your
address of record.

I do not believe that the judge will give me a continuance for my SJ filing
deadline, even upon stipulation of the parties.  What I suggest is that I
proceed with filing my SJ motion, but then we can submit a stipulation to
continue the hearing date (and the filing deadlines for your opposition and
my reply), until after resolution of the motion to compel.  That way, we can
assure that you have all documents, if any, to which the judge determines
you are entitled prior to having to oppose the motion for SJ.

With respect to your settlement offer, USC rejects your offer to the extent
that it purports to characterize the settlement as a "tuition
reimbursement."  USC's offer to settle this matter for $10,000 total will
remain open until 5:00 p.m. on April 7, 2008.

Sincerely,
Robin Dal Soglio


Robin D. Dal Soglio
DAL SOGLIO & MARTENS LLP
27240 Turnberry Lane, Suite 200
Valencia, California  91355
Phone (661) 362-0736
Fax (661) 244-4942



-----Original Message-----
From: jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] On Behalf Of JDI
Sent: Wednesday, March 26, 2008 10:26 AM
To: rdalsoglio@dm-lawfirm.com.certified.readnotify.com; Robin Dal Soglio
Subject: Receipt of Documents; Motion/Appeal status

Ms Dal Soglio:

19-cv-2011 Isaacs v. USC                    Exhibits Page 32

Gmail - USC Settlement Acceptance Terms

7/2/19, 4:54 AM

 Gmail

## USC Settlement Acceptance Terms

**JDI** <jeffrey.isaacs.wg03@wharton.upenn.edu>                                    Wed, Mar 26, 2008 at 5:47 PM
To: rdalsoglio@dm-lawfirm.com.certified.readnotify.com, Robin Dal Soglio <rdalsoglio@dm-lawfirm.com>

Dear Ms Dal Soglio:

I wish to make an in - principal terms agreement which hereby accepts
the $10,000 settlement offer your client made today. The following
terms are drafted as per our conversation this afternoon.

1) USC issues immediate compensation of $7,250 to me in exchange for
an immediate bilateral general release and dismissal of CV-06-3338.
Specifically, from this point forward, no appeals will be filed now
will any additional motions be filed.

2) In approximately six months, USC agrees to re-hear, confidentially
and in good faith, my appeal of student status among a group of five
to twenty Keck faculty members. I hereby represent that this appeal
would present substantial new information. I submit that this
significant new information would outweigh evidence presented two
years ago regarding my ability to conform to the Keck School of
Medicine essential characteristics. .

3) In the event Isaacs and the appeal committee are unable to reach a
mutually agreed upon appeal outcome, USC will issue the remaining
compensation of $2,500 under the settlement terms offered.

I would appreciate a response on this as soon as possible, given the
time constraints you recognized.

Regards,
Jeffrey Isaacs

19-cv-2011 Isaacs v. USC                                    Exhibits Page 33

 Gmail

## Re: Isaacs v. USC Settlement Agreement

**JDI** <jeffrey.isaacs.wg03@wharton.upenn.edu>                    Mon, Mar 31, 2008 at 5:21 PM
To: Robin Dal Soglio <rdalsoglio@dm-lawfirm.com>, rdalsoglio@dm-lawfirm.com.certified.readnotify.com

Hopefully, in response to this email, you can send me a FINAL PDF copy
that I will SIGN AND RETURN.

