Case 2:19-cv-08000-DSF-RAO    Document 1-2    Filed 09/16/19    Page 1 of 53    Page ID
#:115
Case 2:19-cv-02011-DSF-RAO    Document 14    Filed 06/26/19    Page 21 of 24    Page ID #:109

1  conduct alleged." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)

2  (emphasis added). Accordingly, "[w]hen a court evaluates a RICO claim for proximate

3  causation, the central question it must ask is whether the alleged violation led *directly* to

4  the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)

5  (emphasis added). Yet, Plaintiff fails to explain how the alleged transmission of his

6  Keck transcripts led directly to his termination from the DHMC residency program and

7  the revocation of his medical license. It was not Keck's transmission of his transcript

8  that prompted the revocation of his license, but rather *his* failure to disclose his

9  attendance at Keck that led to his reprimand and the revocation of his license. *In re*

10  *Jeffrey D. Isaacs M.D.*, Final Decision and Order, at 8-9. USC did not "cause"

11  Plaintiff's intentional omissions.

12  **D.    Plaintiff's Claims Are Barred by Res Judicata**

13       Res judicata bars Plaintiff's complaint because it arises from exactly the same

14  facts alleged in his 2012 lawsuit against the Trustees of Dartmouth College, which was

15  resolved against him. *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, 2014 WL 1572559, at

16  *1-2. "Res judicata, or claim preclusion, prohibits lawsuits on any claims that were

17  raised or could have been raised in a prior action." *Stewart v. U.S. Bancorp*, 297 F.3d

18  953, 956 (9th Cir. 2002) (quotation omitted). "Res judicata applies when there is: (1) an

19  identity of claims; (2) a final judgment on the merits; and (3) identity or privity between

20  parties." *Id.* Here, all three elements are present.

21       ***First***, there is an identity of claims. "The central criterion in determining whether

22  there is an identity of claims between the first and second adjudications is whether the

23  two suits arise out of the same transactional nucleus of facts." *Owens v. Kaiser Found.*

24  *Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) (quotations omitted). Whether the

25  "common nucleus criterion" is met depends on "whether [the events] are related to the

26  same set of facts and whether they could conveniently be tried together." *Stewart*, 297

27  F.3d at 987 (quotation omitted).

28

13

DEFENDANT USC KECK SCHOOL OF MEDICINE'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS

Gibson, Dunn &
Crutcher LLP



# RE: ERAS INVESTIGATION NOTIFICATION-JEFFREY DAVID ISAACS AAMC ID 12121531

**ERASInvestigations** <erasinvestigations@aamc.org>                    Thu, May 3, 2012 at 1:00 PM
To: "Jeffrey D. Isaacs" <jeffrey.isaacs.wg03@wharton.upenn.edu>

Thank you for your response.  Your request is reasonable, and as such, we will honor your request to keep the Keck information off of the report.  This will require that you submit a new statement that does not mention the Keck school and we will provide a new draft preliminary report that only mentions your time at Arizona.  Please note, that our director is out of the office this week, so the report may be delayed waiting on her approval.

Best Regards -



-----Original Message-----
From: jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] On Behalf Of Jeffrey D. Isaacs
Sent: Wednesday, May 02, 2012 12:45 PM
To: ERASInvestigations
Subject: Re: ERAS INVESTIGATION NOTIFICATION-JEFFREY DAVID ISAACS AAMC ID 12121531

Dear Rochelle,

Attached is my signed response to the ERAS investigation you notified me about on April 18, 2012. Please let me know if there is any further information that will be of use to you.

Regards,
Jeffrey Isaacs


On Wed, Apr 18, 2012 at 4:49 PM, ERASInvestigations <erasinvestigations@aamc.org> wrote:
> complete, timely and accurate information



# ERAS INVESTIGATION NOTIFICATION-JEFFREY DAVID ISAACS AAMC ID 12121531

**ERASInvestigations** <erasinvestigations@aamc.org>                    Wed, Apr 18, 2012 at 4:49 PM
To: "jeffrey.isaacs.wg03@wharton.upenn.edu" <jeffrey.isaacs.wg03@wharton.upenn.edu>

Dear Dr. Isaacs:

ERAS-the Electronic Residency Application Service (ERAS(r)) has initiated an investigation of your ERAS 2012 application. We have been informed that there is a discrepancy with your ERAS application. Specifically:

It was discovered you attended Keck School of Medicine of the University of Southern California from August 2005 through June 2006. Additionally, there is information that from July 1, 2010 through August 13, 2010 you held a position with the University of Arizona, as a Surgery Resident. In viewing your certified application dated October 13, 2011 this information was not provided.

By omitting this information, you failed to provide complete, timely and accurate information.

We request that you provide us with any information you may have about this matter in a written and signed statement within two weeks of your receipt of this letter.  Unless you specifically request otherwise, a copy of your statement will be appended to any future report issued, along with any other relevant information collected.

A copy of the allegation letter, AAMC Policies and Procedures for Investigating Reported Violations of Residency/Fellowships Application Standards' and your application is enclosed for your viewing.

Your response can be sent electronically to ERASInvestigations@aamc.org as well as hard copy to:

Association of American Medical Colleges
2450 N Street NW
Attn: B. Renee Overton, Director, ERAS
Washington, DC 20037

Best wishes,
Rochelle Campbell
ERAS Administrative Specialist
Association of American Medical Colleges
2450 N Street NW
Washington, DC 20037
202 828-0508
rcampbell@aamc.org

**ERASInvestigationPackageElectronicVersion.pdf**
3114K

37

1   evidence.

2        MS. MOONEY:  All right.  And that will be

3   so.  Go ahead with your questions to Dr. Finn,

4   Attorney Pyles.

5     (Claim Evidence number 3 admitted into evidence.)

6        MR. PYLES:  Thank you, Chairperson.

7   BY MR. PYLES:

8        Q.   Dr. Finn, looking at page 7 of Mr. Isaacs'

9   packet, do you recognize that form?

10       A.   Yes.

11       Q.   And that's a standard form; isn't it?

12       A.   It is, to the GME office.

13       Q.   Question 3, do you see that there?

14       A.   Yeah.

15       Q.   That question asked, "Have you ever been

16   reprimanded, sanctioned, restricted or disciplined in

17   any activities involving medical education or

18   practice?"  Mr. Isaacs wrote "no."  Do you have

19   reason to believe that that statement is false?

20       A.   Yes.

21       Q.   And what do you -- why do you believe that

22   statement is false?

23       A.   I believe that both the Arizona and USC I

38

1  propose would trigger a "yes" response to that

2  question.

3      Q.  Is that a misrepresentation?

4      A.  Yes.

5      Q.  Now is this form part of the application

6  packet you rely on when taking in those 500

7  applications for seven spots?

8      A.  No.  This form is generated after applicants

9  have been accepted to the program and is part of

10 their employment and credentialing at Dartmouth

11 Hitchcock Medical Center.

12     Q.  So this wasn't something you relied on in

13 making your decision; correct?

14     A.  No.

15     Q.  But it is a form submitted to what, the

16 Board of Medicine?

17     A.  This I believe is an internal document for

18 our hospital credentials.

19     Q.  Okay.  And underneath that it's certified

20 under pains and penalties of perjury to be true and

21 accurate; correct?

22     A.  Correct.

23     Q.  And it is not true and accurate; is it?

# RE: ERAS INVESTIGATION NOTIFICATION-JEFFREY DAVID ISAACS AAMC ID

Inbox  x    Wharton  x

**ERASInvestigations** @ via wharton.upenn.edu                    May 3

to Jeffrey ▾

Thank you for your response.  Your request is reasonable, and as such, we will honor your request to keep the Keck information off of the report.  This will require that you submit a new statement that does not mention the Keck school and we will provide a new draft preliminary report that only mentions your time at Arizona.

Best Regards -





Thanks. Chris -- please try to use my dartmouth.edu email, since I don't always get emails through hitchcock.

Thanks, A

From: Christine T. Finn
Sent: Tuesday, January 17, 2012 5:05 PM
To: Alan I. Green; William C. Torrey
Cc: William C. Torrey
Subject: resident issue-confidential

Dear Will and Alan-
As I believe you already know, we have been having some significant difficulties with one of our interns, Jeffrey Isaacs. In addition to performance issues, it has come to light that he falsified his residency application, omitting a residency program that he had started the previous year. He was placed on administrative leave on Friday morning as a result.

Today, he sent a email to Jim Kim and legal representatives at the college and DHMC with numerous allegations against us and the environment at Dartmouth, intimating his intention to seek compensation for damages. I've not seen the document, but what I heard from Art Higgins is completely ridiculous. Still, it could likely be a hassle for us. We will be represented by Ed Kaplan in this matter, and, were you to receive anything from Jeff, all contact should go through his office.

We will likely be moving to terminate for cause (for falsification of credentials) quickly, so as to not have this drag out. I will let you know when I have more information.

Chris

Christine T. Finn, MD
Director, Psychiatry Residency Training Program
Director, Crisis and Consultation Service
1 Medical Center Drive
Lebanon, NH 03756
603-650-4529 (office)
603-650-9442 (fax)
603-650-5000 (pager)
christine.t.finn@hitchcock.org

Jeffrey D. Isaacs, M.D. v.
Dartmouth Hitchcock Medical Center, et al

Christine Finn, M.D.
January 15, 2014

Page 129

1    A.  I don't know.
2    Q.  Have you ever seen the settlement
3    agreement?
4    A.  No.
5    Q.  Can you read what paragraph two says?
6    A.  "Sealing of Disciplinary Records.  In
7    exchange for the dismissal with prejudice of
8    the individual Defendants referenced above,
9    Defendant, USC, agrees that commencing
10   immediately upon the execution of the
11   settlement agreement and receipt of the signed
12   dismissal with prejudice, USC will not release
13   or disclose Isaac's disciplinary records to any
14   third party, including but not limited to other
15   educational institutions and/or potential
16   employers unless it receives written consent
17   from Isaacs or a subpoena or court order."
18   Q.  Okay.  Do you know what that means
19   legally?  Are you comfortable with the full
20   meaning of that?
21       MR. CHABOT: I'm going to object to
22   the question.  I mean, Dr. Isaacs, she can't
23   give you a legal opinion.

Page 130

1        DR. ISAACS: I'm just asking if she
2    can give me a legal opinion.
3        MR. CHABOT: I'm telling you she
4    can't.
5    A.  I would say I cannot give a legal
6    opinion on this matter.
7    Q.  Did Attorney Kaplan give you an
8    opinion on that at the point he told you I
9    should be terminated for USC?
10       MR. CHABOT: If he did I'm going to
11   instruct you not to inform Dr. Isaacs.
12       MR. KAPLAN: I'm going to actually,
13   for the purposes of the record, I don't mind if
14   she answers if I gave an opinion, I am only
15   concerned about breaching confidence to provide
16   the opinion.  So if it's okay with you.
17       MR. CHABOT: That's fine.
18       MR. KAPLAN: You need to answer from
19   your own memory whether or not I gave you an
20   opinion, but then, I would, if I did, and
21   that's up to you to say, that opinion would be
22   privileged.
23   A.  Right.

Page 131

1        MR. KAPLAN: So why don't you repeat
2    your question, Dr. Isaacs, given those
3    instructions to the witness and perhaps we can
4    get through this.
5    Q.  Did Attorney Kaplan explain to you or
6    give you a legal opinion on the sealing of the
7    records at the point you were deciding whether
8    or not to include USC on the termination
9    letter?
10   A.  No.
11   Q.  Okay.  Turn on to the next one.  Do
12   you think it's typical for a university to seal
13   disciplinary records?
14       MR. CHABOT: Objection, foundation.
15   A.  No.
16   Q.  Do you have any general knowledge, not
17   a binding legal opinion, what it means to seal
18   something?
19   A.  I mean, I would say that in general
20   parlance it would refer to keeping something
21   private.
22   Q.  Might it mean that you don't have to
23   disclose it in certain situations?

