**AKERMAN LLP**
Kanika D. Corley (SBN 223607)
*kanika.corley@akerman.com*
601 W. Fifth Street, Suite 300
Los Angeles, CA 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

Lawrence M. Edelman (*admitted pro hac vice*)
Assistant Attorney General
lawrence.edelman@doj.nh.gov
Civil Bureau
**N.H. Department of Justice**
33 Capitol Street
Concord, NH 03301-6397
Telephone: (603) 271-1418
Facsimile: (603) 271-2110

Attorneys for Defendant
NEW HAMPSHIRE BOARD OF MEDICINE

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. JEFFREY ISAACS,<br><br>Plaintiff,<br><br>v.<br><br>USC KECK SCHOOL OF MEDICINE, GEISEL SCHOOL OF MEDICINE AT DARTMOUTH, DARTMOUTH HITCHCOOK MEDICAL CENTER, NH BOARD OF MEDICINE, GIBSON DUNN & CRUTCHER, LLP, and JOHN or JANE DOE,<br><br>Defendants. | CASE NO. 2:19-cv-08000-DSF-RAO<br>The Hon. Dale S. Fischer<br><br>**DEFENDANT N.H. BOARD OF MEDICINE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Declaration of Penny L. Taylor, Administrator, N.H. Board of Medicine, and Proposed Order Filed Concurrently Herewith]<br><br>Complaint Filed: September 16, 2019 |

/ / /

/ / /

**Statement of Facts**

1. The New Hampshire Board of Medicine (the "Board") is a state agency that issues licenses to individuals qualified to practice medicine in New Hampshire, establishes the minimum standards for professional conduct in the field, and takes disciplinary action against licensees who fail to meet these standards. *See* N.H. Rev. Stat. Ann. §§ 329:2, 9, 17 [Physicians and Surgeons; Board of Medicine]; *see also*, N.H. Rev. Stat. Ann. 541-A:1, II [Administrative Procedure Act] (defining state "agency" to include any "board … authorized by law to make rules or determine contested cases").

2. N.H. Rev. Stat. Ann. § 329:14, V provides as follows:

> a. The [B]oard shall issue special training licenses to persons of good professional character who are enrolled in a regular residency or graduate fellowship training program … and who possess such further education and training as the [B]oard may require by rule.
>
> b. Persons holding training licenses shall be subject to the disciplinary provisions of RSA 329:17 and such additional professional character and competency requirements as the board may require by rule.
>
> c. Training licenses shall be confined to activities performed in the course of the qualifying residency or graduate fellowship training program, shall expire automatically upon the licensee's separation from the residency or graduate fellowship training program for any reason, and may be issued on a restricted or conditional basis.

*See also*, N.H. Code Admin. R., Med 305.04 [Resident Training License].

3. On May 18, 2011, Jeffrey D. Isaacs ("Dr. Isaacs") presented an "Application for Training License – Residents and Graduate Fellows" (the "Application") to the Board. Declaration of Penny L. Taylor, Administrator, N.H. Board of Medicine ("Taylor Decl.") ¶ 4, Exhibit B.

/ / /

/ / /

/ / /

2

50408194;1

1      4.    Dr. Isaacs' Application disclosed, among other things, the following:

MEDICAL SCHOOL(S): American University of the Caribbean
CURRENT TRAINING HOSPITAL: Mary Hitchcock Memorial Hospital at DHMC [Dartmouth Hitchcock Medical Center]

\*\*\*

Have you ever been reprimanded, sanctioned, restricted or disciplined in any activities involving medical education or practice? **NO**

*Id*. (emphasis supplied). Dr. Isaacs "certif[ied], under penalty of perjury, that all of the information provided in [the] [A]pplication [was] complete and accurate." *Id*.

    5.    N.H. Rev. Stat. Ann. § 17, IV(a) provides that "the [B]oard, after hearing, may take disciplinary action against any person licensed by it upon finding that the person … [h]as knowingly provide false information during any application for professional licensure privileges, whether by making any affirmative statement which was false at the time it was made or by failing to disclose any fact material to the application.

    6.    Pursuant to N.H. Rev. Stat. Ann. § 329:14, V and N.H. Code Admin. R., Med 305.04, the Board issued a Resident Training License to Dr. Isaacs. *Id*. Thus, "[i]n July 2011, [Dr.] Isaacs was admitted to a … medical residency … at Dartmouth Medical School and their associated teaching hospital, DHMC/Hitchcock [collectively, "Dartmouth"]." Complaint ¶ 68.