On Mon, Mar 31, 2008 at 5:20 PM, JDI
<jeffrey.isaacs.wg03@wharton.upenn.edu> wrote:
> I just received this email. Unfortunately I thought that USC was at
> least acknowledging that there is a factual dispute -- not denying
> right or wrong -- and agreeing that I don't need to disclose anything
> because it is disputed and was never determined as right or wrong in a
> Court of law. I don't see how this creates any problem for them - it
> is simply saying the case settled for $10000 before it was tried on
> its merits, and as such, that I don't need to disclose anything about
> any related history.
>
>
> On Mon, Mar 31, 2008 at 3:44 PM, Robin Dal Soglio
>
>
> <rdalsoglio@dm-lawfirm.com> wrote:
> > Mr. Isaacs:
> >
> > I have forwarded your inquiry to my client, as it again re-opens the issue
> > of your desire to have USC advise you on what you do or do not have to
> > disclose to 3rd parties about your academic and disciplinary history at USC.
> > As you know, I have repeatedly made clear that USC cannot advise you or
> > provide you any assurances concerning your obligations in that regard.
> > Contrary to your assertion, this was not limited to their reluctance to
> > alter records.  I also previously rejected your request to characterize the
> > settlement payment as a "tuition reimbursement" on the same grounds. What
> > you choose to disclose to 3rd parties about your educational/disciplinary
> > history at USC is a private matter between you and any 3rd parties you deal
> > with.  Nevertheless, I have forwarded your request to expand the language to
> > include "this matter and related history."
> >
> > I will respond as soon as I hear back from USC.
> >
> > Robin Dal Soglio
> >
> >
> > -----Original Message-----
> > From: jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] On Behalf Of JDI
> >
> >
> > Sent: Monday, March 31, 2008 12:02 PM

> > To: Robin Dal Soglio
> > Subject: Re: Isaacs v. USC Settlement Agreement
> >
> > I agree with your comments about MSJ.
> >
> > My query on "this matter" was on the revised settlement agreement.
> > Does this refer only to the lawsuit or the entire academic history. If
> > USC can agree that I don't need to disclose any of this matter -- ie
> > anything in 2005-2006 at USC< then i will accept your proposed revised
> > agreement. please advise ASAP.
> >
> > As far as the MSJ, no surprises there.
> >
> > On Mon, Mar 31, 2008 at 2:51 PM, Robin Dal Soglio
> > <rdalsoglio@dm-lawfirm.com> wrote:
> > > Mr. Isaacs:
> > >
> > > We can include a sentence at the end of Paragraph 14.c. (erroneously
> > labeled
> > > as d. in the prior draft) that states "However, the parties further agree
> > > that Isaacs is not required to disclose this matter to anyone."  Keep in
> > > mind, the court does not approve the settlement terms themselves, just
> > the
> > > dismissal.  I have attached the revised Agreement to include this term.
> > > I
> > > am also attaching the Stipulation of Dismissal for your review.
> > >
> > > Do you have other comments to the Settlement Agreement?
> > >
> > > Attached is a copy of the MSJ.  I understand that you will disagree with
> > > much that is stated in here.  However, Mr. Isaacs, I strongly encourage
> > you
> > > to not become distracted on the MSJ.  Let's focus on settling this matter
> > > and putting it behind us.  I believe it would be a waste of time to start
> > > going back and forth about the contents of the MSJ, and I am not going to
> > > spend any of my time doing so.
> > >
> > > Please let me know if you have additional comments to the Settlement
> > > Agreement.  Otherwise, please pdf the executed Settlement Agreement to me
> > as
> > > soon as possible.
> > >
> > > Sincerely,
> > >
> > > Robin D. Dal Soglio
> > >
> > > -----Original Message-----
> > > From: jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] On Behalf Of JDI
> > > Sent: Monday, March 31, 2008 10:16 AM
> > > To: Robin Dal Soglio; rdalsoglio@dm-lawfirm.com.certified.readnotify.com
> > > Subject: Re: Isaacs v. USC Settlement Agreement
> > >
> > >
> > >
> > > Dear Ms Dal Soglio:
> > >
> > > I have read the proposed settlement agreement. With respect to