Page 132

1        MR. CHABOT: I'm just going to object
2    to the relevance and to the foundation. You can
3    answer if you have an answer.
4    A.  I guess what I understood the last
5    document I just read was that USC would not be
6    revealing information, but we had not asked of
7    any institution for specific information.
8    Q.  But actually you testified you were
9    not comfortable legally, you're making a legal
10   decision from that which you actually said you
11   didn't want to make.  So I'd actually just like
12   answer to this question.  Do you think that
13   in some circumstances sealed records need not
14   be disclosed?
15   A.  By the institution?
16   Q.  By an individual, by anyone subject to
17   a sealed record.
18   A.  I don't know the specifics of the law
19   that governs that.
20   Q.  There might not be one.  Okay.  Keep
21   going.  So do you know what FERPA is?  Family
22   Educational Right to Privacy Act?
23   A.  No.

19-cv-2011 Isaacs v. USC    Exhibits Page 52

Jeffrey D. Isaacs, M.D. v.
Dartmouth Hitchcock Medical Center, et al

Christine Finn, M.D.
January 15, 2014

Page 133

1  Q.  Record privacy act.
2      MR. KAPLAN: Are you looking at a tab
3  now?
4  Q.  We are going page by page, this is F.
5      MR. KAPLAN: Oh, you're up to F now.
6  Q.  Can you just read the title in bold
7  and the first sentence under it?
8      MR. CHABOT: I'm just going to note
9  that for the record we would object to the
10 introduction of any statute or any other
11 legislative material through this witness at
12 least.
13 A.  So the title reads, "Disciplinary
14 records disclosure. Nothing in this section
15 shall prohibit an educational agency or
16 institution from," want me to keep reading?
17 Q.  Yes.
18 A.  "Including appropriate information in
19 the education record of any student concerning
20 disciplinary action taken against such student
21 for conduct that posed a significant risk,
22 safety or well-being of that student, other
23 students or other members of the school

Page 135

1  Q.  And I'm not going to be asking about
2  legal interpretations, but does it seem like
3  USC sealing a record violates the FERPA right,
4  the FERPA rule?
5      MR. CHABOT: Objection. Foundation.
6  A.  I can't really say.
7  Q.  Do you think the Plaintiff knew any
8  better when he was applying to your program?
9      MR. KAPLAN: Objection.
10 A.  I also don't know.
11 Q.  Okay. All right. That's the end of
12 that legal subject. We will leave it for the
13 judges to determine. You can skip that, keep
14 going. I think we are almost finished with
15 that packet.
16 A.  This one, actually.
17 Q.  O.
18     MR. CHABOT: Tab O Of Exhibit A.
19 Q.  Can you read the name, this is proof
20 of service, the name of who was served here?
21 A.  Jim Yong Kim.
22     MR. CHABOT: I am going to object just
23 to your statement about what the document

Page 134

1  community."
2  Q.  Or.
3  A.  "Or disclosing such information to
4  teachers and school officials including
5  teachers and school officials in other schools
6  who have legitimate educational interests in
7  the behavior of the student."
8  Q.  So you had just testified you don't
9  know any rules about sealing the records
10 specifically, correct?
11 A.  Yes.
12 Q.  Would you agree that is a federal
13 statute saying a school has an absolute right
14 to disclose disciplinary records?
15     MR. CHABOT: Objection, foundation.
16 Q.  Based on reading it, does it appear
17 to be a federal statute that the school has an
18 absolute right to disclose disciplinary
19 records?
20     MR. CHABOT: Same objection.
21 A.  I don't know. I guess I would
22 question whether having a right is the same
23 thing as nothing shall prohibit.

Page 136

1  means. She can certainly read the name from
2  the document.
3  Q.  Is there a name of who actually
4  received a the summons?
5  A.  Yes.
6  Q.  And what is that name?
7  A.  Vivian Barbadoro.
8  Q.  Do you know who Vivian Barbadoro is?
9  A.  No.
10 Q.  Okay. All right. You can keep paging
11 through I think. This is P, it's P, but you
12 can go forward. This is a letter, actually the
13 last paragraph on the next page. Can you read
14 this paragraph I'm pointing to?
15 A.  "In order to mitigate damages, I shall
16 be requesting expedited discovery. Pursuant to
17 Rule 34 of the Federal Rules of Civil
18 Procedure, I hereby request that all electronic
19 records relevant to my employment including
20 GIM/site, program director e-mail, phone logs,
21 department of psychiatry internal
22 communications be immediately audited and
23 preserved."

19-cv-2011 Isaacs v. USC                    Exhibits Page 53

Jeffrey D. Isaacs, M.D. v.
Dartmouth Hitchcock Medical Center, et al

Christine Finn, M.D.
January 15, 2014

Page 297

1  the question.
2    Q.  Well, I'm trying to clarify.
3    A.  Again, I can't really say to the
4  investigative quality of it.  If ERAS has
5  determined that it did not need to be listed
6  under your educational experience, I would
7  accept ERAS's qualification.
8    Q.  Okay.  And same goes if a federal
9  judge ruled on these two settlements if they
10  agreed with ERAS or if they agreed with me,
11  would you accept their ruling or would you
12  think that Attorney Kaplan's information given
13  to you was correct?
14      MR. CHABOT: Same objection.
15    A.  I mean, again, depending on what
16  criteria are being applied, I would agree with
17  the federal court ruling.
18    Q.  If you had your choice, you
19  acknowledged earlier that these settlement
20  agreements were a little confusing to you,
21  right?  Didn't you say you didn't have the full
22  legal knowledge to interpret them?
23    A.  Yes.

Page 298

1    Q.  If you had your choice now separate
2  from your own attorneys, who would you believe
3  could authoritatively interpret them in an
4  unbiased way other than myself or your own
5  attorney?
6      MR. CHABOT: Objection, relevance.
7    A.  I can't really say who would be
8  qualified to do that.
9    Q.  Do you think that would be important
10  for the letter at this point to get an unbiased
11  opinion on whether or not ERAS, the Plaintiff
12  or Attorney Kaplan were correct?
13      MR. CHABOT: Same objection.
14    A.  No.
15    Q.  You don't think that would be
16  appropriate?
17    A.  No.
18    Q.  Why not?
19    A.  Because the USC decision, the USC
20  knowledge came significantly after the decision
21  to terminate you.
22    Q.  Okay.  Might that still have been
23  traumatic to the Plaintiff separate from the

Page 299

1  termination to have had something that landed
2  him in a psychiatric hospital used against him
3  as an evidence of fraud?
4      MR. CHABOT: Foundation.
5    A.  I can't really say.
6    Q.  Do you think it might be traumatic to
7  make an accusation that's wrong to someone?
8      MR. CHABOT: Foundation and misstates
9  prior testimony.
10    Q.  Might a wrong allegation be traumatic
11  to somebody?
12      MR. CHABOT: Same objection.
13    A.  It could be, depending on the context.
14    Q.  So then do you still believe it's not
15  important to have authoritative unbiased
16  decision on that allegation?
17      MR. CHABOT: Same objection.
18    A.  I think I said it was not important to
19  the decision to terminate you.
20    Q.  Right.  But in terms of the overall
21  damages to the Plaintiff, do you think it's
22  important to know whether or not you were right
23  or wrong on that statement?

Page 300

1      MR. CHABOT: Foundation.
2    A.  I don't know.
3    Q.  You don't know?  Do you think it would
4  be unreasonable for a federal court to find out
5  if you were right or wrong on the statement on
6  the termination letter?
7      MR. CHABOT: Objection, relevance.
8    A.  I'm not sure of the court's interest
9  in the matter.
10    Q.  What do you think of the legal system
11  in general and due process?
12      MR. CHABOT: Objection, relevance.
13    A.  I have a generally favorable view of
14  it.
15    Q.  Did you ever think about going to law
16  school?
17      MR. CHABOT: Same objection.
18    A.  No.
19    Q.  Do you have parents or direct siblings
20  that are lawyers?
21    A.  No.
22    Q.  Are they doctors?
23    A.  No.

19-cv-2011 Isaacs v. USC    Exhibits Page 54

**Before the**
**New Hampshire Board of Medicine**
**Concord, New Hampshire**

In the Matter of:                                                              Docket #:  13-07
    Jeffrey D. Isaacs, M.D.
    License No.:  RT-2198
    (Adjudicatory/Disciplinary Proceeding)

## FINAL DECISION AND ORDER

Before the New Hampshire Board of Medicine ("Board") is an adjudicatory/disciplinary proceeding in the matter of Jeffrey D. Isaacs, M.D. ("Respondent" or "Dr. Isaacs").

**Background Information**
**(Procedural History and Motions)**

The Board of Medicine ("Board") granted Dr. Isaacs a Resident Training license pursuant to N.H. Admin. Rules Med 305.04, in May 2011.  The license was granted where the application revealed Dr. Isaacs was pursuing post graduate training at the Dartmouth Hitchcock Medical Center ("DHMC") in the psychiatry residency program ("Program").

In March 2012 the Board received information from DHMC indicating that Dr. Isaacs had been terminated from the Program where Respondent had allegedly omitted material facts from his Application for Training License for Residents and Graduate Fellows and the supplement filed along with the application.  As a result of this information, the Board commenced an investigation to determine whether Respondent committed professional misconduct pursuant to RSA 329:17, VI and RSA 329:18.

The investigation revealed the following:

Between August 2005 and June 2006 Respondent attended the Keck School of Medicine, a medical education institution, at the University of Southern California ("USC").  In February

2006 the Keck School suspended Respondent due to behavior-related issues, and ultimately the School expelled him. In June 2010 Respondent received a medical degree from the American University of the Caribbean. On May 18, 2011, Respondent filed his application for training license with the Board having been enrolled in the Program at DHMC.

The application required Respondent to disclose medical schools attended. Respondent listed the American University of the Caribbean but failed to disclose attendance at the Keck School. Additionally, Respondent answered "No" to a question on the supplement to the application which asked whether he had "ever been reprimanded, sanctioned, restricted or disciplined in any activities involving medical education or practice."

Given the investigatory revelations the Board found reasonable basis for commencing an adjudicatory/disciplinary proceeding against Respondent. On October 7, 2013 the Board issued a Notice of Hearing ("Notice") commencing a proceeding pursuant to RSA 329:18-a and N.H. Admin. R. Med 206 for February 5, 2014 at 1:00 p.m. The purpose of the hearing was to determine whether in May 2011 Respondent engaged in professional misconduct by submitting false information to the Board and for failing to fully disclose all previous medical schools attended. The Notice further indicated that Respondent could be subjected to disciplinary sanctions pursuant to RSA 329:17, VII. The Notice also informed Respondent that he may be represented by counsel at the hearing, at his own expense; and that failure to appear may result in the hearing being held *in absentia* with disciplinary sanctions imposed without further notice or opportunity to be heard.

On January 29, 2014, at 3:14 p.m., Respondent sent the Board via e-mail, a so-called "Motion to Stay Hearing or Appear by Teleconference." The e-mail indicated Respondent was moving to stay the proceeding because he had pending "federal litigation in the Pennsylvania

2

District Court." The e-mail further indicated that Respondent entered into a settlement agreement with USC which he alleges sealed his disciplinary records. He further claimed that "the AAMC and NHES …both investigated this issue already and agreed with [him]." He additionally alleged that the Board failed to investigate his allegations against DHMC, including that he was "defrauded, instructed to perform unnecessary [medical] exams and abandoned as a patient."

Respondent's January 29, 2014 e-mail also noted that he was "taking action against the Board for what appears to be punitive actions against [him]" and he requested that the Board defer "to the legal authority of the federal judiciary system and postpone [the] hearing." Respondent also wrote that he was not able to drive to New Hampshire for medical reasons, that he conducted three depositions via Skype and that if the stay was denied he requested to appear by telephone or video conference.

On February 3, 2014 hearing counsel objected to the request. The objection indicated that Respondent failed to comply with Board rules, in that any requests to continue or postpone are required to be filed at least ten days prior to the scheduled hearing. Additionally, hearing counsel noted further procedural issues with the request; specifically that it did not comply with the provisions of N.H. Admin. R. Med 204, et. seq.

The presiding officer denied the request to Stay the proceeding, finding first that Respondent failed to follow Board procedural regulation and for the reasons articulated in hearing counsel's objection, the so-called "motion" should be denied. The Board found unpersuasive the notion that the case should be stayed because of a pending federal lawsuit in Pennsylvania. Moreover, Respondent provided no information relative to his "illness." Respondent was informed of the denial on February 3, 2014 at approximately 4:30 p.m. He

Exhibit 2
Page 26

subsequently forwarded another e-mail on February 5, 2014, at approximately 6:00 a.m. indicating that a winter storm and his current automobile situation would preclude him from attending the hearing.