    7.    "Dartmouth terminated [Dr.] Isaacs in March 2012." Complaint ¶ 119. His Board-issued training license "expire[d] automatically upon [his] separation from the residency…." N.H. Rev. Stat. Ann. § 329:14, V(c).

    8.    "In March 2012, the Board received information from [Dartmouth] indicating that Dr. Isaacs had been terminated from [its psychiatry residency program] [as Dr. Isaacs] had allegedly omitted material facts from his Application…." Taylor Decl.") ¶ 3, Exhibit A [Final Decision and Order] at 1. The Board thereupon commenced an investigation, *see* N.H. Rev. Stat. Ann. § 18 [Investigations], which led to an adjudicatory hearing on February 5, 2014. *See* N.H. Rev. Stat. Ann. § 17(a)

3

[Disciplinary Action; Remedial Proceedings]; N.H. Code Admin. R., Med 206 [Adjudicatory Proceedings].

9. Dr. Isaacs did not attend the February 5, 2014 hearing. Taylor Decl. ¶ 3, Exhibit A [Final Decision and Order] at 4.

10. A seven-member panel of the Board, consisting of physicians and public members, received the testimony of a Board Investigator, who addressed the following exhibits, received in evidence:

>  A. the Application, Taylor Decl. ¶ 4, Exhibit B,
>
>  B. a "Memorandum and Order Regarding Defendants' Motion to Dismiss Second Amended Complaint" (Feess, J.) (the "2007 Order"), dated March 1, 2007, in *Jeffrey David Isaacs v. University of Southern California, et al.*, Case No. CV-06-3338 GAF (Ex), (C.D. Cal.), Taylor Decl. ¶ 5, Exhibit C, and
>
>  C. a "Confidential Settlement Agreement and Mutual Release" (the "Concluding Settlement Agreement"), Taylor Decl. ¶ 5, Exhibit D, the header of which shows that it was filed in the foregoing Central District of California action on April 21, 2008.

The Board Investigator testified that the 2007 Order and the Concluding Settlement Agreement were matters of public record, having obtained them online. Taylor Decl. ¶ 3, Exhibit A [Final Decision and Order] at 5.

11. The 2007 Order disclosed that Dr. Isaacs' sworn Application omitted the fact of his attendance at University of Southern California Keck School of Medicine ("Keck"), beginning in August 2005, Taylor Decl. ¶ 5, Exhibit C at 3, and of Keck having imposed discipline against him, including suspension and dismissal:

> On February 27, 2006, [Dr. Isaacs] attended a disciplinary hearing before the Student Performance committee ("SPC"), where he admittedly did not contest most of the allegations (*i.e.*, the stalking allegations) against him, though he now claims they were false. In addition, he alleges that Defendants Katsufrakis and James M.H. Ball, university counsel for USC, deliberately prevented favorable evidence and testimony for [Dr. Isaacs] from being presented at the SPC hearing. The next day, the SPC notified [Dr. Isaacs] that he was to be suspended immediately and his dismissal from the school was imminent.

   Traumatized by these events, [Dr. Isaacs] was admitted to the UCLA Neuro-Psychiatric Hospital and remained there for approximately one month. After being discharged for outpatient care, he, through his treating physician, requested a retroactive leave of absence, in lieu of suspension, so that he could return to his studies at Keck. USC denied this request.

   On May 30, 2006, [Dr. Isaacs] filed this lawsuit and requested USC postpone [Dr. Isaacs'] dismissal hearing, which was scheduled for June 7, 2006. The hearing went ahead as scheduled. On June 13, 2006, USC dismissed [Dr. Isaacs] from the medical school.

*Id*.

12. The Concluding Settlement Agreement, pursuant to which Dr. Isaacs was to receive a check in a redacted amount, Taylor Decl. ¶ 5, Exhibit D at 1 ¶ 4, affirmed Dr. Isaacs' "understand[ing] and agree[ment] that his education at USC ha[d] ended irrevocably and forever and [would] not be resumed again at any time in the future." *Id*. at 1 ¶ 2.