7/5/19, 2:02 AM

> > > paragraph 14, as you know I have no desire to disclose this matter to
> > > anyone. However, by signing off that the matter has been resolved, I
> > > would have difficulty answering future applications. Do you think
> > > there is  a way to do this where the Court approves a settlement that I
> > > have no requirement to disclose this matter to anybody?
> > >
> > > Also, will you be sending me the SJ motion in PDF now so I can review
> > > your clients view of events?
> > >
> > > Jeffrey Isaacs
> > >
> > > On Mon, Mar 31, 2008 at 1:03 PM, Robin Dal Soglio
> > > <rdalsoglio@dm-lawfirm.com> wrote:
> > > >
> > > >
> > > >
> > > >
> > > > Mr. Isaacs:
> > > >
> > > >
> > > > Attached please find the draft settlement agreement.  Please
> > sign/initial
> > > > where indicated and return the Agreement to me via pdf.
> > > >
> > > >
> > > >
> > > > Thank you,
> > > >
> > > >
> > > >
> > > > Robin D. Dal Soglio
> > > >
> > > >
> > > >
> > > > Robin D. Dal Soglio
> > > >
> > > > DAL SOGLIO & MARTENS LLP
> > > >
> > > > 27240 Turnberry Lane, Suite 200
> > > >
> > > > Valencia, California  91355
> > > >
> > > > Phone (661) 362-0736
> > > >
> > > > Fax (661) 244-4942
> > > >
> > > >
> > > >
> > > >
> > >
> > >
> >
> >
> >
> >

19-cv-2011 Isaacs v. USC                    Exhibits Page 36

# M Gmail

## RE: Isaacs v. USC Settlement Agreement

**Robin Dal Soglio** <rdalsoglio@dm-lawfirm.com>
To: JDI <jeffrey.isaacs.wg03@wharton.upenn.edu>

Mon, Mar 31, 2008 at 7:05 PM

That language is acceptable.  The pdf is attached.

-----Original Message-----
From: jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] On Behalf Of JDI
Sent: Monday, March 31, 2008 3:03 PM
To: Robin Dal Soglio; rdalsoglio@dm-lawfirm.com.certified.readnotify.com
Subject: Re: Isaacs v. USC Settlement Agreement

Ms Dal Soglio:

I hope you can appreciate that the wording here is quite important to
me. I am not trying to drag this on. With the wording you propose, I
just want to make the paragraph a bit more specific. Let me know if
tis is ok for 14c. If so forward me the final version and i will
review it with my attorney for signing.

c) If Isaacs is asked about his claims against USC, including breach
of enrollment contract and wrongful dismissal, and only if asked, he
may state only that "the matter has been resolved."  However, the
parties further agree that Isaacs is not required to disclose this
matter to anyone.

On Mon, Mar 31, 2008 at 5:53 PM, Robin Dal Soglio
<rdalsoglio@dm-lawfirm.com> wrote:
> Mr. Isaacs:
>
> USC will agree to either of the following --
>
>
> "However, the parties further agree that Isaacs is not required to
disclose
> this matter to anyone."
>
> OR
>
>
> "The parties further agree that nothing in this Agreement requires Isaacs
to
> disclose this matter or any related history to anyone."
>
> Please advise whether either of these is acceptable.
>
>
> Robin D. Dal Soglio
>

# ASSOCIATED ATTORNEYS

## OF NEW ENGLAND

USC OFFICE OF GENERAL COUNSEL
Via Email:

RE: Jeffrey Isaacs v. USC

To Whom It May Concern,

I represent Dr. Jeffrey Isaacs and am authorized to send you this brief outline of my client's position with the intention of scheduling a meeting to discuss possible resolution short of litigation. You will find the complaint filed against you by my client attached. This matter originates with Dr. Isaacs time as a Keck medical student. He was dismissed from the program while undergoing treatment for a head injury. He signed two settlement agreements with Keck to allow him a chance to start again in his pursuit a career in medicine. Despite the sealed nature of these records they were disclosed to Dartmouth, via the actions of John Doe, and needlessly ended the career of a talented physician. The unacceptable result is that Dr. Isaacs currently faces lifelong career and reputational assassination.

I anticipate discovery will show that the Keck SPC individual faculty members never would have imagined their actions would effectively punish Dr Isaacs for ultimately excelling in medical school, which is what has happened.Though they were acting as agents of the college at the time it is expected that Ball and Henderson's retaliation and the intended effects of the same were hidden from USC and other institutions. Given the behavior of Ball and Henderson and the eventual release of Dr. Isaacs' records by USC Keck is liable for the horrific events that Dr. Isaacs has suffered for the last ten years.