The hearing went forward as scheduled on February 5, 2014, commencing just after 1:00 p.m. Board members present included:

Mark Sullivan, P.A.
John H. Wheeler, D.O.
Robert M. Vidaver, M.D.
Louis E. Rosenthall, M.D.
Gail Barba, Public Member
Edmund J. Waters, Jr., Public Member

Gail Barba, Public Member, served as presiding officer. Respondent did not appear, and Attorney Jeff Cahill appeared as hearing counsel.

## Discussion and Rulings

It is first necessary to discuss Respondent's request for a stay and his decision not to attend the hearing. Regardless of the procedural irregularities concerning Respondent's request to stay the proceeding sent via e-mail on January 29, 2014 the Board finds substantively, the rational for the request to be both lacking in factual detail and unpersuasive. The issue before the Board is a narrow one. It revolves around whether Respondent violated RSA 329:17, VI (a) by failing to disclose, in 2011 on the residency training application and supplement, his attendance and dismissal from the Keck School of Medicine. The fact that Respondent named the Board in a federal lawsuit that is currently pending is of no moment in the determination of that issue. Moreover, pursuant to RSA 329:17, IX, no civil action shall be maintained against the board with regard to any activity or action taken in the performance of its statutory duties. *See* RSA 329:17, IX. The Board thus determined it was appropriate to proceed.

4

The Board finds that timely notice had been provided to the Respondent with regard to the hearing. Here, where Respondent had over four months to prepare and attend or timely ask for a continuance, his eleventh hour request to stay the proceeding was without merit. Had there been some legitimate medical reason that had been articulated by the Respondent, the Board would have given that issue consideration. Respondent, however, simply indicated that he had medical reasons that precluded him from driving to New Hampshire, which he then did not reassert on February 5, 2014 when he provided notice that he would not attend the hearing, citing instead to weather conditions and automobile issues. Petitioner provided no reasonable grounds for continuing the hearing, nor did he ask for reconsideration, indicating that weather - given the forecast - would prevent him from attending.

The Board opened the hearing just after 1:00 p.m. on February 5, 2014. It first entered Exhibits A and B, Respondents e-mails dated January 29 and February 5, as exhibits for Respondent. It also accepted Exhibits 1-3 from hearing counsel. Exhibit 1 is Respondent's 2011 NH Application for Residency Training License; Exhibit 2 is an excerpt of a March 1, 2007 court order in *Isaacs v. USC*; and Exhibit 3, the April 2008 Confidential Settlement in *Isaacs v. USC.* These exhibits along with notice of witnesses to be presented were provided to Respondent on January 31, 2014.

Hearing counsel also presented the testimony of Dori Lefevbre, Board Investigator. Ms. Lefevbre testified that she was able to obtain the documents that were marked as exhibits 2 and 3 as public records available on-line from the federal court system. She explained that the documents reflect that Respondent was dismissed from the Keck School. In fact, Exhibit 2, the California Federal District Court, Central District's Order on a Motion to Dismiss reveals that Respondent alleged he suffered from PTSD and an organic brain injury and in 2005 began his

studies at Keck School of Medicine. The Order further indicates that Respondent had numerous social problems with his classmates and engaged in offensive messaging to a female classmate that Respondent attributes to his Bipolar II diagnosis. The Order indicated Respondent alleged that several defendants attempted to harm his standing at USC, that Respondent attended a disciplinary hearing before the Student Performance Committee – where he did not contest stalking allegations against him; and that he was suspended and ultimately dismissed from the school. The Order at Exhibit 2 also indicated that Plaintiff requested that USC postpone the dismissal hearing scheduled for June 7, 2006, but that the hearing went ahead as scheduled.

Ms. Lefevbre also testified that she obtained Exhibit 3, as a public court record from the federal court's on-line system, which purportedly is the confidential settlement agreement between Respondent and USC. The document at page 1, indicates that Respondent understood and agreed "that his education at USC has ended irrevocably and forever and will not be resumed again at any time in the future."

In Exhibit A, Respondent alleges that the settlement agreement with USC "clearly sealed [his] disciplinary records, and a subsequent agreement annulled all contracts and acquitted all controversies with USC." It appears this is the reason Respondent contends he was not required to disclose the Keck School information on his training license application. A review, however, of Exhibit 3 indicates that it is only information related to the lawsuit, and the negotiation of the Settlement Agreement's terms and conditions that is confidential, along with the monetary settlement amount. There is no provision in Exhibit 3 "sealing the disciplinary records."

Exhibit 1, page 4 asks whether the applicant has been "reprimanded, sanctioned, restricted or disciplined in any activities involving medical education…" and Respondent certified, under penalty of perjury that he had not, where he marked "No" to the question.

6

Whether Respondent entered into a settlement agreement does not negate the fact that he attended a medical educational institution which ultimately dismissed him and will never allow him to return. The fact remains that there was discipline and expulsion from a medical educational institution notwithstanding the representation that the records have been sealed or a subsequent agreement "annulled all contracts." That Respondent brought a lawsuit against USC, which the parties settled and where USC specifically denied liability for the claims against it does not immunize Respondent from answering the application question truthfully.

The question on the application did not require Respondent to divulge information regarding the Confidential Settlement Agreement. The answer in the license application was, however, required to be correct. Respondent could have chosen to say, "Yes" which would have likely given him an opportunity to explain; or he could have indicated that he contends he was wrongfully dismissed.

RSA 329:17, IV (a) reads that disciplinary action may be taken against a licensee where the Board finds the person "has knowingly provided false information during any application for professional licensure… whether by making any affirmative statement which was false at the time it was made or by failing to disclose any fact material to the application." The Board finds that Respondent was required to truthfully divulge an answer to question 3 on the supplement to the application. The Board also finds that Respondent was required to list all medical schools attended. The application form and the supplement do not distinguish and inform the applicant that an answer is not required if some record was sealed or records were nullified by operation of law.

Here, Respondent was aware that he attended the Keck School, he was further aware that he was "sanctioned" or "restricted" or "disciplined" in "activities involving medical education."

Case 2:19-cv-08000-DSF-RAO   Document 1-2   Filed 09/16/19   Page 18 of 53   Page
ID #:132
Case 2:19-cv-02011-DSF-RAO   Document 14-1   Filed 06/26/19   Page 32 of 112   Page ID
#:144

As such, Respondent deliberately, consciously, and with purpose of design answered question 3

falsely.  Likewise, it is a material fact that Respondent attended a medical school other than

American University of the Caribbean.  Inaccuracies in the information provided which are false,

constitute a valid basis for discipline and license denial.

In this case, we need not take action on the license itself since pursuant to N.H. Admin R.

Med 305.04(b) training licenses are only valid for the practice of medicine when *inter alia* the

licensee is practicing under the auspices of the training program.  *See* N.H. Admin R. Med

305.04 (b) (1).  Here, there was evidence that the DHMC terminated Respondent from their

Program.  Accordingly, the license is revoked as of the date of termination; as such it was

canceled by operation of law.

We, however, believe a reprimand is appropriate in this situation.  Respondent treated his

time at the Keck School as if it never occurred.  He provided no documents to suggest or

provided no credible evidence regarding the dissolution of his record of attendance at the Keck

School.  Even where Respondent chose not to attend the hearing, he still could have provided

documentary support for his position in advance of the hearing.  N.H. Admin. R. Med 206.09 (c).

For example, he could have submitted his exhibits supporting the statements found in Exhibit A,

but chose instead an alternate course of action.  Exhibit 3 certainly does not suggest the nullity of

the sanction or discipline, where Exhibit 2 clearly evinces Respondent was dismissed from the

medical school on June 13, 2006.[1]  We find this Agreement does not insulate Respondent from

having to affirmatively disclose his attendance.  As such, where we also find the evidence

submitted supports the conclusion that Respondent knowingly made a false statement and further

---

[1] Exhibit 2 does indicate that on June 22, 2006 Respondent appealed the decision asking for a reversal. Exhibit 3, at
paragraph 19 references the potentiality of effecting the dismissal of all outstanding administrative charges. There,
however, is no credible evidence before this Board which suggests Respondent's termination from the school was
dismissed. Further we are aware of no New Hampshire requirement that would equate a civil settlement to the
annulment of a criminal record pursuant to RSA 651:5, X.



# Re: hey

███ Scot███████████████          Tue, Feb 7, 2012 at 7:31 PM
To: jeffrey.isaacs.wg03@wharton.upenn.edu

Alright -- I just hope you're not pinning too much on this. My read of all this is that USC -- expert in the medical training /standards -- threw down a spike that they knew was going to be a long term impediment.  I've not read what Dartmouth asked you to disclose, but I am sure it's broadly worded and based on fact (rather than legal disposition).

I'm in Detroit. Boarding plane for Ft Wayne. ███████████████
F. Scot██



>
>

19-cv-2011 Isaacs v. USC                    Exhibits Page 63



# Dr. Peter J. Katsufrakis Appointed President of National Board of Medical Examiners (NBME)

PHILADELPHIA, PA January 30, 2017 – Following a national search, the Executive Board of the National Board of Medical Examiners has selected Peter J. Katsufrakis, MD, MBA to lead the NBME as its next president. The NBME, which creates and administers a wide range of health professions assessments and assessment tools, is best known as the creator and co-sponsor of the United States Medical Licensing Examination® (USMLE®), which all medical doctors must pass to be licensed to practice in the U.S. The appointment of Dr. Katsufrakis as president will be effective January 30, 2017 upon the retirement of Donald E. Melnick, MD, who has led the NBME since 2000.



Dr. Katsufrakis with his partner Shathi Abdulrab.

Gmail - FWD: Transferring Second Amended Complaint to respective USC entities                7/27/19, 9:36 AM

 **Gmail**

## FWD: Transferring Second Amended Complaint to respective USC entities

**Jeffrey Isaacs** <jdi@alum.dartmouth.org>                               Sun, Aug 12, 2007 at 10:47 PM
To: rdalsoglio@dm-lawfirm.com.certified.readnotify.com, treyhobbs@sbcglobal.net.certified.readnotify.com

Dear Ms. Dal Soglio:

Nearly ONE YEAR ago, I sent you a request to transfer my complaints to respective entities at USC. You have threatened me not to contact your client without first contacting you. At this point, a lawsuit against "DAL SOGLIO & MARTENS" as well as "Mr TODD DICKEY" is imminent for this interference. The SAC/TAC contain complaints that shall suffice, standalone, as initial complaints to the departments listed in my below email. Please also include the USC Board of Trustees in the list of entities I now deserve an appeal to. As you know, the administrative appeal with Taylor only represents one of many avenues that my case may be appealed to. Again, should you wish to provide me with any forms that would supplement my complaint, please deliver these to me WITHIN ONE WEEK. While the evidence shows last time my request was forwarded TWENTY-EIGHT times (see attached certified receipts) in an apparent effort to find a work-around to my request, this will not be tolerated any more and will result in immediate litigation against your firm and your client.

Regards,
Jeffrey Isaacs


>>>
Ms. Dal Soglio:

On July 31st I attempted to deliver a Petition (SAC Exhibit L) to numerous USC authorities. I received no response from any of the addressees. It is important to me that each and every allegation in the Petition, and now, the Second Amended Comlaint, is filed with the appropriate persons at USC. Please see that the Second Amended Complaint is filed as an official grievance with these persons and departments, to the fullest extent that any contractual right of mine to issue a grievance exists. Please see that this grievance/complaint is distributed, without limitation, to Dr. Steven B. Sample, the Keck SPC, the Department of Public Safety, the Vice President of Student Affairs, and the Student Judicial Affairs Committee. Please let me know if there are any additional forms I may need to fill out in conjunction with the SAC; because I am not permitted on campus, I cannot do this myself. Because the SAC is a verified court declaration, as you know, it should suffice in stand-alone form. Please see that this entire request is executed before any dismissal may occur.