13. According to Dr. Isaacs' Complaint in the instant case, there was, *in addition* to the Concluding Settlement Agreement, an "Individual Settlement" that preceded it. Complaint ¶ 34. The "Individual Settlement," <u>which was not in evidence at the February 5, 2014 Board hearing</u>, allegedly "sealed [Dr.] Isaacs' [Keck] disciplinary records, in exchange for [Dr. Isaacs] dropping any claims against the individual [defendants]" in the *Isaacs/USC* litigation. *Id*. Indeed, in the 2019 lawsuit that immediately preceded this one, *Isaacs v. Dartmouth Hitchcock, et al*., 2:19-cv-02011-DSF-RAO, a Declaration of Katarzyna Ryzewska [Doc. # 41-1] includes, as Exhibit 10 thereto, an August 2007 "Confidential Settlement Agreement and Release" between Dr. Isaacs and Keck that recites:

> **2.** **<u>Sealing of Disciplinary Records</u>**.
>
> In exchange for the Dismissal with Prejudice of the Individual Defendants …, Defendant USC agrees that … USC will not release or disclose Isaacs' disciplinary records to any third party, including but not limited to other educational institutions and/or potential employers, unless it receives written consent from Isaacs or a subpoena or court order.

50408194;1

14. That foregoing "Individual Settlement" would explain the content of a January 29, 2014 e-mail by Dr. Isaacs to the Board, received in evidence at the February 5, 2014 adjudicatory hearing, which recited, in relevant part:

> The settlement agreement I entered into with USC clearly sealed my disciplinary records. A subsequent settlement annulled all contracts and acquitted all controversies with USC.

Taylor Decl. ¶ 7, Exhibit E. These twin agreements between Dr. Isaac and Keck serve as the foundation for Dr. Isaacs' position, advanced in the instant case, and in a raft of preceding lawsuits, that Dr. Isaacs' undisclosed attendance and discipline at Keck were, *by the force of his agreements with Keck*, so erased from history (read: reality) that ostensible misrepresentations, made under penalty of perjury on an Application for Board licensure, were *permissible* and, *further*, that the content of the Board's Final Decision and Order, Taylor Decl. ¶ 3, Exhibit A at 8 (disputing Dr. Isaac's position that he may "treat[ ] his time at Keck School as if it never occurred"), discussed *infra*, was therefore "materially false." Complaint ¶ 167. Indeed, Dr. Isaacs declares, at paragraph 40 of the Complaint, as follows:

> But the primary intent of the Global Settlement, negotiated over eighteen months, was to allow Isaacs the relatively 'minor point' of not having to disclose his mere attendance at USC in the future. It did this by annulling any contracts between the [Isaacs and Keck]. Comparatively, one may deny any retroactively annulled contract.

Complaint ¶ 40.

15. On March 11, 2014, the Board issued its Final Decision and Order, which recited that, contrary to N.H. Rev. Stat. Ann. § 17(a), he "knowingly provided false information" on his Application. Final Decision and Order, Taylor Decl. ¶ 3, Exhibit A at 7-8. The Board noted that his Training License expired "by operation of law" upon his separation from the Dartmouth psychiatric residence program, *see* N.H. Rev. Stat. Ann. § 329:14, V(c), so that the discipline imposed was limited to a reprimand. *Id*. at 8. The Final Decision and Order appears on the Board's website. Complaint ¶ 167.

**The Instant Lawsuit**

16. On the strength of the foregoing facts, Dr. Isaacs has filed the instant lawsuit against the Board, *first* seeking a declaratory judgment (Count I) that "a party … is **allowed to disavow** [*i.e.*, on an Application for licensure in New Hampshire] the existence of an annulled contract, in this case enrollment," Complaint ¶ 184(q) (emphasis supplied), and then declaring that the Board is liable to him for

- intentional infliction of emotional distress, having "decided to, in perpetuity, publish false and derogatory information" (*i.e.* an Order that fails to honor and recognize the erasure from history, by agreement with Keck, of Dr. Isaacs' attendance and discipline there) (Count III);

- intentional interference with contractual relations, having "chosen … to publish a fake order to the public, which is meant to defeat [Dr. Isaacs'] consideration vested by the settlement agreements" with Keck (Count VI);

- violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), via predicate acts of witness retaliation, obstruction of justice, witness tampering, wire fraud, and mail fraud (Count VII); and

- violation of his Eighth Amendment right, via 42 U.S.C. § 1983, to be free of "cruel and unusual punishment" or "excessive fines," the Board having imposed discipline in the form of a reprimand.

**The Motion for Preliminary Injunction**

17. Dr. Isaacs now seeks a preliminary injunction pursuant to which this Court, among other things, would declare

(a) that the so-called "Individual Settlement" and "Concluding Settlement Agreement," each by and between Dr. Isaacs and Keck, are "binding upon the parties [read: **all Defendants**, including the Board], Proposed Order (Doc. 13) at 28 of 31, ¶ 1(a)-(e),

  **(b)** that "[a]ny and all third parties, organizations, groups and/or legal entities (presumably including the Board) are prohibited from publishing [Dr. Isaacs'] annulled records[,]" *id.* at 29 of 31, ¶ 8, and

  **(c)** that Dr. Isaacs is not required to disclose these records under any circumstances, unless he is specifically asked by a law enforcement authority if a court order or expungement has ever included records pertaining to him." *Id.* ¶ 9.