The New Hampshire Board, a competent authority, found that USC breached their

settlement promises to Dr Isaacs by failing to discharge his negative administrative record. The NH Board order has withstood review at both the New Hampshire Supreme Court and the United States Supreme Court. In view of the breached contract and your apparent liability for John Doe's disclosure of sealed academic records, we submit that this matter is very much ongoing and unsettled. Keck has an opportunity to correct damages inflicted from their past mistake of favoring a student who had, in her own words, been admitted only through her NIH connections and contributions to the Dean. Dr. Isaacs was undergoing treatment for a concussion at the time of the SPC dismissal; any jury will find it unconscionable if Keck continues to assert that Dr. Isaacs, who later excelled in medical school, deserves lifelong punishment because of a student whose place in medical school was obtained through *quid pro quo*. It is also expected that discovery will show what Dr. Isaacs always claimed, that the discipline Dr. Isaacs suffered was particularly harsh because that student's father oversaw government funding to the institution.

Admittedly, Keck USC is in an interesting position with regards to this case. On the one hand, the actions of Attorney Ball and others mentioned are retaliation in violation of RICO, but on the other, it does not appear that it was ever USC faculty's intention to bar Dr. Isaacs from rehabilitating and practicing medicine. This point, before service of the complaint offers us a short lived opportunity to resolve these issues.

Local Rule 16-15 states that it is the policy of the Court to have the parties discuss settlement. I am reaching out to you with the intention of conducting in person settlement discussions via a California licensed mediator/ADR, prior to requiring your answer or response to the complaint. Dr. Isaacs is a promising physician who has been looking for an opportunity to pursue his chosen career, and he is hopeful that the school where he began that path will reverse course and aid him in fulfilling that goal. USC is in a unique position to remedy the wrongs that,

Associated Attorneys of New England
August 3, 2018
Page 3 of 3

as we can detail in the ADR, lead to a chain of misinformation and mistreatment at downstream institutions, and ultimately, White House factfinding and the World Bank President's resignation.[1]

In 2007, Dr Isaacs, *pro se*, appeared at the scheduling conference with United States District Judge Feess. He stated he wanted nothing from the lawsuit other than readmission to Keck. Feess, apparently incredulous that the matter had reached his courtroom, asked the parties to work out a settlement. Keck, apparently at the direction of Ball and Henderson, chose not to do the right thing. One can only hope, after over a decade of my client's suffering, we will not be making the same argument to United States District Judge Fischer.

In efforts to advance prompt exchange of information and reduce litigation costs, my client is willing to pay for the proposed ADR/mediation.[2] Kindly, accept or decline his offer at your earliest convenience.


Regards,



Atty. Keith A. Mathews

---

[1] USC's incoming President was also Jim Yong Kim's successor at Dartmouth, and had some duty to investigate the matter that ultimately, we believe, lead to White House questioning and said resignation. These matters will be detailed in discovery in the event Dr. Isaacs' RICO claims progress.

[2] If he would be willing/able to take the case, we propose Judge Gary A. Feess as an ADR mediator at Phillips ADR. We believe his potential; recollection of the case, at a relatively early time in the current dispute, would be beneficial to both sides. Alternatively, please provide us three other mediators to choose from.

587 Union Street, Manchester, New Hampshire 03104
Tel: 603-622-8100  Fax: 888-912-1197

Gmail - [FWD: Re: Isaacs matter]                                                              7/4/19, 2:42 AM

 Gmail

## [FWD: Re: Isaacs matter]

**keith@aaone.law** <keith@aaone.law>                         Fri, May 31, 2019 at 8:08 AM
To: Jeffrey Isaacs <jeffrey.isaacs.wg03@wharton.upenn.edu>

Not good, let me think about the best way to handle.