Regards,

Jeffrey D. Isaacs


📄 **transferSAC.pdf**
113K

19-cv-2011 Isaacs v. USC                          Exhibits Page 65

# Re  dNotify

**Refresh Display   Close Window**                          **Read Notification**

**ReadNotify email tracking history**



To  rdalsoglio@dm-lawfirm.com
From  Jeffrey.D.Isaacs.99@Alum.Dartmouth.ORG
Subject **Transferring Second Amended Complaint to respective USC entities**
Sent on  14-Sep-06 at 17:38:34pm 'US/Central' time
1st Open  **14-Sep-06 at 17:41:10pm**  -5:00                    (81%) Valencia, California, United States

## Tracking Details

**Opened** at apparent address of: **rdalsoglio@dm-lawfirm.com**
  Opened 14-Sep-06 at 17:41:10pm (UTC -5:00)  ·  2mins36secs after sending
  Location Valencia, California, United States (81% likelihood)
  Opened on (66.251.119.2:23068)
    Language of recipient's PC: en-us (English/United States)
    Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)
    Last log No more activity after 14-Sep-06 at 17:47:55pm (UTC -5:00)  ·  Log data indicates email was read for at least 6mins45secs (approx.)

**Forwarded**
  Opened 14-Sep-06 at 18:00:25pm (UTC -5:00)  ·  21mins51secs after sending
  Location Los Angeles, California, United States (81% likelihood)
  Opened on uscgc003.usc.edu (128.125.59.64:2130)
    Language of recipient's PC: en-us (English/United States)
    Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; InfoPath.1; .NET CLR 1.1.4322; .NET CLR 2.0.50727)

**Re-opened (by earlier reader #1)** at apparent address of: **rdalsoglio@dm-lawfirm.com**
  Opened 18-Sep-06 at 10:30:19am (UTC -5:00)  ·  3days16hours51mins45secs after sending
  Location Valencia, California, United States (81% likelihood)
  Opened on (66.251.119.2:55444)
    Language of recipient's PC: en-us (English/United States)
    Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)

**Re-opened (by earlier reader #2)**
  Opened 21-Sep-06 at 11:56:17am (UTC -5:00)  ·  6days18hours17mins43secs after sending
  Location Los Angeles, California, United States (81% likelihood)
  Opened on uscgc003.usc.edu (128.125.59.64:1197)
    Language of recipient's PC: en-us (English/United States)
    Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; InfoPath.1; .NET CLR 1.1.4322; .NET CLR 2.0.50727)
    Last log No more activity after 21-Sep-06 at 11:56:47am (UTC -5:00)  ·  Log data indicates email was read for at least 30secs (approx.)

**Forwarded**
  Opened 21-Sep-06 at 11:58:32am (UTC -5:00)  ·  6days18hours19mins58secs after sending
  Location Los Angeles, California, United States (81% likelihood)
  Opened on uscgc008.usc.edu (128.125.59.77:1221)
    Language of recipient's PC: en-us (English/United States)
    Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)
    Last log No more activity after 21-Sep-06 at 12:13:40pm (UTC -5:00)  ·  Log data indicates email was open for at least 15mins8secs (approx.)

**Re-Opened (by earlier reader #3)**
  Opened 21-Sep-06 at 12:27:00pm (UTC -5:00)  ·  6days18hours48mins26secs after sending
  Location Los Angeles, California, United States (81% likelihood)
  Opened on uscgc008.usc.edu (128.125.59.77:1282)
    Language of recipient's PC: en-us (English/United States)
    Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)

**Re-Opened (by earlier reader #1)**
  Opened 21-Sep-06 at 12:52:11pm (UTC -5:00)  ·  6days19hours13mins37secs after sending
  Location Valencia, California, United States (81% likelihood)
  Opened on (66.251.119.2:26633)

Read-Notification for " Transferring Second Amended Complaint to resp... http://www.readnotify.com/readnotify/show.asp?c17471ce122b1d9433fe...

Language of recipient's PC: en-us (English/United States)
    Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)
    Last log No more activity after 21-Sep-06 at 12:55:54pm (UTC -5:00)  -  Log data indicates email was read for at least 3mins43secs (approx.)

**Re-opened (by earlier reader #3)**
    Opened 21-Sep-06 at 13:22:59pm (UTC -5:00)  -  6days19hours44mins25secs after sending
  Location Los Angeles, California, United States (81% likelihood)
Opened on uscgc008.usc.edu (128.125.59.77:1366)
    Language of recipient's PC: en-us (English/United States)
    Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)
    Last log No more activity after 21-Sep-06 at 13:31:54pm (UTC -5:00)  -  Log data indicates email was read for at least 8mins55secs (approx.)

**Re-Opened (by earlier reader #3)**
    Opened 22-Sep-06 at 11:30:48am (UTC -5:00)  -  7days17hours52mins14secs after sending
  Location Los Angeles, California, United States (81% likelihood)
Opened on uscgc008.usc.edu (128.125.59.77:2801)
    Language of recipient's PC: en-us (English/United States)
    Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)

**Re-Opened (by earlier reader #1)**
    Opened 22-Sep-06 at 12:30:13pm (UTC -5:00)  -  7days18hours51mins39secs after sending
  Location Fairport, New York, United States (40% likelihood)

**Re-Opened (by earlier reader #3)**
    Opened 22-Sep-06 at 15:38:33pm (UTC -5:00)  -  7days21hours59mins59secs after sending
  Location Los Angeles, California, United States (81% likelihood)
Opened on uscgc008.usc.edu (128.125.59.77:3555)
    Language of recipient's PC: en-us (English/United States)
    Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)
    Last log No more activity after 22-Sep-06 at 15:44:46pm (UTC -5:00)  -  Log data indicates email was read for at least 6mins13secs (approx.)

**Re-opened (by earlier reader #2)**
    Opened 22-Sep-06 at 16:00:48pm (UTC -5:00)  -  7days22hours22mins14secs after sending
  Location Los Angeles, California, United States (81% likelihood)
Opened on uscgc003.usc.edu (128.125.59.64:1679)
    Language of recipient's PC: en-us (English/United States)
    Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; InfoPath.1; .NET CLR 1.1.4322; .NET CLR 2.0.50727)
    Last log No more activity after 22-Sep-06 at 16:01:18pm (UTC -5:00)  -  Log data indicates email was read for at least 30secs (approx.)

**Re-opened (by earlier reader #1)**
    Opened 22-Sep-06 at 16:10:48pm (UTC -5:00)  -  7days22hours32mins14secs after sending
  Location Valencia, California, United States (81% likelihood)
Opened on (66.251.119.2:21854)
    Language of recipient's PC: en-us (English/United States)
    Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)
    Last log No more activity after 22-Sep-06 at 16:11:15pm (UTC -5:00)  -  Log data indicates email was read for at least 27secs (approx.)

**Re-Opened (by earlier reader #3)**
    Opened 25-Sep-06 at 11:13:57am (UTC -5:00)  -  10days17hours35mins23secs after sending
  Location Los Angeles, California, United States (81% likelihood)
Opened on uscgc008.usc.edu (128.125.59.77:3898)
    Language of recipient's PC: en-us (English/United States)
    Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)
    Last log No more activity after 25-Sep-06 at 11:20:07am (UTC -5:00)  -  Log data indicates email was read for at least 6mins10secs (approx.)

**Re-opened (by earlier reader #2)**
    Opened 25-Sep-06 at 11:22:43am (UTC -5:00)  -  10days17hours44mins9secs after sending
  Location Los Angeles, California, United States (81% likelihood)
Opened on uscgc003.usc.edu (128.125.59.64:1163)
    Language of recipient's PC: en-us (English/United States)

19-cv-2011 Isaacs v. USC          Exhibits Page 67

Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; InfoPath.1; .NET CLR 1.1.4322; .NET CLR 2.0.50727)

**Re-opened (by earlier reader #1)**
Opened 25-Sep-06 at 11:24:43am (UTC -5:00)  -  10days17hours46mins9secs after sending
Location Valencia, California, United States (81% likelihood)
Opened on (66.251.119.2:42489)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)

**Re-opened (by earlier reader #2)**
Opened 25-Sep-06 at 11:31:29am (UTC -5:00)  -  10days17hours52mins55secs after sending
Location Los Angeles, California, United States (81% likelihood)
Opened on uscgc003.usc.edu (128.125.59.64:1180)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; InfoPath.1; .NET CLR 1.1.4322; .NET CLR 2.0.50727)
Last log No more activity after 25-Sep-06 at 11:39:20am (UTC -5:00)   -   Log data indicates email was read for at least 7mins51secs (approx.)

**Re-Opened (by earlier reader #2)**
Opened 25-Sep-06 at 12:07:17pm (UTC -5:00)  -  10days18hours28mins43secs after sending
Location Los Angeles, California, United States (81% likelihood)
Opened on uscgc003.usc.edu (128.125.59.64:1131)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; InfoPath.1; .NET CLR 1.1.4322; .NET CLR 2.0.50727)

**Re-opened (by earlier reader #1)**
Opened 25-Sep-06 at 12:10:01pm (UTC -5:00)  -  10days18hours31mins27secs after sending
Location Valencia, California, United States (81% likelihood)
Opened on (66.251.119.2:47695)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)
Last log No more activity after 25-Sep-06 at 12:12:13pm (UTC -5:00)   -   Log data indicates email was read for at least 2mins12secs (approx.)

**Re-opened (by earlier reader #3)**
Opened 25-Sep-06 at 12:12:45pm (UTC -5:00)  -  10days18hours34mins11secs after sending
Location Los Angeles, California, United States (81% likelihood)
Opened on uscgc008.usc.edu (128.125.59.77:1109)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)

**Re-Opened (by earlier reader #3)**
Opened 26-Sep-06 at 11:42:38am (UTC -5:00)  -  11days18hours4mins4secs after sending
Location Los Angeles, California, United States (81% likelihood)
Opened on uscgc008.usc.edu (128.125.59.77:2464)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)
Last log No more activity after 26-Sep-06 at 11:47:33am (UTC -5:00)   -   Log data indicates email was read for at least 4mins55secs (approx.)

**Re-opened (by earlier reader #2)**
Opened 26-Sep-06 at 13:08:12pm (UTC -5:00)  -  11days19hours29mins38secs after sending
Location Los Angeles, California, United States (81% likelihood)
Opened on uscgc003.usc.edu (128.125.59.64:1347)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; InfoPath.1; .NET CLR 1.1.4322; .NET CLR 2.0.50727)

**Re-opened (by earlier reader #3)**
Opened 26-Sep-06 at 18:50:22pm (UTC -5:00)  -  12days1hour11mins48secs after sending
Location Los Angeles, California, United States (81% likelihood)
Opened on uscgc008.usc.edu (128.125.59.77:1409)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)

19-cv-2011 Isaacs v. USC                              Exhibits Page 68

Read-Notification for " Transferring Second Amended Complaint to re ID #: 199 http://www.readnotify.com/readnotify/show.asp/c17471ce122b1d9433fe...

**Re-Opened (by earlier reader #3)**
    Opened 29-Sep-06 at 19:07:37pm (UTC -5:00)  -  15days1hour29mins3secs after sending
    Location Los Angeles, California, United States (81% likelihood)
  Opened on uscgc008.usc.edu (128.125.59.77:1549)
    Language of recipient's PC: en-us (English/United States)
    Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)

**Re-Opened (by earlier reader #1)**
    Opened 1-Oct-06 at 19:55:27pm (UTC -5:00)  -  17days2hours16mins53secs after sending
    Location Valencia, California, United States (81% likelihood)
  Opened on (66.251.119.2:59862)
    Language of recipient's PC: en-us (English/United States)
    Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)
    Last log No more activity after 1-Oct-06 at 19:58:08pm (UTC -5:00)  -  Log data indicates email was read for at least 2mins41secs (approx.)

**Re-Opened (by earlier reader #1)**
    Opened 31-Oct-06 at 16:34:26pm (UTC -5:00)  -  46days22hours55mins52secs after sending
    Location Valencia, California, United States (81% likelihood)
  Opened on (66.251.119.2:19198)
    Language of recipient's PC: en-us (English/United States)
    Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)

**Re-Opened (by earlier reader #1)**
    Opened 5-Nov-06 at 19:54:50pm (UTC -5:00)  -  52days2hours16mins16secs after sending
    Location Valencia, California, United States (81% likelihood)
  Opened on (66.251.119.2:32162)
    Language of recipient's PC: en-us (English/United States)
    Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)

**Re-Opened (by earlier reader #1)**
    Opened 5-Feb-07 at 16:39:02pm (UTC -5:00)  -  143days23hours28secs after sending
    Location Chicago, Illinois, United States (81% likelihood)
  Opened on jd-131-26.jdrp.com (168.98.131.26:53469)
    Language of recipient's PC: en-us (English/United States)
    Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)

**Summary  -  as at 12-Aug-07 at 21:30:54pm (UTC -5:00)  -  332days3hours52mins20secs after sending**
    Total Opened 28 times by 3 readers
  Reader #1 (rdalsoglio@dm-lawfirm.com) Opened 11 times for 15mins48secs total
  Reader #2 Opened 7 times for 8mins51secs total
  Reader #3 Opened 10 times for 41mins21secs total

    **notification**

19-cv-2011 Isaacs v. USC                     Exhibits Page 69

Jeff Isaacs
MS I
March 2, 2006

Delivered no trespassing letter + spc letter
(2/23 mtg.).