## The Standard of Review

18. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary injunctive relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 557 U.S. 7, 20 (2008).

## Dr. Isaacs Cannot Meet his Burden Under *Winter*

**A.** **Reasonable Likelihood of Success on the Merits**

  **1.** **Eleventh Amendment Bar**

19. Dr. Isaacs does not enjoy a reasonable likelihood of success on the merits as to the Board.

20. Putting aside the folly of Dr. Isaacs' premise – that one may, by agreement with another, conjure up a false reality as to the rest of the world – the case against the Board is barred by the Eleventh Amendment.

21. Indeed, "[i]t is clear … that in the absence of consent a suit in which [a] State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also*, *Drumm v. CDCR*, No. 2:18-cv-2854 KJM KJN P, 2019 WL 1276510, at *1 (E.D. Cal. Mar. 20, 2019).

22. "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State School & Hosp.*, 465 U.S. at 100.

23. Congress, which may abrogate sovereign immunity as to the federal claims (*i.e.*, RICO and 42 U.S.C. § 1983), has not done so. *See Banks v. ACS Education*, 638 Fed. Appx. 587, 688 (9th Cir. 2016) ("Congress has not abrogated state immunity under

8

RICO"); *Quern v. Jordan*, 440 U.S. 332, 344-45 (1979) (Congress has not abrogated state immunity under 42 U.S.C. § 1983).

24. The State of New Hampshire not waived its immunity as to any of the instant common law or statutory claims.

### 2. The *Res Judicata* Bar

25. Moreover, in the absence of an Eleventh Amendment prohibition, Dr. Isaacs' case would be barred by the doctrine of *res judicata*, which "is meant to protect parties against being harassed by repetitive actions." *Bell v. United States*, No. CV F 02-5077 AWI DLB, 2002 WL 1987395, at *4 (E.D. Cal. 2002). It provides that "'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997), *quoting Montana v. United States*, 440 U.S. 147, 153-54 (1979).

26. "Res judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between the parties." *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143 n. 3 (9th Cir. 2002).

27. The matter between Dr. Isaacs and the Board was *finally adjudicated* in *Isaacs v. Trustees of Dartmouth College*, *New Hampshire Board of Medicine and Dartmouth Hitchcock Medical Center*, Civ. No. 1:17-cv-00040 (D.N.H.), in which, addressing "the same transactional nucleus of facts," *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) – *i.e.*, an allegedly improper March 11, 2014 Order of the Board – the District Court dismissed the case pursuant to Fed. R. Civ. P. 12(b)(6). By Judgment dated January 3, 2019, the U.S. Court of Appeals for the First Circuit (Case No. 18560) affirmed the judgment of the District Court. By Order dated October 7, 2019, the U.S. Supreme Court (Case No. 18-1411) denied *certiorari*. Simply put, *res judicata* would bar the action.

### B. Irreparable Harm

28. Dr. Isaacs assertion of irreparable harm presupposes (a) that he may lawfully apply for professional licensure in Idaho or Kentucky or elsewhere without

disclosing, upon inquiry, that he attended Keck and was dismissed for misconduct, and (b) that the Board's posted March 11, 2014 Order stands in his way. Of course, were the Board's Order to be ordered taken down, Dr. Isaacs' authority to perjure himself before other states' licensing boards would not be enhanced. There is no irreparable harm.

### C. The Equities and the Public Interest

29. Neither the equities nor the public interest favor the position advanced by Dr. Isaacs. The public has an interest in knowing that those licensed to practice medicine are of "good professional character." N.H. Rev. Stat. Ann. § 329:14, V(a). Knowingly false representations made on an application for licensure are hardly consistent with "good professional character." This Court should not help to facilitate Dr. Isaacs' ability to conceal relevant information, needed to protect the public, from lawful use and disclosure.

WHEREFORE, the New Hampshire Board of Medicine respectfully requests that this Honorable Court:

A. Deny the Motion for Preliminary Injunction; and

B. Grant such other and further relief as justice may require.

DATED: October 7, 2019          Respectfully submitted,

**AKERMAN LLP**


By: */s/ Kanika D. Corley*
    Kanika D. Corley
    Attorneys for Defendant
    NEW HAMPSHIRE BOARD OF MEDICINE