Keith

> -------- Original Message --------
> Subject: Re: Isaacs matter
> From: Andreas Joerg Meyer <andreasm@usc.edu>
> Date: Thu, May 30, 2019 8:15 pm
> To: "Keith Mathews, Esq." <keith@aaone.law>
>
> Mr. Mathews,
> I am in receipt of your correspondence and the complaint filed by your client.
>
> The University of Southern California (USC) unequivocally rejects your client's request to engage in
> mediation. Not only does the University dispute the facts set forth in the complaint and in your letter, but we
> believe the complaint to suffer from so many legal deficiencies and factual inaccuracies that it is not only
> inviable but also frivolous and harassing. We demand that the complaint be dismissed in its entirety
> immediately. If your client proceeds with the complaint, USC will not only mount a vigorous defense, but we
> will also pursue all remedies available to the University, including sanctions under Rule 11 and a
> counterclaim for liquidated damages, costs, and attorneys' fees caused by your client's breach of more than
> one provision contained in the Confidential Settlement Agreement and Release he entered into with the
> University in 2008.
>
> Sincerely,
>
> Andreas J. Meyer
> University Counsel
> University of Southern California
> Office of the General Counsel
> Tel: (213) 740-7922
> Asst: Erin Snyder (erinsnyd@usc.edu)
>
> **From:** Keith Mathews, Esq. <keith@aaone.law>
> **Sent:** Friday, May 24, 2019 4:06:22 PM
> **To:** Andreas Joerg Meyer
> **Subject:** Isaacs matter
>
> We had spoken a few weeks ago regarding Mr. Isaacs. I have attached a letter explaining his position as
> well as the suit that has recently been filed. Please do not hesitate to contact me if additional information
> would be useful to you. I look forward to speaking with you further about the case.
> Regards,
> Keith

19-cv-2011 Isaacs v. USC                                   Exhibits Page 41

*Atty. Keith A. Mathews*
*Associated Attorneys of New England*
*587 Union Street*
*Manchester, NH 03104*
*************************

*www.AAONE.law*
*Tel: (603) 622-8100*
*Fax: (888)912-1497*

CONFIDENTIALITY NOTICE:
This e-mail and any files transmitted with it are confidential, may be protected by the attorney-client privilege, and are intended for use by the addressee(s) only. If you are not the intended recipient or the person responsible for delivering e-mail for the intended recipient, be advised that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you believe you have received this e-mail in error, please destroy it immediately and notify me at 603-622-8100. Thank you.

19-cv-2011 Isaacs v. USC                           Exhibits Page 42

 Gmail

## Re: Keck Service of Process

**Jeffrey** <jeffreydi@gmail.com>                                                    Thu, Jun 6, 2019 at 8:37 PM
To: Andreas Joerg Meyer <andreasm@usc.edu>
Cc: "Fogelman, James P. (JFogelman@gibsondunn.com)" <JFogelman@gibsondunn.com>, "Stacy R. Bratcher"
<bratcher@usc.edu>

To clarify, you decline to correct your breach or you decline ADR with Judge Feess?

On Thu, Jun 6, 2019 at 8:34 PM Andreas Joerg Meyer <andreasm@usc.edu> wrote:

Dr. Isaacs:

We decline.  Please refer all future correspondence to James Fogelman of Gibson, Dunn & Crutcher.  He represents the University in this matter and I have copied him here.


Sincerely,


Andreas J. Meyer

University Counsel

University of Southern California

Office of the General Counsel

Tel: (213) 740-7922

Asst: Erin Snyder (erinsnyd@usc.edu)


**From:** Jeffrey <jeffreydi@gmail.com>
**Sent:** Thursday, June 6, 2019 3:42 PM
**To:** Stacy R. Bratcher <bratcher@usc.edu>; Lil Gomez Delcampo <ldelcamp@usc.edu>; Andreas Joerg Meyer <andreasm@usc.edu>
**Subject:** Keck Service of Process


USC General Counsel:


I have received notice that you were served yesterday, despite you not responding to my inquiry re an agent to accept service.

I remain willing to extend your answer date, by stipulation, should you decide to accept my offer to participate in ADR with Judge Feess.


I do not know if Attorney Mathews mentioned to you or not, but I am not seeking monetary compensation through ADR (although I believe a jury would award substantial damages for the decade long loss I've incurred). I am merely seeking USC make efforts 1) to comply with the original settlement by correcting appropriate records  and 2) help reinstate my GME training that was prematurely ended as a result of said breach.


Dr Jeffrey Isaacs


--
Sent from Gmail mobile

19-cv-2011 Isaacs v. USC                          Exhibits Page 44