Delivered no trespassing letter + spc letter    FOR
(Kotanfrabia)



# ALERT
# NOTIFICATION
## UNIVERSITY OF SOUTHERN CALIFORNIA
### OFFICIAL PUBLICATION OF THE USC DEPARTMENT OF PUBLIC SAFETY

### OFFICER SAFETY

S-ISAACS is currently ████████████████████████████████████████ tatements: "You have no idea how ████████████████████████████████████████ "I don't think they will expel me because they are afraid I'll come back with a gun". USC will be notified of S-ISAACS release. This information will be forwarded to all Watch Commanders. POC Mr. Peter Katsufrakis, Associate Dean of Students (323) 442-2420.

S-ISAACS, former medical student at USC HSC campus, has been served with a suspension letter. He is also the subject of a harassment investigation and has been served a stay away letter. Both the stay away letter and suspension notice are on file in USC Communications Center.

**NAME**: ISAACS, JEFFREY D.
**SEX:** M
**RACE:** W
**HAIR:** Bro
**EYE:** Bro
**HT:** Unk
**WT:** Unk
**DOB:** ████████ Y.O.



**NOTE:**
Address: 425 Broadway Santa Monica, Ca.

**Prior Contacts**
06-00078   01/10/06   Harassment
06-00733   03/17/06   Criminal Threats

## FOR INTERNAL DISTRIBUTION ONLY, NOT TO BE DISTRIBUTED OUTSIDE OF USC DEPARTMENT OF PUBLIC SAFETY.

**APPROVED BY:   CAPT. GLORIA GRAHAM**
**Prepared by: DET. LEESA SANDELL (213) 740-2489   Cell# (213) 276-7933     Date: 02-17-06**

 Gmail

# Service of Process- URGENT

**Jeffrey** <jeffreydi@gmail.com>                                         Fri, May 31, 2019 at 11:53 PM
To: andreasm@usc.edu, Keith <keith@aaone.law>

Andreas:

Your letter is shameful. USC apparently has no remorse for allowing a med student to be admitted through NIH connections, and moreover, to collude with your less than perfect (2 felons I believe) med school deans to mislead the faculty (in violation of RICO) and harm my life and career to simply serve others as a doctor. We thought after a decade, USC administration might do the right thing. We were wrong.

It is frankly not surprising you are charged in dozens of RICO claims alleging similar activity.

You should be ashamed for your letter to Atty Mathews. Moreover, I advise you that I consider the threats contained therein it to be further violations of the RICO statute.

Please advise , within 1 business day, who you have authorized (name & location & phone) to accept formal summons service. We have waited patiently for your response re ADR but further delays in service of process shall not be tolerated.

Please direct further correspondence on this matter to me at this point as the Plaintiff in pro per. Please be advised any correspondence I receive from you shall be part of the record, I reserve the right to re-publish it, forward it to appropriate entities; we are in no way engaged in privileged settlement discussions at this point as you declined ADR.

Dr Jeffrey Isaacs


Subject: Re: Isaacs matter
From: Andreas Joerg Meyer <andreasm@usc.edu>
Date: Thu, May 30, 2019 8:15 pm
To: "Keith Mathews, Esq." <keith@aaone.law>

Mr. Mathews,
I am in receipt of your correspondence and the complaint filed by your client.

The University of Southern California (USC) unequivocally rejects your client's request to engage in mediation. Not only does the University dispute the facts set forth in the complaint and in your letter, but we believe the complaint to suffer from so many legal deficiencies and factual inaccuracies that it is not only inviable but also frivolous and harassing. We demand that the complaint be dismissed in its entirety immediately. If your client proceeds with the complaint, USC will not only mount a vigorous defense, but we will also pursue all remedies available to the University, including sanctions under Rule 11 and a counterclaim for liquidated damages, costs, and attorneys' fees caused by your client's breach of more than one provision contained in the Confidential Settlement Agreement and Release he entered into with the University in 2008.

Sincerely,

Andreas J. Meyer
University Counsel
University of Southern California
Office of the General Counsel
Tel: (213) 740-7922

19-cv-2011 Isaacs v. USC                    Exhibits Page 73

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

Jeffrey Isaacs ("Isaacs"), on the one hand, and University of Southern California ("USC"), on the other hand, have agreed to enter into this Confidential Settlement Agreement and Release (the "Agreement").

1.    **Dismissal With Prejudice.**

Isaacs agrees that he will execute and deliver for filing to counsel of record for USC, Robin D. Dal Soglio of Dal Soglio & Martens LLP, the Dismissal with Prejudice (attached hereto as Exhibit A) of Robert Baughman, Brian E. Henderson, Peter J. Katsufrakis and James M.H. Ball (together, the "Individual Defendants") from United States District Court Case No. CV-06-3338 GAF (Ex). Counsel for USC will file the Dismissal with Prejudice with the Court.

2.    **Sealing of Disciplinary Records.**

In exchange for the Dismissal with Prejudice of the Individual Defendants, referenced above, Defendant USC agrees that commencing immediately upon the execution of this Settlement Agreement and receipt of the signed Dismissal with Prejudice, USC will not release or disclose Isaacs' disciplinary records to any third party, including but not limited to other educational institutions and/or potential employers, unless it receives written consent from Isaacs or a subpoena or court order.

3.    **Non-Admission of Liability.**

This Agreement shall not in any way be construed as an admission by USC or any of the Individual Defendants that they have harassed, discriminated against or retaliated against Isaacs in any way, or otherwise acted wrongfully with respect to Isaacs. USC and the Individual Defendants specifically deny that they have any liability to or have done any wrongful acts against Isaacs.

4.    **No Other or Future Lawsuits, Charges, Claims.**

With the exception of United States District Court Case No. CV-06-3338 GAF (Ex) (the "Lawsuit"), Isaacs represents that he has not filed any other lawsuits, charges, claims for arbitration, complaints, or appeals of any kind with any court or administrative or governmental agency against the Individual Defendants or any other persons or entities released herein, and he agrees that he will not file any lawsuits, charges, complaints, or appeals at any time hereafter based on, referring to, or incorporating any events, acts or omissions through and including the date hereof.

If Isaacs's representations in this paragraph prove to be false, or if he violates the promises made in this paragraph and files a lawsuit, charge, complaint, or appeal of any kind with any court or administrative or governmental agency against the Individual Defendants, based on any events, acts or omissions through and including the date hereof, Isaacs will pay for all costs and losses, including actual attorneys' fees, incurred by Defendants in connection with said lawsuit, charge, complaint, or appeal.

Initialed JDI

1

5.    **Complete Release by Isaacs.**

As a material inducement to USC to enter into this Agreement, Isaacs hereby irrevocably and unconditionally waives and releases all rights and claims, known and unknown, which he may have against each and all of the Individual Defendants and each of their respective assigns, agents, representatives, attorneys, spouses, children and other family members, and all persons acting by, through, under or in concert with any of them, from the beginning of time to the date Isaacs signs this Agreement. This includes but is not limited to a release of all rights and claims Isaacs may have against the Individual Defendants under any federal or state anti-discrimination statutes, including but not limited to the Americans with Disabilities Act and the Rehabilitation Act of 1973, as well as all claims, known and unknown, which he may have for breach of contract, express or implied; breach of the covenant of good faith and fair dealing; and retaliation, defamation, conspiracy, infliction of emotional distress, invasion of privacy, assault, battery, misrepresentation, or any other tort.

6.    **Knowing and Voluntary Waiver of Known and Unknown Claims**

Isaacs agrees that, as a condition of this Agreement, he expressly releases all rights and claims that he does not know about, as well as those he knows about. Thus, consistent with the terms of his release, Isaacs expressly waives all rights under Section 1542 of the Civil Code of the State of California, which reads as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

7.    **Encouragement to Consult With Attorney**

Counsel for USC has strongly encouraged Isaacs to consult with an attorney before signing this Agreement, and Isaacs hereby acknowledges that he has either fully consulted with an attorney prior to signing or has knowingly and voluntarily decided not to do so.

8.    **No Representations**

The parties hereto represent and agree that no promises, statements or inducements have been made to them which caused them to sign this Agreement other than those expressly stated in this Agreement.

9.    **Successors**

This Agreement shall be binding upon the parties and upon their respective heirs, administrators, representatives, executors, successors and assigns, and shall inure to the benefit of the parties and others released herein, their representatives, executors, successors and assigns.

Initialed  JDI

2

10.    **Confidentiality of This Agreement**

      a.     As a material inducement for USC to enter into this Agreement, Isaacs agrees not to disclose the negotiation, terms, or conditions of this Agreement to anyone other than Isaacs's attorneys and parents (hereafter referred to as "Isaacs's Confidants") and, even as to such a person, only if such persons agree to honor this confidentiality requirement. Violation of this confidentiality requirement by any of Isaacs's Confidants will be treated as a violation of this Agreement by Isaacs.

      b.     This section does not prohibit disclosure of the negotiation, terms or conditions of this Agreement to the extent necessary legally to enforce this Agreement, nor does it prohibit disclosures to the extent otherwise required by law (but only if the enforcing party notifies the other party and its attorneys of a disclosure obligation or request within three business days after he/it learns of it and does not actively oppose the party taking all steps it deems to be appropriate to prevent or limit the required disclosure).

      c.     If Isaacs is asked about his claims against the Individual Defendants, and only if asked, he may state only that "the matter has been resolved."

11.    **Newly Discovered Facts**

      Isaacs acknowledges that he might hereafter discover facts different from or in addition to those he now knows or believes to be true with respect to a claim or claims released herein, and he expressly agrees to assume the risk of possible discovery of additional or different facts, and agrees that this Agreement shall be and remain effective in all respects regardless of such additional or different discovered facts.

12.    **Voluntary Participation in This Agreement**

      The parties acknowledge that they have thoroughly discussed all aspects of their rights and this Agreement with their respective attorneys, or have knowingly and voluntary chosen not to do so, and that they have carefully read and fully understand all of the provisions of this Agreement, that they have been given a reasonable period of time to consider signing this Agreement, and that they are voluntarily signing this Agreement.

13.    **Governing Law**

      This Agreement is made and entered into in the State of California and shall in all respects be interpreted, enforced and governed under the laws of said State.

14.    **Further Necessary Actions**

      The parties agree, without further consideration, to sign and/or cause to be signed, and to deliver to counsel for one another, any other documents and to take any other action as may be necessary to fulfill their obligations under this Agreement, including, but not limited to, effecting the dismissal of all outstanding administrative charges.

Initialed JDI



15. **Severability**

Should any of the provisions in this Agreement, other than the Release set forth in Paragraph 5, be declared or be determined to be illegal or invalid, all remaining parts, terms or provisions shall be valid, and the illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement.

16. **Proper Construction**

a.  The language of all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning, and not strictly for or against any of the parties.

b.  As used in this Agreement, the term "or" shall be deemed to include the term "and/or" and the singular or plural number shall be deemed to include the other whenever the context so indicates or requires.

c.  The paragraph headings used in this Agreement are intended solely for convenience of reference and shall not in any manner amplify, limit, modify or otherwise be used in the interpretation of any of the provisions hereof.

17. **Entire Agreement**

This Agreement is the entire agreement between Isaacs and USC and fully supersedes any and all prior agreements or understandings between the parties pertaining to its subject matter.

**PLEASE READ CAREFULLY. THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS.**

Executed at Berwyn Pennsylvania, this 29th day of August 2007.

By: _____
       Jeffrey Isaacs

Executed at Los Angeles, California, this 31st day of August 2007.

UNIVERSITY OF SOUTHERN CALIFORNIA

By: _____
       Dennis F. Dougherty
       Senior Vice President for Finance

Initialed: JDI

4

**CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

The University of Southern California ("USC") and Jeffrey Isaacs ("Isaacs") have agreed to enter into this Confidential Settlement Agreement and Mutual Release (the "Agreement").

### 1. Dismissal With Prejudice.

Isaacs agrees that he will execute and deliver for filing to counsel of record for USC, Robin D. Dal Soglio of Dal Soglio & Martens LLP, the Stipulation of Dismissal with Prejudice (attached hereto as Exhibit A) of USC from United States District Court Case No. CV-06-3338 GAF (Ex). Counsel for USC will file the Dismissal with Prejudice with the Court.

### 2. No Future Application to University.

Isaacs understands and agrees that his education at USC has ended irrevocably and forever and will not be resumed again at any time in the future. Isaacs further agrees that he will not apply for or otherwise seek admission to USC or any related or affiliated entity at any time in the future, under any circumstances whatsoever.

### 3. Non-Admission of Liability.

This Agreement shall not in any way be construed as an admission by USC that it has discriminated against or retaliated against Isaacs in any way, or otherwise acted wrongfully with respect to Isaacs or any other person, or that Isaacs has any rights whatsoever against it. USC specifically denies that it has any liability to or has done any wrongful acts against Isaacs or any other person.

### 4. Benefits for Isaacs.

Within fourteen (14) days of USC's receipt of the original of this Agreement signed by Isaacs and including executed copies of Exhibits A and B, USC will transmit to Isaacs one check made payable to Isaacs in the gross amount of Ten Thousand Dollars ($10,000).

### 5. Responsibility for Taxes.

Isaacs understands and acknowledges that USC will report the payment described in paragraph 4 to the appropriate taxing authorities as required by law. Isaacs agrees that he is solely responsible for all tax obligations, including, but not limited to, all payment obligations which may arise as a consequence of this Agreement. Isaacs further agrees promptly to pay and to indemnify and hold USC and others released herein harmless from and against any and all loss, cost, damage or expense, including, without limitation, attorneys' fees, interest, assessments, withholding and penalties, arising out of any dispute over underwithholding or other tax treatment of any of the proceeds received by Isaacs as a result of this Agreement. Isaacs further agrees not to seek or make any claim against USC or others released herein for any loss, cost, damage or expense if a claim or adverse determination is made in connection with underwithholding or other tax treatment of any of the proceeds of this Agreement or any portion

Initialed ___ 2 ⅅⅆ

1

thereof. Isaacs understands and agrees that neither USC nor others released herein has any duty to defend against any claim or assertion in connection with underwithholding or other tax treatment of the proceeds of this settlement or any portion thereof, and Isaacs agrees to assume full responsibility for defending against any such claim or assertion.

6. **No Other or Future Lawsuits, Charges, Claims for Arbitration or Complaints of Any Nature Whatsoever.**

With the exception of United States District Court Case No. CV-06-3338 GAF (Ex), which is fully and finally settled herein, Isaacs represents that he has not filed any other lawsuits, charges, claims for arbitration, complaints, or appeals of any kind with any court or administrative or governmental agency against USC or any other persons or entities released herein, and he agrees that he will not file any lawsuits, charges, claims for arbitration, complaints, or appeals at any time hereafter based on, referring to, or incorporating any events, acts or omissions through and including the date hereof.

If Isaacs's representations in this paragraph prove to be false, or if he violates the promises made in this paragraph and files a lawsuit, charge, claim for arbitration, complaint, or appeal of any kind with any court or administrative or governmental agency against USC or any other persons or entities released herein, based on any events, acts or omissions through and including the date hereof, Isaacs will pay for all costs and losses, including actual attorneys' fees, incurred by USC in connection with said lawsuit, charge, complaint, or appeal.

7. **Complete Release by Isaacs.**

As a material inducement to USC to enter into this Agreement, Isaacs hereby irrevocably and unconditionally waives and releases all rights and claims, known and unknown, which he may have against USC, the Keck School of Medicine, and each of their respective successors, assigns, agents, trustees, officers, administrators, faculty, students, current and former employees, representatives, attorneys, divisions, subsidiaries, affiliates (and agents, trustees, officers, administrators, faculty, current and former employees, representatives and attorneys of such divisions, subsidiaries, and affiliates), and Robert Baughman and each of his family members, and all persons acting by, through, under or in concert with any of them (collectively, the "Releasees") from the beginning of time to the date Isaacs signs this Agreement from any and all claims, demands, contracts, expenses, liens, covenants, debts, attorney's fees, causes of action, damages, judgments, orders, and liabilities (collectively "Claims") of whatever kind or nature in law, equity, or otherwise, whether now known or unknown, suspected, or unsuspected, and whether or not concealed or hidden, which Isaacs now owns or holds or had at any time heretofore owned or held against the Releasees.


Initialed

2

8.    **Release by USC**

      As a material inducement to Isaacs to enter into this Agreement, USC does hereby irrevocably and unconditionally release, acquit and forever discharge Isaacs from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, grievances, costs, losses, and expenses (including attorneys' fees and costs) of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, including but not limited to any claim for malicious institution of civil proceedings, and abuse of process.  Notwithstanding any other provision herein, this release by the University is not intended to, and does not, release debts unrelated to the lawsuit, including but not limited to tuition or loans.

9.    **Knowing and Voluntary Waiver of Known and Unknown Claims**

      Consistent with the terms of their respective releases in paragraphs 7 and 8, Isaacs and USC acknowledge and agree that, as a condition of this Agreement, they expressly release all rights and claims that they do not know about, as well as those they know about.  Thus, consistent with the terms of their respective releases, Isaacs and USC expressly waive all rights under Section 1542 of the Civil Code of the State of California, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

10.    **Ownership of Claims**

      Isaacs represents and agrees that he has not assigned or transferred, or attempted to assign or transfer, to any person or entity, any of the claims he is releasing in this Agreement.

11.    **Encouragement to Consult With Attorney**

      USC encourages Isaacs to consult with an attorney before signing this Agreement, and Isaacs hereby acknowledges that he has had the opportunity to consult with an attorney prior to signing, and has either done so or voluntarily chosen not to do wo.

12.    **No Representations**

      The parties represent and agree that no promises, statements or inducements have been made to them which caused them to sign this Agreement other than those expressly stated in this Agreement.



3

**13.  Successors**

This Agreement shall be binding upon the parties and upon their respective heirs, administrators, representatives, executors, successors and assigns, and shall inure to the benefit of the parties and others released herein, their representatives, executors, successors and assigns.

**14.  Confidentiality of This Agreement**

a.  As a material inducement for USC to enter into this Agreement, Isaacs agrees not to disclose the negotiation, terms, conditions, or amount of this Agreement to anyone other than Isaacs's attorneys and tax adviser (hereafter referred to as "Isaacs's Confidants") and, even as to such a person, only if the person agrees to honor this confidentiality requirement.  Violation of this confidentiality requirement by any of Isaacs's Confidants will be treated as a violation of this Agreement by Isaacs.

b.  This section does not prohibit Isaacs's disclosure of the negotiation, terms, conditions, or amount of this Agreement to the extent necessary legally to enforce this Agreement, nor does it prohibit disclosures to the extent otherwise required by law (but only if Isaacs notifies USC and its attorneys of a disclosure obligation or request within three business days after he learns of it and does not actively oppose USC's taking all steps it deems to be appropriate to prevent or limit the required disclosure).

c.  If Isaacs is asked about his claims against USC, including breach of enrollment contract and wrongful dismissal, and only if asked, he may state only that "the matter has been resolved."  However, the parties further agree that Isaacs is not required to disclose this matter to anyone.

**15.  Damages for Isaacs's Breach of Confidentiality**

A breach of paragraph 14 will be deemed a material breach of this entire Agreement.  Isaacs agrees to pay USC the sum of Five Thousand Dollars ($5,000) as liquidated damages for each violation in the event USC obtains a judgment, ruling, award, or decision that paragraph 14 has been violated.  The parties to this Agreement agree that this liquidated damages provision is appropriate with regard to any breach of paragraph 14 because:  (1) paragraph 14 is essential for the protection of USC's interests; (2) damages for breach of paragraph 14 would be difficult to prove with certainty; and (3) the sum of Five Thousand Dollars ($5,000) per breach represents a reasonable estimate of the harm likely to result from each such breach.

**16.  Newly Discovered Facts**

Isaacs acknowledges that he might hereafter discover facts different from or in addition to those he now knows or believes to be true with respect to a claim or claims released herein, and he expressly agrees to assume the risk of possible discovery of additional or different facts, and agrees that this Agreement shall be and remain effective in all respects regardless of such additional or different discovered facts.

Initialed 

4

17. **Voluntary Participation in This Agreement**

The parties acknowledge that they have thoroughly discussed all aspects of their rights and this Agreement with their respective attorneys, or have knowingly and voluntary chosen not to do so, and that they have carefully read and fully understand all of the provisions of this Agreement, that they have been given a reasonable period of time to consider signing this Agreement, and that they are voluntarily signing this Agreement.

18. **Governing Law**

This Agreement is made and entered into in the State of California and shall in all respects be interpreted, enforced and governed under the laws of said State.

19. **Further Necessary Actions**

The parties agree, without further consideration, to sign and/or cause to be signed, and to deliver to counsel for one another, any other documents and to take any other action as may be necessary to fulfill their obligations under this Agreement, including, but not limited to, effecting the dismissal of all outstanding administrative charges.

20. **Severability**

Should any of the provisions in this Agreement, other than the Release set forth in Paragraph 7, be declared or be determined to be illegal or invalid, all remaining parts, terms or provisions shall be valid, and the illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement.

21. **Proper Construction**

a. The language of all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning, and not strictly for or against any of the parties.

b. As used in this Agreement, the term "or" shall be deemed to include the term "and/or" and the singular or plural number shall be deemed to include the other whenever the context so indicates or requires.

c. The paragraph headings used in this Agreement are intended solely for convenience of reference and shall not in any manner amplify, limit, modify or otherwise be used in the interpretation of any of the provisions hereof.

22. **Entire Agreement**

This Agreement is the entire agreement between Isaacs and USC and fully supersedes any and all prior agreements or understandings between the parties pertaining to its subject matter.

Initialed 

5

**PLEASE READ CAREFULLY. THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

Executed at <u>Saint-Jean, FRANCE</u> this 31st day of March 2008.

By: _____
    Jeffrey Isaacs

Executed at Los Angeles, California, this _____ 2008.

APR **0 4**

UNIVERSITY OF SOUTHERN CALIFORNIA

By: _____
    Dennis F. Dougherty
    Senior Vice President for Finance

6

# UNIVERSITY OF SOUTHERN CALIFORNIA
## OFFICIAL ACADEMIC TRANSCRIPT

**KECK**
SCHOOL OF MEDICINE OF USC
Office of Student Services
1975 Zonal Avenue, KAM 100-B, Los Angeles, California 90089-9020
Tel: 323-442-2553   Fax: 323-442-2663   Email: modstuaf@usc.edu



UNIVERSITY OF SOUTHERN CALIFORNIA • UNIVERSITY OF SOUTHERN CALIFORNIA • UNIVERSITY OF SOUTHERN CALIFORNIA • UNIVERSITY OF SOUTHERN CALIFORNIA •

| | | | |
|---|---|---|---|
| **Name:** | Jeffrey David Isaacs | **Matriculation:** | 08/08/2005 |
| **ID:** | 5897207328 | **Degree Program:** | M.D. |
| **DOB:** | | **Anticipated Graduation:** | 05/2009 |
| **Degree Title:** | | **Degree Conferred:** | |

| COURSE TITLE | WEEKS | GRADE | MEMORANDUM |
|---|---|---|---|
| **Academic Year: 2005-2006 YEAR I** | | | |
| CORE PRINCIPLES | 19.00 | P | |
| HEMATOLOGY & CLINICAL IMMUNOLOGY | 7.00 | F | |
| Status Update: 06/13/2006- Dismissed - Non-Academic Reasons | | | |

End of Transcript

Registrar: _Teresa Cook_

**Teresa Cook, Registrar**

Transcript Printed: Oct-28-2013

Cook, Teresa                                                    Dismiss 2006

**From:**         ERASInvestigations [erasinvestigations@aamc.org]
**Sent:**         Tuesday, April 10, 2012 12:02 PM
**To:**           Cook, Teresa
**Subject:**      AAMC-ERAS INVESTIGATION INFORMATION REQUEST-JEFFREY DAVID ISAACS
**Attachments:**  ISAACSCERTIFIEDELECSIGNATUREREDACTED.pdf

Greetings Ms. Cook,

I am the Administrative specialist for ERAS-the Electronic Residency Application Service; a service that transmits residency applications, fellowship applications and supporting credentials from applicants and medical schools to fellowship, osteopathic internship, and residency programs using the Internet in the United States. Additionally, ERAS is committed to supporting a high standard of integrity throughout the application process for residency and fellowship positions. Unethical behavior is strongly discouraged and will be thoroughly investigated and addressed appropriately.

Applicants are required to certify that the information provided in their application is complete and accurate. Further, that false or missing information may result in an investigation by the AAMC, with the policy accessible for their viewing.

ERAS received notification that Jeffrey David Isaacs served as a medical student at the Keck School of Medicine University of Southern California from August 2005 to February 2006. If, Dr. Isaacs attended for the period stated, this information was omitted from his application. Thereby, failing to provide complete, timely and accurate information as certified through his submission to ERAS. A copy of Dr. Isaacs' electronic certification is attached for your viewing.
Any written information you can provide regarding Dr. Isaacs' attendance with Keck School of Medicine is appreciated. Your response may be sent to ERASInvestigations@aamc.org.

Thank you in advance for your time and attention in this matter.

Warm regards,
Rochelle Campbell
ERAS Administrative Specialist
Association of American Medical Colleges
2450 N Street NW
Washington, DC 20037
202 828-0508
rcampbell@aamc.org

 Gmail

## Re: NO TRESPASS LETTER AND USC POLICE REPORT

**Fogelman, James P.** <JFogelman@gibsondunn.com>                    Sat, Aug 3, 2019 at 12:19 AM
To: "Jeffrey D. Isaacs" <jeffrey.isaacs.wg03@wharton.upenn.edu>
Cc: "Ryzewska, Kat" <KRyzewska@gibsondunn.com>

You have no right to be on the USC campus. And you have no reason to be there. You asked me if USC or this firm is blocking you from calling a police department. We are not. But that is not the same as appearing in person on USC's campus. USC does not have a police station on campus—it has a private department of public safety. You do not need to access the campus in order to file a police report. Entering USC's campus would be trespassing. JPF

**James P. Fogelman**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7234 • Fax +1 213.229.6234
JFogelman@gibsondunn.com • www.gibsondunn.com

On Aug 2, 2019, at 8:49 PM, Jeffrey D. Isaacs <jeffrey.isaacs.wg03@wharton.upenn.edu> wrote:

[External Email]

I am not asking legal advice. I am asking if your client has lifted their prior instruction to communicate through counsel.
I expect a concrete answer or this will go straight to the judge.
Yes, or no, I am allowed on campus? (Or, you do not know, and direct me to USC counsel Andres Meyer, who you previously told me not to contact)

On Fri, Aug 2, 2019 at 11:44 PM Fogelman, James P. <JFogelman@gibsondunn.com> wrote:
I am not going to provide you advice. I still have no idea what you are talking about. If this is some new way of asking whether anyone is "blocking" you from calling the police, all I can do is reiterate that we have nothing to do with it and are not "blocking" such a call or standing in your way. I have nothing further to add.

**James P. Fogelman**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7234 • Fax +1 213.229.6234
JFogelman@gibsondunn.com • www.gibsondunn.com

19-cv-2011 Isaacs v. USC                    Exhibits Page 86

On Aug 2, 2019, at 8:39 PM, Jeffrey D. Isaacs <jeffrey.isaacs.wg03@wharton.upenn.edu> wrote:

[External Email]

Attorney Fogelman:
USC's last instruction to me - by Dal Soglio - was to communicate to all USC entities through her. I assume you have replaced her role. You did not respond about the trespass letter. Am I permitted on USC campus to file a police report?
If so, since when?
Additionally, what I would like the registrar to clarify, within 5 business days, whether my student records have been sealed, acquitted, dismissed, and annulled.
May I go directly to the registrar's office, or will your firm , or Andreas, handle this?

Not sure what you mean by threatening. You have threatened me. I have asked you to follow up on a police report that should have been filed over a decade ago.

If you don't answer regarding the trespass letter, I will have to take action against your firm. That is not disrespectful, it is the simple nature of the situation. Hopefully you can understand

Dr Isaacs

On Fri, Aug 2, 2019 at 11:34 PM Fogelman, James P. <JFogelman@gibsondunn.com> wrote:
I have no idea what you are talking about, but I know you are misrepresenting our conversation. You told me you wanted to file a police report. I told you then I had no idea what you are talking about (and still don't) but I told you that you are free to call any police department and tell them anything you want. You told me you would "confirm" that in writing. While unnecessary, you never did. We have no role in whether or not  you call a police department. Your constant threats and insults are completely unprofessional, and beyond inappropriate. You have asked us to be respectful of you, and we have, and yet you continue to show me and my firm disrespect.  The court will decide whether your claim is allowed to proceed. We don't think it should be allowed and we provide legal arguments to the court to support our position. You state your position. The court will decide. There is no reason for us to communicate about anything unless required by the court. This falls outside anything required and I am asking you to stop sending such threatening and harassing emails to me and my associates. Consult your own lawyer if you have any misunderstanding. JPF

**James P. Fogelman**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7234 • Fax +1 213.229.6234
JFogelman@gibsondunn.com • www.gibsondunn.com

On Aug 2, 2019, at 8:24 PM, Jeffrey D. Isaacs <jeffrey.isaacs.wg03@wharton.upenn.edu> wrote:

[External Email]

Attorney Fogelman:

Per our telephone discussion, I asked you to put in writing the status of my USC police report request that was forwarded to Dal Soglio over ten years ago. The No Trespass letter has never been retracted.
It is my position USC Counsel continues, and has for over a decade, to block me from filing criminal charges with USC police.

Please advise within 3 business days 1) the status of the no trespass letter, 2) at what point in time I was permitted back on USC property, 3) the status of the police report I requested, and 4) whether you will take additional information and file the report on my behalf.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

19-cv-2011 Isaacs v. USC

Exhibits Page 88

 Gmail

## Re: Please

**Fogelman, James P.** <JFogelman@gibsondunn.com>    Sat, Aug 3, 2019 at 3:22 PM
To: "Jeffrey D. Isaacs" <jeffrey.isaacs.wg03@wharton.upenn.edu>
Cc: "Ryzewska, Kat" <KRyzewska@gibsondunn.com>

This is now just getting ridiculous. When was the last time you reviewed the settlement agreement you executed in 2008? Section 2 of that agreement expressly states that your affiliation with USC is over forever and that you will never apply to USC again. You have already breached the settlement agreement by filing your lawsuit against USC. USC is entitled to collect its attorneys fees from you as a result of that breach. And now you want to breach your agreement again by filing an application with USC? And threatening to trespass on the USC campus to boot? You should really consult your lawyer about these matters.  But this firm will not be responding to any more of your emails unless it is required by court rules. JPF

**James P. Fogelman**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7234 • Fax +1 213.229.6234
JFogelman@gibsondunn.com • www.gibsondunn.com


On Aug 3, 2019, at 11:32 AM, Jeffrey D. Isaacs <jeffrey.isaacs.wg03@wharton.upenn.edu> wrote:

[External Email]

provide an answer within two business days as to how I may ascertain from the registrar my current academic status (i.e. acquitted/sealed/annulled/discharged charges)?

>>Additionally, what I would like the registrar to clarify, within 5 business days, whether my student records have been sealed, acquitted, dismissed, and annulled.
May I go directly to the registrar's office, or will your firm , or Andreas, handle this?

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

 Gmail

---

## Re: 7-3 overdue

---

**Fogelman, James P.** <JFogelman@gibsondunn.com>                    Tue, Aug 20, 2019 at 7:56 AM
To: "Jeffrey D. Isaacs" <jeffrey.isaacs.wg03@wharton.upenn.edu>
Cc: "Ryzewska, Kat" <KRyzewska@gibsondunn.com>, Keith <keith@aaone.law>, "Mader, Shannon" <SMader@gibsondunn.com>

Your emails are nothing but intentional harassment and will not be tolerated. You should seek the advice of an attorney before you proceed any further. JPF

**James P. Fogelman**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7234 • Fax +1 213.229.6234
JFogelman@gibsondunn.com • www.gibsondunn.com

On Aug 20, 2019, at 1:53 AM, Jeffrey D. Isaacs <jeffrey.isaacs.wg03@wharton.upenn.edu> wrote:

[External Email]

Attorney Fogelman:
I understand from your filing today that you did receive my request for a 7-3 conference, and have not answered me. Please advise when you are able to meet & confer on this matter, or if you are refusing.

Thank you
Jeffrey Isaacs

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

19-cv-2011 Isaacs v. USC                                        Exhibits Page 90



**KAPLAN**
**MARINO**
ATTORNEYS AT LAW _____    A PROFESSIONAL CORPORATION

9454 Wilshire Boulevard, Suite 500                    Nina Marino
Beverly Hills, California 90212                       Richard Kaplan
Telephone (310) 557-0007
Facsimile (310) 557-0008                              Of Counsel:
www.KaplanMarino.com                                 Allen G. Weinberg

                                                     Writer's Direct E-mail:
                                                     Marino@KaplanMarino.com

June 22, 2006

Clive Taylor, MD, PhD
Senior Associate Dean for Educational Affairs
2011 Zonal Avenue, Room 204
Los Angeles, California 90033
*Via Personal Delivery*

Re:    <u>Jeff Isaacs</u>

Dear Dr. Taylor:

As you know, I represent Jeff Isaacs in this matter. Please consider the following appeal of the Student Performance Committee recommendation that Jeffrey Isaacs be dismissed from the School of Medicine.

**Procedural History**

On February 27, 2006 the SPC determined that Mr. Isaacs was suspended from attendance at the medical school pending a dismissal hearing. On April 26, 2006 Mr. Isaacs Petitioned the Medical School for a <u>retroactive</u> medical leave of absence. The request for a retroactive medical leave was denied on May 20, 2006 by Dr. Katsufrakis.[1] On June 8, 2006 the SPC recommended that Mr. Isaacs be dismissed from the School of Medicine "for behavior that was not consistent with the essential characteristics and abilities required for completion of the M.D. degree at the Keck School of Medicine".

**Factual Background**

_____

[1]In his letter, Dr. Katsufrakis states that the reason the retroactive request for medical leave was being denied was because Jeff was "already on leave". Without belaboring the point, the following would seem fairly obvious: 1.) The request was made retroactively to precede the involuntary suspension; and 2.) An involuntary suspension is significantly different from a voluntary request for medical leave for the purpose of obtaining needed medical treatment.

1



**KAPLAN
MARINO**
ATTORNEYS AT LAW

Attached as Exhibit "A" please find factual statement of Jeffrey Isaacs.

<u>**Grounds for Appeal**</u>

1.   **The Procedures for dismissal as Outlined in the Student Handbook were not followed. The following "numbers" refer to the numerical order as listed in the student handbook procedure for dismissal.**

1 - Dr. Katsufrakis allotted 1 hour (*only*) for a meeting with counsel on behalf of Mr. Isaacs. Dr. Katsufrakis did not make himself available as required by the procedures.

3 - The student file provided by Dr. Katsufrakis to Mr. Isaacs was incomplete. Specifically, correspondence sent to Katsufrakis by Dr. Kuyt on behalf of Mr. Isaacs and in support of Mr. Isaacs was redacted from the student file. Additionally, meetings with Dr. Katsufrakis and students in support of Mr. Isaacs were redacted from the student file.

9 - Mr. Isaacs was not presented with all the evidence against him. Mr. Isaacs was informed that the chronology of Jeff Isaac's actions and related events as prepared by the SPC consisted of the "evidence" against him. At the hearing of June 7 before the SPC Dr. Katsufrakis produced notes dated February 22 of his personal and confidential meetings with Jeff Isaacs. These notes were not included in the chronology and therefore, Mr. Isaacs was not provided notice that this evidence would be introduced against him at the hearing.

12 - The recommendations of the Committee were not transmitted in writing to Mr. Isaacs by Dr. Katsufrakis within the required three (3) business days following termination of the meeting. The meeting occurred on June 7, 2006. The written transmission was faxed to counsel for Mr. Isaacs on June 13, 2006 - 6 days later.

2.   **The Associate Dean for Student Affairs who conducted the SPC hearing was not impartial.**

A.   <u>Dr. Katsufrakis has demonstrated a clear bias toward Jeff Isaacs.</u>

Dr. Katsufrakis "counseled" Jeff Isaacs during the period of time in which the events took place. Dr. Katsufrakis had personal knowledge of the emotional and psychological turmoil which Jeff was suffering during the period of time between November 2005 and January 2006. Dr. Katsufrakis met with Jeff Isaacs on numerous occasions (See Attached - notes of Katsufrakis contained in Exhibit "C" to Materials provided to committee by Jeff Isaacs.)   Dr. Katsufrakis had personal knowledge that Mr. Isaacs was ████████████████████████████ On March 21, 2006 Dr. Katsufrakis was notified in writing of Mr. Jeff Isaacs' legal representation in the hearing before the Student Performance Committee and that all correspondence should

2



**KAPLAN MARINO**
ATTORNEYS AT LAW

therefore be directed to counsel regarding Mr. Isaacs. Nevertheless, on the very day Mr. Isaacs was discharged ▮▮▮▮▮▮▮▮, Dr. Katsufrakis sent to Mr. Isaacs at his home a notice rescheduling the hearing for dismissal. This is but one example of Dr. Katsufrakis's blatant disregard for Jeff's emotional well being and is indicative of Dr. Katsufrakis's bias and prejudice toward Jeff.

Furthermore, as evidenced in Jeff's statement, on numerous occasions Dr. Katsufrakis behaved improperly towards Jeff. It is notable that is was Dr. Katsufrakis, who singularly and summarily denied Jeff's retroactive request for medical leave.

**B.**    Dr. Katsufrakis acted in a conflicted capacity as "counselor" to Mr. Isaacs and "chairperson" of the SPC determining the issue of dismissal.

At the hearing of June 7 before the SPC Dr. Katsufrakis, while acting as chairperson of the committee, produced notes dated February 22 of his personal and confidential meetings with Jeff Isaacs. Dr. Katsufrakis acted as a "counselor" to Jeff Isaacs at these meetings. Dr. Katsufrakis used these notes for the purpose of casting dispersions on Jeff - he used Jeff's words which he interpreted to discredit Jeff before the committee.

**3.**    **The decision reached by the SPC dismissing Mr. Isaacs from Medical School is not commensurate with the behavior.**

Statements of Dr. Kuyt -

Dr. Kuyt stated that Jeff was a student of his. Dr. Kuyt stated that Jeff was an excellent student, a team player, and well regarded by his classmates. He stated that Jeff's heart was extraordinarily kind and that Jeff was highly intelligent and gifted. Dr. Kuyt further stated that he was a good candidate for medical school.

Dr. Kuyt stated that he observed Jeff's deteriorating ▮▮▮▮▮▮▮ condition beginning in or about October/November 2005. Dr. Kuyt stated that he has discussed the situation between Jeff and Ms. Baughman with other classmates. Dr. Kuyt is informed that Ms. Baughman's provocative behavior and mean spiritedness exacerbated Jeff's then weakened psychological state.



3



**Licensing Program**
2005 Evergreen Street, Suite 1200
Sacramento, CA 95815-5401
Phone: (916) 263-2382
Fax: (916) 263-2487
www.mbc.ca.gov

# MEDICAL BOARD
## OF CALIFORNIA
Protecting consumers by advancing high quality, safe medical care.

Gavin Newsom, Governor, State of California | Business, Consumer Services and Housing Agency | Department of Consumer Affairs

## CERTIFICATE OF MEDICAL EDUCATION

**Check one:** ☐ U.S. or Canadian Medical School Graduate    ☐ International Medical School Graduate

| Type or Print Legibly | APPLICANT INFORMATION | | | MBC Use Only |
|---|---|---|---|---|

**LEGAL NAME:** Last _____ First _____ Middle _____ Suffix _____

Applicant Information ☐

| Date of Birth (mm/dd/yyyy) | Last 4 Digits of U.S. SSN or ITIN | Medical School of Graduation |
|---|---|---|
| | | |

Medical School Information ☐

School Code

| MEDICAL SCHOOL: PLEASE COMPLETE THIS FORM IN THE ENGLISH LANGUAGE |
|---|

**NOTE:** If the applicant had an accelerated or extended curriculum, withdrew from this institution, or was accepted with advanced standing, a letter of explanation from a school official is required. The letter must be on medical school letterhead, signed by a school official, and be mailed directly to the Board from the medical school.

| 1. Name of Medical School | |
|---|---|
| 2. State/Province/Country | |

3. The undersigned further certifies that the records of this institution show that the applicant attended in this institution _____ **years** of resident instruction, completing at least 4,000 hours, of which at least 80 percent actual attendance is required in the subjects set forth hereunder (Business and Professions Code Sections 2089, 2089.5, 2089.7, 2090, 2091.1, 2091.2).

☐

Rev. L2 Staff Initials & Date

| | | | |
|---|---|---|---|
| Alcoholism and Chemical Dependency | Geriatric Medicine | Otolaryngology | Psychiatry |
| Anatomy | Histology | Pain Management and End-of-Life-Care** | Radiology, including Radiation Safety |
| Anesthesia | Human Sexuality | Pathology, Bacteriology, and Immunology | Spousal Partner Abuse Detection & |
| Biochemistry | Medicine | Pediatrics | Treatment*** |
| Child Abuse Detection and Treatment | Neuroanatomy | Pharmacology | Surgery, including Orthopedic Surgery |
| Dermatology | Neurology | Physical Medicine | Therapeutics |
| Embryology | Obstetrics and Gynecology | Physiology | Tropical Medicine |
| Family Medicine* | Ophthalmology | Preventative Medicine, including Nutrition | Urology |

*ONLY applicable to medical students who enrolled in medical school on or after May 1, 1998
**ONLY applicable to medical students who enrolled in medical school on or after June 1, 2000
***ONLY applicable to medical students who enrolled in medical school on or after September 1, 1994

| 4. Did the applicant withdraw or transfer from this medical school? | ☐ Yes ☐ No | ☐ |
|---|---|---|
| 5. What is the standard duration of the curriculum at this institution? | years | ☐ |
| 6. Date the applicant was enrolled in medical school? | (mm/dd/yyyy) | ☐ |
| 7. Date the applicant was issued the diploma of Bachelor/Doctor of Medicine | (mm/dd/yyyy) | ☐ |

| UNUSUAL CIRCUMSTANCES DURING MEDICAL SCHOOL |
|---|
| **Any "Yes" response below requires a signed and dated letter of explanation by school official.** |

Unusual Circumstances

| 8. Did this applicant ever take a leave of absence from his/her medical education? | ☐ Yes ☐ No | ☐ |
|---|---|---|
| 9. Was this applicant ever placed on probation? | ☐ Yes ☐ No | ☐ |
| 10. Was this applicant ever disciplined or placed under investigation? | ☐ Yes ☐ No | ☐ |
| 11. Were any limitations or special requirements imposed on this applicant because of questions of academic or disciplinary problems, or for any other reason? | ☐ Yes ☐ No | ☐ |

| MEDICAL SCHOOL OFFICIAL CERTIFICATION |
|---|

School Seal

**AFFIX MEDICAL SCHOOL SEAL**

*I certify that I am the President, Dean, or Registrar and hereby declare under penalty of perjury under the laws of the State of California that the above statements are true and correct.*

_____    _____
PRINTED NAME OF SCHOOL OFFICIAL        TITLE OF SCHOOL OFFICIAL

Signature and Date

_____    _____
SIGNATURE OF SCHOOL OFFICIAL        DATE

**Attention Medical School:** THE PERSON WHO SIGNS THIS FORM MAY NOT BE RELATED TO THE APPLICANT BY BLOOD, MARRIAGE OR ADOPTION. Only the President, Dean, or Registrar may sign this form. If the signature is being delegated to another person, evidence of that delegation must be attached to this form (may be a photocopy). Such delegation must be on official letterhead and must be dated within the last 12 months.

**L2**

**NOTE: The completed form must be mailed directly from the medical school to the Board to be acceptable.**

07A-100 (Revised 01/2019)

 Gmail

## RE: batch 3/6 not received

**Robin Dal Soglio** <rdalsoglio@dm-lawfirm.com>          Wed, Mar 26, 2008 at 12:51 PM
To: JDI <jeffrey.isaacs.wg03@wharton.upenn.edu>

Sorry about that. Not sure why you didn't get it. I think this is the one
you are missing. The entire bates range should be USC 0281-0549.

-----Original Message-----
From: jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] On Behalf Of JDI
Sent: Tuesday, March 25, 2008 8:59 PM
To: rdalsoglio@dm-lawfirm.com.certified.readnotify.com; Robin Dal Soglio
Subject: batch 3/6 not received

Ms Dal Soglio:

I have received five emails from you; i am not sure if there is a
delay or if there was an error in transmitting batch 3/6. Please let
me know or re-send it possible

Thank you
Jeffrey Isaacs

📄 **USC 0380-0429.pdf**
1455K

**DEMAND NO. 4**

Documents constituting the entire Keck School of Medicine Student File and Admissions file (including letters of recommendation) for Plaintiff as well as for any student who lodged any form of complaint, retaliatory or otherwise, against Plaintiff.

**SUPPLEMENTAL RESPONSE TO DEMAND NO. 4**

Defendant objects to this demand on the grounds that it is grossly overbroad, hopelessly burdensome, vague, and ambiguous and seek the production of documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks "the entire Keck School of Medicine Student File and Admissions File" for any student other than Plaintiff. In addition, Defendant objects to this demand to the extent that it seeks to invade the privacy rights of third parties. Subject to and without waiving these objections and the foregoing General Objections, Defendant has already produced Plaintiff's KSOM student file and Admissions file.

**DEMAND NO. 5**

All documents evidencing or pertaining to the USC DPS involvement in this matter, including, without limitation, those leading to the issuance of any "stay-away" letter(s) or any other matter involving any party to this lawsuit, or any person who lodged any form of complaint, retaliatory or otherwise, against Plaintiff.

**SUPPLEMENTAL RESPONSE TO DEMAND NO. 5**

Defendant objects to this demand on the grounds that it is vague and ambiguous in its use of the phrase "involvement in this matter." Defendant further objects to this demand on the grounds that it is grossly overbroad, hopelessly burdensome, vague, and ambiguous and seek the production of documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in its use of the phrase "any other matter, involving any other party to this

DEFENDANT'S SUPPLEMENTAL RESPONSES TO
PLAINTIFF'S SECOND REQUEST FOR PRODUCTION

4

Student Records System                                                                          Page 1 of 1



Keck SOM of U So California
**Personal Information** Edit                      **Current Status** Edit This Status  Add New Status
AAMC ID:              12121531                     Status:           Dismissed - Non Academic Reasons
DOB:                  ▓▓▓▓▓▓                        Status Eff. Date: 06/08/2006
Gender:               Male                          Academic Year:    2005-2006
Previous Lastname:                                 Degree Program:   MD Program
Preferred Firstname:                               Last Update Date:06/14/2006
Email:                                             **Status History**
Citizenship:          Native born/US               Edit This Status
Legal Residence:      PA Montgomery United States of America   Status:           First Year Matriculant
Birthplace:           PA Montgomery United States of America   Status Eff. Date: 08/01/2005
**Address** Edit                                   Academic Year:    2005-2006
Permanent:            ▓▓▓▓▓▓▓▓                       Degree Program:   MD Program
                      Blue Bell, PA 19422          Exp. Grad Date:   06/01/2009
Current:              ▓▓▓▓▓▓▓▓                       Last Update Date:09/07/2005
                      Santa Monica, CA 90401
**Race/Ethnicity** Edit
Race:                 White
Ethnicity:            Not Hispanic or Latino
**Class** Edit
Class Level:          Class Level Start Date:
1                     08/01/2005
2
3
4

**Comments**

Contact Us   © 1995-2006 AAMC   Terms and Conditions   Privacy Statement

https://services.aamc.org/srs/index.cfm?fuseaction=student.dsp_summary&retBut=&grad...   6/14/2006