James P. Fogelman, SBN 161584
Shannon E. Mader, SBN 235271
Katarzyna Ryzewska, SBN 300386
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
  Los Angeles, California 90071-3197
Telephone: (213) 229-7000
  Facsimile: (213) 229-7520
JFogelman@gibsondunn.com
SMader@gibsondunn.com
KRyzewska@gibsondunn.com

Attorneys for Defendant
USC Keck School of Medicine

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. JEFFREY ISAACS,<br><br>Plaintiff,<br><br>v.<br><br>USC KECK SCHOOL OF MEDICINE, GIESEL SCHOOL OF MEDICINE AT DARTMOUTH, DARTMOUTH HITCHCOCK MEDICAL CENTER, NH BOARD OF MEDICINE, GIBSON, DUNN & CRUTCHER, LLP and JOHN or JANE DOE,<br><br>Defendants. | CASE NO. 2:19-CV-08000-DSF-RAO<br><br>**DEFENDANT USC KECK SCHOOL OF MEDICINE'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>[Defendant's Request for Judicial Notice, Declaration of Katarzyna Ryzewska, and Proposed Order Filed Concurrently herewith]<br><br>**Hearing**<br>Date:       November 18, 2019<br>Time:       1:30 PM<br>Location:  Courtroom 7D<br>Judge:      Hon. Dale S. Fischer |

Gibson, Dunn & Crutcher LLP

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 18, 2019, at 1:30 p.m. in Courtroom 7D of the United States District Court for the Central District of California at First Street Courthouse, 350 West 1st Street, Los Angeles, California Defendant USC Keck School of Medicine ("USC") will and hereby does move the Court to dismiss with prejudice all claims asserted by Plaintiff Dr. Jeffrey Isaacs ("Plaintiff") against USC in the above-captioned action under Federal Rule of Civil Procedure 12(b)(6) on the following grounds:

- First, Plaintiff's claims are barred by res judicata. In 2012, Plaintiff filed suit against the Trustees of Dartmouth College based on the same set of facts, and summary judgment was entered against him. Additionally, Plaintiff's claims are barred because the validity of the settlement agreements was adjudicated in 2008, and a final judgment on the merits was entered.

- Second, Plaintiff's RICO claim fails because it is barred by the four-year statute of limitations. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). Plaintiff's own allegations establish that he learned of his alleged injuries more than four years ago. He expressly admits that "Dartmouth terminated [him] in ***March 2012***," and that the Board of Medicine "first published the above false [revocation] orders on the internet" in "***mid-2014***." ECF 1 ¶¶ 119, 167 (emphases added).

- Third, Plaintiff's RICO claim fails because it is barred by the 2007 and 2008 settlement agreements, which released USC from liability for any and all claims based on pre-2008 conduct.

- Fourth, Plaintiff fails to plead any of the essential elements of a RICO claim. He fails to allege a RICO enterprise, the operation or management of the RICO enterprise, and at least two acts of racketeering activity: his wire and mail fraud allegations are wholly conclusory and not pleaded with particularity; he pleads no facts to support his witness retaliation allegation; and his obstruction of

1

DEFENDANT USC KECK SCHOOL OF MEDICINE'S NOTICE OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

justice claim fails because he does not allege a pending federal judicial proceeding. He also fails to plead a pattern of racketeering activity, a cognizable injury, and causation. Additionally, statements by USC's counsel are immune from liability under the *Noerr-Pennington* doctrine. *See, e.g.*, *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 933-39 (9th Cir. 2006) (pre-litigation demand letters); *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.*, 944 F.2d 1525, 1528 (9th Cir. 1991) (decision to accept or reject a settlement offer); *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1159 (N.D. Cal. 2014) (filing of a motion to dismiss).

- Fifth, Plaintiff's claims of retaliation under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act fail because refusing to acquiesce to litigation demands is not an "adverse action," nor is filing a motion to dismiss. *Beltran v. Brentwood N. Healthcare Ctr., LLC*, 426 F. Supp. 2d 827, 833 (N.D. Ill. 2006). *See also Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998) ("[I]t will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation."). These actions are also immunized from liability under the *Noerr-Pennington* doctrine.

- Sixth, Plaintiff's claim for Due Process and First Amendment Violation fails because it is based on litigation conduct and thus barred by *Noerr-Pennington*, and because USC is not a state actor. *See, e.g.*, *Sosa*, 437 F.3d at 933–39 (pre-litigation demand letters); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974) (stating that the "Fourteenth Amendment offers no shield" against "private conduct, however discriminatory or wrongful") (internal quotation marks omitted); *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1926 (2019) (applying the state action doctrine to first amendment claims).

- Seventh, Plaintiff's *Bivens* claim fails because a *Bivens* claim cannot be brought against a private entity, even if the entity allegedly acted under the

color of federal law. *See Papa v. United States*, 281 F.3d 1004, 1009 (9th Cir. 2002); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001).

- Eighth, Plaintiff's breach of contract and rescission claims fail because they are barred by the four-year statute of limitations, and because Plaintiff fails to allege any breach. *See* Cal. Civ. Proc. Code § 337(1). These claims are also barred by the litigation privilege. *See, e.g.*, *Blanchard v. DirecTV, Inc.*, 123 Cal. App. 4th 903 (2004) ("The [litigation] privilege has been broadly applied to demand letters and other prelitigation communications by attorneys."); Cal. Civ. Code § 47(b).

- Ninth, Plaintiff's Intentional Infliction of Emotional Distress ("IIED") and Negligent Infliction of Emotional Distress ("NIED") claims fail because they are barred by the two-year statute of limitations, and because Plaintiff fails to plead essential elements of each claim. *See* Cal. Civ. Proc § 335.1. Plaintiff's IIED claim is also barred by the litigation privilege. *See, e.g.*, *Blanchard.*, 123 Cal. App. 4th 903; Cal. Civ. Code § 47(b).

- Tenth, Plaintiff's claims for fraud and constructive fraud fail because they are barred by the three-year statute of limitations, because Plaintiff fails to allege any fraud on the part of USC, and because they are not pleaded with particularity. Cal. Civ. Proc. Code § 338(d).

- Finally, Plaintiff's declaratory judgment claim fails because there is no genuine, ongoing dispute. *See Tatung Co. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036, 1064 (C.D. Cal. 2014).

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities included herein, the accompanying Request for Judicial Notice, any other matter of which judicial notice may be taken, the declaration of Katarzyna Ryzewska, all further pleadings that will be filed by Defendant USC herein, the paper and records on file herein, and on such further evidence and argument as the Court may permit or require at or prior to the time of the hearing on this Motion.

1    This Motion is made following the telephonic conference of counsel pursuant to

2  Local Rule 7-3, which took place on October 10, 2019.

3                              **RELIEF SOUGHT**

4    USC seeks an order dismissing Plaintiff's claims with prejudice.

5

6

7  Dated: October 17, 2019                    GIBSON, DUNN & CRUTCHER LLP

8

9  By:    _*/s/ James P. Fogelman*_____
                                             James P. Fogelman

10                                     Attorney for Defendant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.    LEGAL STANDARD .......................................................................... 3

III.    BACKGROUND AND ALLEGATIONS ............................................ 3

IV.    ARGUMENT ........................................................................................ 6

 A.    Plaintiff's Claims Are Barred by Res Judicata ......................... 6

  1.    2008 USC Action ............................................................. 7

  2.    2012 Dartmouth Action .................................................. 8

 B.    Plaintiff's RICO Claim Is Barred by the Statute of Limitations ............... 9

 C.    Plaintiff's RICO Claim Is Barred by the 2008 Settlement Agreement ............... 10

 D.    Plaintiff's RICO Claim Fails as a Matter of Law .................... 11

  1.    The Complaint Fails to Plead Conduct Sufficient to Establish "Operation or Management" of a RICO Enterprise ...................... 11

  2.    The Complaint Fails to Plead a RICO Enterprise.......... 11

  3.    The Complaint Fails to Plead Racketeering Activity .................... 13

  4.    The Complaint Fails to Plead a *Pattern* of Racketeering Activity ................... 15

  5.    The Complaint Fails to Plead RICO Standing.............................. 16

 E.    Plaintiff's Retaliation Claim Fails as a Matter of Law ........... 17

 F.    Plaintiff's Due Process and First Amendment Claim Fails .................... 18

 G.    Plaintiff's *Bivens* Claim Fails as a Matter of Law .................... 19

 H.    Plaintiff's Breach of Contract and Rescission Claims Are Time Barred ............... 19

 I.    Plaintiff's Breach of Contract and Rescission Claims Fail as a Matter of Law.................... 20

 J.    Plaintiff's IIED and NIED Claims Are Barred by the Statute of Limitations ................... 21

 K.    Plaintiff's IIED Claim Fails as a Matter of Law.................... 21

 L.    Plaintiff's NIED Claim Fails as a Matter of Law .................... 23

Gibson, Dunn & Crutcher LLP

i

M.  Plaintiff's Fraud and Constructive Fraud Claims Fail as a Matter of Law ..........................................................................................24

N.  Plaintiff's Declaratory Judgment Claim Fails as a Matter of Law ..........25

V.  CONCLUSION ..................................................................................25

DEFENDANT USC KECK SCHOOL OF MEDICINE'S NOTICE OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adam Bros. Farming v. Cty. of Santa Barbara*,
604 F.3d 1142 (9th Cir. 2010) ...................................................................................7

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
483 U.S. 143 (1987)....................................................................................................9

*Airframe Sys., Inc. v. Raytheon Co.*,
601 F.3d 9 (1st Cir. 2010)...........................................................................................9

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006)..................................................................................................17

*Apao v. Bank of New York*,
324 F.3d 1091 (9th Cir. 2003) .................................................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................3

*Austin v. Medicis*,
21 Cal. App. 5th 577 (2018) ....................................................................................24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................3, 21

*Beltran v. Brentwood N. Healthcare Ctr., LLC*,
426 F. Supp. 2d 827 (N.D. Ill. 2006).......................................................................18

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
403 U.S. 388 (1971)..................................................................................................19

*Blanchard v. DirecTV, Inc.*,
123 Cal. App. 4th 903 (2004) ..........................................................................2, 6, 21

*Boeken v. Philip Morris USA, Inc.*,
48 Cal. 4th 788 (2010) ...............................................................................................8

*Boyle v. United States*,
556 U.S. 938 (2009)..................................................................................................12

*Bro v. Glaser*,
22 Cal. App. 4th 1398 (1994) ..................................................................................23

*Burgess v. Superior Court*,
2 Cal. 4th 1064 (1992) .............................................................................................23

*Campanano v. California Med. Ctr.*,
38 Cal. App. 4th 1322 (1995), *as modified* (Oct. 10, 1995)....................................21

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) ...................................................................................16

iii

Gibson, Dunn & Crutcher LLP

DEFENDANT USC KECK SCHOOL OF MEDICINE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

*Carlson v. Green*,
   446 U.S. 14 (1980)..................................................................................19

*Chang v. Lederman*,
   172 Cal. App. 4th 67 (2009) .................................................................22

*Choudhuri v. Wells Fargo Bank, N.A.*,
   2011 WL 5079480 (N.D. Cal. Oct. 25, 2011) ......................................16

*Christensen v. Superior Court*,
   54 Cal. 3d 868 (1991) ...........................................................................23

*Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.*,
   944 F.2d 1525 (9th Cir. 1991) ...........................................2, 14, 18, 19

*Coons v. Sec'y of U.S. Dept. of Treasury*,
   383 F.3d 879 (9th Cir. 2004) ................................................................18

*Corr. Servs. Corp. v. Malesko*,
   534 U.S. 61 (2001)................................................................................19

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ...............................................................3

*Dealertruck, Inc. v. Huber*,
   460 F. Supp. 2d 1177 (C.D. Cal. 2006) ...............................................24

*Diaz v. Gates*,
   420 F.3d 897 (9th Cir. 2005) ................................................................16

*Eclectic Props. East v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ................................................................13

*First Capital Asset Mgmt., Inc. v. Brickelbush, Inc.*,
   150 F. Supp. 2d 624 (S.D.N.Y. 2001) .................................................16

*Galen v. Mobil Oil Corp.*,
   922 F. Supp. 318 (C.D. Cal. 1996) ......................................................20

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
   492 U.S. 229 (1989).......................................................................15, 16

*Harmar v. United Airlines, Inc.*,
   No. 95 C 7665, 1996 WL 199734 (N.D. Ill. Apr. 23, 1996) ................19

*Holmes v. Sec. Investor Prot. Corp.*,
   503 U.S. 258 (1992)..............................................................................17

*Hughes v. Pair*,
   46 Cal. 4th 1035 (2009) .................................................................22, 23

*Isaacs v. Dartmouth-Hitchcock Med. Ctr.*,
   No. 12-CV-040-LM, 2014 WL 1572559 (D.N.H. Apr. 18, 2014), *aff'd*
   *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, No. 14-1544 (1st Cir. 2015)...3, 4, 6, 8, 9

iv

*Isaacs v. DHMC et al.*,
    No. 2:19-CV-02011-DSF-RAO (C.D. Cal. 2019).......................................................5

*Isaacs v. Trustees of Dartmouth Coll.*,
    No. 17-CV-040-LM, 2018 WL 734182 (D.N.H. Feb. 5, 2018),
    *motion for relief from judgment denied*, No. 17-CV-040-LM,
    2018 WL 2225097 (D.N.H. May 15, 2018) .................................................................5

*Isaacs v. Trustees of Dartmouth Coll.*,
    No. CIV.A. 13-5708, 2014 WL 4186536 (E.D. Pa. Aug. 25, 2014),
    *aff'd sub nom. Isaacs v. Arizona Bd. of Regents*, 608 F. App'x 70
    (3d Cir. 2015)............................................................................................4, 5, 10

*Isaacs v. United States Dep't of Educ.*,
    No. CV 17-11221-FDS, 2018 WL 1257760 (D. Mass. Mar. 12, 2018).....................5

*IV Sols., Inc. v. United Healthcare*,
    2015 WL 4127823 (C.D. Cal. July 7, 2015) ............................................................19

*Jackson v. Metro. Edison Co.*,
    419 U.S. 345 (1974)...............................................................................................18, 19

*Jolley v. Chase Home Fin., LLC*,
    213 Cal. App. 4th 872 (2013) ...................................................................................25

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ..................................................................................11

*Kailikole v. Palomar Cmty. Coll. Dist.*,
    2019 WL 1877186 (S.D. Cal. Apr. 26, 2019) ..........................................................18

*Kearney v. Foley & Lardner, LLP*,
    590 F.3d 638 (9th Cir. 2009) ......................................................................................2

*Kiseskey v. Carpenters' Trust for So. California*,
    144 Cal. App. 3d 222 (1983) ....................................................................................22

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
    940 F.2d 397 (9th Cir. 1991) ....................................................................................13

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
    431 F.3d 353 (9th Cir. 2005) ......................................................................................9

*Madrigal v. Allstate Indem. Co.*,
    No. CV 14-4242 SS, 2015 WL 12747906 (C.D. Cal. Sept. 30, 2015)....................22

*Manhattan Cmty. Access Corp. v. Halleck*,
    139 S. Ct. 1921 (2019)..............................................................................................19

*Morn v. Am. Messaging Servs., LLC*,
    No. SACV141635DOCRNBX, 2014 WL 12660529 (C.D. Cal. Nov.
    18, 2014)....................................................................................................................24

*Moss v. Bank of New York Tr.*,
    No. C 10-01734 JSW, 2011 WL 13243802 (N.D. Cal. Oct. 13, 2011) ...................22

DEFENDANT USC KECK SCHOOL OF MEDICINE'S NOTICE OF MOTION TO DISMISS PLAINTIFF'S
COMPLAINT

*Mpoyo v. Litton Electro-Optical Sys.*,
  430 F.3d 985 (9th Cir. 2005) ................................................................. 9

*O'Malley v. N.Y.C. Transit Auth.*,
  896 F.2d 704 (2d Cir. 1990) ................................................................ 14

*Owens v. Kaiser Found. Health Plan, Inc.*,
  244 F.3d 708 (9th Cir. 2001) ................................................................ 8

*Papa v. United States*,
  281 F.3d 1004 (9th Cir. 2002) .............................................................. 20

*Perez-Encinas v. AmerUs Life Ins. Co.*,
  468 F. Supp. 2d 1127 (N.D. Cal. 2006) ................................................ 19

*Potter v. Firestone Tire & Rubber Co.*,
  6 Cal. 4th 965 (1993) .......................................................................... 23

*Religious Tech. Ctr. v. Wollersheim*,
  971 F.2d 364 (9th Cir. 1992) ................................................................ 15

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ............................................................................ 11

*Reynolds v. Shure*,
  148 F. Supp. 3d 928 (E.D. Cal. 2015) ................................................. 22

*Richman v. Hartley*,
  224 Cal. App. 4th 1182 (2014) ............................................................ 20

*Rupert v. Bond*,
  68 F. Supp. 3d 1142 (N.D. Cal. 2014) .............................................. 2, 19

*Sanford v. MemberWorks, Inc.*,
  625 F.3d 550 (9th Cir. 2010) .............................................................. 13

*Schwarz v. Regents of Univ. of California*,
  226 Cal. App. 3d 149 (1990) .............................................................. 24

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985) ....................................................................... 11, 13

*Sepehry-Fard v. Nationstar Mortg. LLC*,
  No. 14-CV-03218-LHK, 2015 WL 332202 (N.D. Cal. Jan. 26, 2015) ..... 9

*Serrato v. Cty. of Los Angeles*,
  No. CV 13-00449 AB (AJW), 2016 WL 3982330 (C.D. Cal. Apr. 11, 2016) ...................................................................................................... 2

*Sever v. Alaska Pulp Corp.*,
  978 F.2d 1529 (9th Cir. 1992) ............................................................. 16

*Simo v. Union of Needletrades*,
  322 F.3d 602 (9th Cir. 2003) .............................................................. 21

Gibson, Dunn & Crutcher LLP

DEFENDANT USC KECK SCHOOL OF MEDICINE'S NOTICE OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

*So v. Shin*,
    212 Cal. App. 4th 652 (2013) ......................................................... 22

*Sosa v. DirecTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ........................................ 2, 6, 14, 18, 19

*Steffes v. Stepan Co.*,
    144 F.3d 1070 (7th Cir. 1998) ....................................................... 18

*Sun'n Sand, Inc. v. United Cal. Bank*,
    21 Cal. 3d 671 (1978) ................................................................... 24

*Tatung Co. v. Shu Tze Hsu*,
    43 F. Supp. 3d 1036 (C.D. Cal. 2014) ........................................... 25

*United Safeguard Distributors Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*,
    145 F. Supp. 3d 932 (C.D. Cal. 2015) ........................................... 25

*United States v. Metcalf*,
    435 F.2d 754 (9th Cir. 1970) ......................................................... 14

*United States v. Quattrone*,
    441 F.3d 153 (2d Cir. 2006) .......................................................... 14

*United States v. Turkette*,
    452 U.S. 576 (1981) ................................................................. 11, 12

*United States v. Weber*,
    320 F.3d 1047 (9th Cir. 2003) ....................................................... 15

*Wassmann v. S. Orange Cty. Cmty. Coll. Dist.*,
    24 Cal. App. 5th 825 (2018) .......................................................... 21

*W. Sys., Inc. v. Ulloa*,
    958 F.2d 864 (9th Cir. 1992) ........................................................... 8

*Wong v. Jing*,
    189 Cal. App. 4th 1354 (2010) ...................................................... 23

*Wu v. Thomas*,
    996 F.2d 271 (11th Cir. 1993) ....................................................... 18

*Wyatt v. Union Mortg. Co.*,
    24 Cal. 3d 773 (Cal. 1979) ............................................................ 24

*Yourish v. Cal. Amplifier*,
    191 F.3d 983 (9th Cir. 1999) ......................................................... 13

**Statutes**

18 U.S.C. § 1503 .............................................................................. 15

18 U.S.C. § 1513(e) ......................................................................... 14

18 U.S.C. § 1961(5) ......................................................................... 13

Gibson, Dunn &
Crutcher LLP

vii

DEFENDANT USC KECK SCHOOL OF MEDICINE'S NOTICE OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

18 U.S.C. § 1964(c) ................................................................................................16

29 U.S.C. § 701 ......................................................................................................18

42 U.S.C. § 12101 ..................................................................................................18

Cal. Civ. Code § 47(b) ...........................................................................................21

Cal. Civ. Proc. Code § 335.1 .................................................................................21

Cal. Civ. Proc. Code § 337 ....................................................................................20

Cal. Civ. Proc. Code § 337(1) ...............................................................................20

Cal. Civ. Proc. Code § 338(d) ...............................................................................24

**Rules**

Fed. R. Civ. P. 9(b) ..........................................................................................13, 25

**Other Authorities**

*In re Jeffrey D. Isaacs M.D.*, New Hampshire Board of Medicine,
    Final Decision and Order (Mar. 11, 2014) .....................................................4, 17, 23

DEFENDANT USC KECK SCHOOL OF MEDICINE'S NOTICE OF MOTION TO DISMISS PLAINTIFF'S
COMPLAINT

Gibson, Dunn &
Crutcher LLP

## I.    INTRODUCTION

Plaintiff's Complaint should be dismissed with prejudice. It is virtually identical to the amended complaint he filed in his prior lawsuit, Case No. 2:19-CV-02011-DSF-RAO ("Case 02011"), which he dismissed in the face of USC Keck School of Medicine's ("USC") motion to dismiss. Plaintiff's dismissal of these same claims in his prior lawsuit is an acknowledgement that they were entirely without merit, and they certainly have not improved simply because Plaintiff filed them a second time, and frivolously added USC's counsel of record, Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), as an additional defendant for having defended USC in Plaintiff's prior lawsuit. The only truly new allegations in this Complaint involve Plaintiff's improper claims against USC related to their defense in this litigation, including meeting and conferring with the Plaintiff and filing motions to dismiss, all completely privileged activities.

This is the sixth lawsuit that Plaintiff has filed over his failed medical career and the second lawsuit that he has filed against USC in this Court. Unwilling to take responsibility for his own actions and omissions, Plaintiff has sued the New Hampshire Board of Medicine ("Board of Medicine"), Dartmouth Hitchcock Medical Center ("DHMC"), the Geisel School of Medicine at Dartmouth ("Trustees"), the Department of Education ("DOE"), and numerous other individuals and institutions for allegedly causing the termination of his medical residency in 2012 and the revocation of his medical license in 2014. Despite losing every one of these lawsuits, Plaintiff has filed yet another lawsuit, this time seeking to embroil USC in his seemingly endless campaign to harass Defendants and waste judicial time and resources. In fact, unable to defend his complaints in his prior lawsuit before this Court, Plaintiff voluntarily dismissed the entire action and filed the present action to force defendants into yet another round of briefing.

Unsurprisingly, Plaintiff's new Complaint does not cure any of the myriad defects identified in USC's motions to dismiss in Case 02011, but simply adds three more meritless and time-barred claims.[1] In addition, the Complaint includes meritless claims

---

[1] Although Plaintiff's claims were already time barred by the time he filed the 02011 Case, he does not get the benefit of tolling based on this filing because he voluntarily dismissed

DEFENDANT USC KECK SCHOOL OF MEDICINE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

against USC's counsel of record for conduct that is clearly protected by the First Amendment and California's litigation privilege. Plaintiff's frivolous claims should be dismissed with prejudice and no further amendments should be allowed.

It defies common sense to suggest, as Plaintiff does, that USC would engage in a decade-long enterprise to destroy Plaintiff's medical career and reputation, let alone that it would conspire with a medical school, a hospital, and a medical board in a different state. The simple reality is that USC has had nothing to do with Plaintiff, other than as adverse party, since 2006, when he was expelled for harassing and stalking a student, violating a "stay-away" order, and making violent threats. Indeed, in 2007 and 2008, Plaintiff entered into binding settlement agreements with USC (the "2007 Settlement Agreement" and the "2008 Settlement Agreement," respectively), in which he "waive[d] and release[d] all rights and claims" against USC and agreed not to file any lawsuits against USC "based on, referring to, or incorporating any events, acts or omissions through and including the date hereof." ECF 1-2 at 31 (2007 Settlement Agreement ¶ 7).

Yet, by basing his claims on alleged predicate acts that "were the subject of a federal lawsuit in 2007" Plaintiff has breached those agreements. ECF 1 ¶ 276. *See also* ECF 1 ¶ 2. And by basing claims on actions taken by USC in this litigation, he is violating well settled law concerning litigation privilege and the *Noerr-Pennington* doctrine.[2] *See, e.g.*, *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 933–39 (9th Cir. 2006) (pre-litigation demand letters); *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.*, 944 F.2d 1525, 1528 (9th Cir. 1991) (decision to accept or reject a settlement offer); *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1159 (N.D. Cal. 2014) (filing a motion to dismiss); *Blanchard v. DirecTV, Inc.*, 123 Cal. App. 4th 903 (2004) ("The [litigation] privilege has been broadly applied to demand letters and other prelitigation communications."). Additionally,

---

the previous case. *See, e.g.*, *Serrato v. Cty. of Los Angeles*, No. CV 13-00449 AB (AJW), 2016 WL 3982330, at *4 (C.D. Cal. Apr. 11, 2016) (no tolling when a claim is voluntarily dismissed).

[2] "The *Noerr-Pennington* doctrine derives from the Petition Clause of the First Amendment and provides that 'those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct.'" *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643–44 (9th Cir. 2009) (quoting *Sosa*, 437 F.3d at 929).

Gibson, Dunn & Crutcher LLP

Plaintiff's claims are barred by the terms of the settlement agreements, implausible on their face, hopelessly time barred, and fail for a host of other reasons. For all the reasons set forth herein, Plaintiff's claims against USC should be dismissed with prejudice.

## II.   LEGAL STANDARD

A complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must plead *facts*, not mere legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, a complaint must plead facts that give rise to a *plausible* claim for relief, "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 68–69. In determining whether a complaint satisfies Rule 12(b)(6), "a court may look beyond the pleadings" and "may take into account documents whose contents are alleged in a complaint." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (internal quotations omitted).

## III.   BACKGROUND AND ALLEGATIONS

In 2005, Plaintiff enrolled at USC, and was later expelled for harassing a classmate and violating a "stay-away" order. ECF 1 ¶¶ 14, 27. *See also Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, No. 12-CV-040-LM, 2014 WL 1572559, at *2 (D.N.H. Apr. 18, 2014) (granting summary judgment against Plaintiff and deeming certain facts admitted by Plaintiff), *aff'd Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, No. 14-1544, (1st Cir. 2015) (Declaration of Katarzyna Ryzewska, Ex. 1). In response, Plaintiff sued USC. ECF 1 ¶ 32. The lawsuit resulted in two settlements in 2007 and 2008: the first sealed Plaintiff's disciplinary records, and, pursuant to both, Plaintiff released and waived all claims against USC and agreed not to assert any claims against USC "based on, referring to, or incorporating any events, acts or omissions through and including the date hereof." *Id.* ¶ 33–35; ECF 1-2 at 30 (2007 Settlement Agreement ¶ 4), 35 (2008 Settlement Agreement ¶ 6).

In 2010, Plaintiff received his medical degree from a different program. ECF 1 ¶ 14. After graduating, Plaintiff began a surgical residency at the University of Arizona ("UA"), from which he resigned after six weeks. *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, 2014 WL 1572559, at *2. In September of 2010, Plaintiff submitted an application to DHMC, where he omitted both his attendance at USC and the residency at UA. *Id.* In 2011, Plaintiff began a residency at DHMC. ECF 1 ¶ 68. In January 2012, a supervisor at DHMC discovered that the Plaintiff had previously been a resident at UA. *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, 2014 WL 1572559, at *4. On March 19, 2012, DHMC issued a letter to the Plaintiff stating that he was being terminated for academic deficiencies, and for failing to disclose his attendance at USC and UA. *Id.* at *5. On March 11, 2014, the Board of Medicine revoked Plaintiff's medical license and found that his termination from DHMC was appropriate because he concealed material information in his application. *See In re Jeffrey D. Isaacs M.D.*, New Hampshire Board of Medicine, Final Decision and Order, at 8–9 (Mar. 11, 2014) (incorporated by reference in ECF 1 ¶¶ 7, 133, 134, 137, 149–167, 170, 192.) (Ryzewska Decl., Ex. 2). The Board of Medicine further reprimanded Plaintiff for failing to provide any "credible evidence" in support of his position and for "knowingly" making a false statement. *Id.*

Since his termination from DHMC, Plaintiff has pursued claims against multiple defendants in multiple jurisdictions. On February 3, 2012, shortly before his termination from DHMC, Plaintiff filed a case against DHMC, the Mary Hitchcock Memorial Hospital, and the Trustees for claims arising out of his residency and pending termination. *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, 2014 WL 1572559, at *1 (granting summary judgment in favor of defendants). Next, on September 30, 2013, Plaintiff sued the Trustees, the Arizona Board of Regents, the Board of Medicine, the Mary Hitchcock Memorial Hospital, and the University of Arizona Health Sciences Center for claims arising out of his termination by DHMC and the revocation of his medical license by the Board of Medicine. *Isaacs v. Trustees of Dartmouth Coll.*, No. CIV.A. 13-5708, 2014 WL 4186536, at *1 (E.D. Pa. Aug. 25, 2014) (Ryzewska Decl.,

Ex. 3), *aff'd sub nom. Isaacs v. Arizona Bd. of Regents*, 608 F. App'x 70 (3d Cir. 2015) (affirming dismissal of complaint based on lack of personal jurisdiction and immunity) (Ryzewska Decl., Ex. 4). On February 3, 2017, Plaintiff sued the Board of Medicine, the Trustees, and DHMC for claims arising out of his dismissal from the DHMC residency and the revocation of his medical license. *Isaacs v. Trustees of Dartmouth Coll.*, No. 17-CV-040-LM, 2018 WL 734182, at *1 (D.N.H. Feb. 5, 2018) (Ryzewska Decl., Ex. 5), *motion for relief from judgment denied*, No. 17-CV-040-LM, 2018 WL 2225097 (D.N.H. May 15, 2018) (dismissing certain claims with prejudice and denying Plaintiff's request to amend his complaint to add additional claims). Plaintiff next sued the DOE on June 30, 2017, when the Office of Civil Rights declined to investigate the circumstances surrounding his termination from DHMC. *Isaacs v. United States Dep't of Educ.*, No. CV 17-11221-FDS, 2018 WL 1257760, at *1 (D. Mass. Mar. 12, 2018) (dismissing complaint based on sovereign immunity) (petition for writ of certiorari pending) (Ryzewska Decl., Ex. 6). Finally, Plaintiff filed a nearly identical lawsuit asserting nearly identical claims against nearly identical defendants in this Court, and then dismissed the entire action rather than oppose the defendants' motions to dismiss. *Isaacs v. DHMC et al.*, No. 2:19-CV-02011-DSF-RAO (C.D. Cal. 2019). Except as otherwise noted, all of the claims brought by Plaintiff have been dismissed on the pleadings or decided in favor of the named defendants through summary judgment.

Plaintiff also has attempted to invent additional claims against USC and Gibson Dunn related to a meet and confer with USC counsel. On August 2, 2019, Plaintiff contacted Gibson Dunn threatening a preliminary injunction motion against USC unless USC acquiesced to his demands. Plaintiff demanded that he be able to file "criminal charges" with "USC police," and that they retract what he called a "no trespass letter."[3] ECF 35-1 at 8. Gibson Dunn explained that Plaintiff was "free to call any police department and tell them anything you want," that no one is "blocking" Plaintiff from

---

[3] The document is actually an "Alert Notification" distributed within the USC Department of Public Safety that informed personnel that Plaintiff had made criminal threats concerning violence on campus after harassing and stalking a fellow student, and urges personnel to use caution when confronting the Plaintiff. ECF 1-2 at 27.

Gibson, Dunn & Crutcher LLP

DEFENDANT USC KECK SCHOOL OF MEDICINE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

"from calling a police department," but that Plaintiff has "no reason," and "no right" to be on the USC campus. *Id.* at 6–8. As plainly evident from the exchange, this was neither a threat nor a "lifetime ban," but a statement of fact. *Id.* In response to these statements, Plaintiff filed a Motion for Preliminary Injunction. ECF 13.

The emails were also a response to demands by the Plaintiff that he be able to directly communicate with USC instead of their counsel, and enter USC's registrar's office to ascertain "whether [his] student records have been sealed, acquitted, dismissed, and annulled," questions which are directly linked to this litigation. ECF 35-1 at 5, 8, 10–11. Plaintiff additionally raised objections to USC's then-pending motion to dismiss, claimed that he "may apply to USC programs again," and stated that his email constituted a meet and confer request for a motion to disqualify USC's counsel. *Id.* at 4, 6, 10–11.

The only communications between Plaintiff and USC in the last two years have been concerning actual or threatened litigation. Until last week, Plaintiff was representing himself pro per, and USC has no choice but to communicate with him directly. Every one of these communications is absolutely protected by the litigation privilege or the *Noerr-Pennington* doctrine. *See, e.g.*, *Sosa*, 437 F.3d at 933–39; *Blanchard*, 123 Cal. App. 4th at 919.

## IV.    ARGUMENT

### A.    Plaintiff's Claims Are Barred by Res Judicata

Res judicata bars all of Plaintiff's claims because they arise from exactly the same facts alleged in his 2008 action against USC, *Isaacs v. University of Southern California*, where USC successfully defended the validity of the settlement agreements when Plaintiff refused to dismiss the action, as required by the agreements. *See* Ryzewska Decl., Ex. 11, at 121 (Mot. to Enforce Settlement Agreement, Case No. CV-06-3338 GAF, ECF 77). Additionally, they are barred because they arise from exactly the same facts alleged in his 2012 lawsuit against the Trustees, which was resolved against him. *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, 2014 WL 1572559, at *1–2.

Under California law, res judicata precludes a party from relitigating (1) the same

claim, (2) against the same party, (3) when that claim proceeded to a final judgment on the merits in a prior action. *Adam Bros. Farming v. Cty. of Santa Barbara*, 604 F.3d 1142, 1148–49 (9th Cir. 2010).

### 1.     2008 USC Action

This is not the first time that Plaintiff has challenged the validity of the settlement agreements. In *Isaacs v. University of Southern California*, USC was forced to file a motion to enforce the settlement agreements when Plaintiff refused to dismiss the action. *See* Ryzewska Decl., Ex. 11, at 121. In his opposition, Plaintiff argued that the agreements were invalid due to lack of consideration, his alleged lack of knowledge regarding the agreement's meaning, illegality and/or impracticability, duress, unclean hands, undue influence, and unconscionability. *See* Ryzewska Decl., Ex. 12, at 132-34 (Isaacs Opp. to Mot. to Enforce Settlement Agreement, Case No. CV-06-3338 GAF, ECF 78) ("2008 Opposition"). Plaintiff makes the identical arguments here:

- ***Lack of consideration:*** In his 2008 Opposition, Plaintiff claimed the agreements lacked consideration because they did not completely clear his academic record or refund his tuition. Ryzewska Decl., Ex. 12, at 132. In his new claims, Plaintiff alleges that "[t]he contract was unlawful in that no consideration was granted to Plaintiff." ECF 1-1 ¶ 325. *See also* ECF 1 ¶ 36.

- ***Lack of full knowledge:*** In his 2008 Opposition, Plaintiff claimed he signed the agreements "without full knowledge of [their] meaning." Ryzewska Decl., Ex. 12, at 32. Here, Plaintiff alleges that "Plaintiff's consent was by mistake." ECF 1-1 ¶ 325.

- ***Illegality:*** In his 2008 Opposition, Plaintiff claimed the agreements were illegal because he could not truthfully answer questions about his attendance on future applications. Ryzewska Decl., Ex. 12, at 132-33. In his new claims, Plaintiff alleges that the agreements are unlawful. ECF 1-1 ¶¶ 325, 327.

- ***Unclean Hands/Fraud:*** In his 2008 Opposition, Plaintiff claimed that USC did not enter into the agreements in good faith. Ryzewska Decl., Ex. 2, at 83. Plaintiff's fraud claim is based on the allegation that USC did not intend to honor the agreements. ECF

1-1 ¶¶ 341–344.

- ***Unconscionability:*** In his 2008 Opposition, Plaintiff claimed that the "consideration offered is so obviously inadequate that to enforce the contract would be unfair." Ryzewska Decl., Ex. 12, at 133. Plaintiff's rescission claim states that the settlements "clearly deprived Plaintiff of any consideration."  ECF 1-1 ¶ 325.

All of these argument were rejected by Judge Gary Feess in 2008. *See* Ryzewska Decl., Ex. 13, at 137–40 (Order Re: Mot. to Enforce Settlement Agreement, Case No. CV-06-3338 GAF, ECF 81) ("2008 Order"). In granting the motion and dismissing the case with prejudice, the Court noted that Plaintiff presented "no grounds on which to void the [agreement]" and that he was "bound by its terms." *Id.* at 98.

The 2008 Order constitutes a final judgment on the merits because it resulted in the dismissal with prejudice of the entire matter, and because the time for appeal has long passed. *See Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 793 (2010) ("[A] dismissal with prejudice is the equivalent of a final judgment on the merits, barring the entire cause of action.").

### 2.    2012 Dartmouth Action

Plaintiff's claims are also barred by res judicata related to the 2012 lawsuit against the Trustees. First, there is an identity of claims. "The central criterion in determining whether there is an identity of claims between the first and second adjudications is whether the two suits arise out of the same transactional nucleus of facts." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) (quotations omitted). Whether the "common nucleus criterion" is met depends on "whether [the events] are related to the same set of facts and whether they could conveniently be tried together." *W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992), as amended (June 23, 1992).

In his 2012 lawsuit, Plaintiff alleged (as he does here) that the Trustees improperly terminated his residency after learning that Plaintiff had attended USC. Isaacs 2012 Mtn. for Preliminary Inj., No. 1:12-cv-00040-JL, ECF 34, at 3, June 4, 2012 (Ryzewska Decl., Ex. 7); *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, 2014 WL 1572559, at *1–2; ECF 1

¶¶ 119, 121–122, 145, 149, 154. *See generally* Isaacs 2012 Compl., No. 1:12-cv-00040-JL, ECF 1, February 3, 2012 (Ryzewska Decl., Ex. 8). In his 2012 request for preliminary injunction, Plaintiff attempted to justify the omission of USC in his application by stating that "Plaintiff entered into a federal court ordered mutual release of claims and confidentiality agreement with [USC] . . . . Dartmouth has terminated Plaintiff for merely complying with a settlement agreement." Isaacs 2012 Mtn. for Preliminary Inj., at 3; Isaacs 2012 Amend. Compl., No. 1:12-cv-00040-JL, ECF 13, February 3, 2012, ¶ 22 (Ryzewska Decl., Ex. 9). Plaintiff's current allegations against USC and the Trustees arise out of exactly the same set of facts and include the same allegations regarding the settlement agreements.

Second, Plaintiff's 2012 lawsuit was resolved at summary judgment. *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, 2014 WL 1572559, at *1. "The second res judicata element is satisfied by a summary judgment dismissal which is considered a decision on the merits for res judicata purposes." *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 988 (9th Cir. 2005).

Third, the parties are identical or in privity with parties to the 2012 lawsuit. The Plaintiff is the same. The Trustees are named in both lawsuits. ECF 1 ¶ 17. And while USC was not named in 2012, it is alleged to be a co-conspirator here and, thus, is in privity with the Trustees. *Id.* ¶ 287.[4]

## B. Plaintiff's RICO Claim Is Barred by the Statute of Limitations

Plaintiff was required to bring his RICO claim within four years of when he knew or should have known of his alleged injuries. *See, e.g.*, *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987); *Living Designs, Inc. v. E.I. Dupont de*

---

[4] Alleged co-conspirators may be considered in privity with one another for the purposes of res judicata. *See, e.g.*, *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 17 (1st Cir. 2010) ("[W]here some alleged conspirators are sued in the first (unsuccessful) action and the remainder in a second suit based on the same allegations . . . courts have held the later defendants could raise claim preclusion as a defense." (quotations omitted)); *Sepehry-Fard v. Nationstar Mortg. LLC*, No. 14-CV-03218-LHK, 2015 WL 332202, at *14 (N.D. Cal. Jan. 26, 2015) ("[T]he fact that defendants were not named in a prior lawsuit does not bar the application of *res judicata* if privity exists between the newly-named defendants and a defendant in a prior action.").

*Nemours & Co.*, 431 F.3d 353, 365 (9th Cir. 2005). Here, by his own admission, Plaintiff knew of his alleged injuries more than four years ago.[5] In the Case 02011 Complaint, Plaintiff expressly alleged that he "became aware of the illegal situation ***in early January 2012***," and "has diligently sought to uncover the predicate acts via federal discovery that began in ***January 2012***." Ryzewska Decl., Ex. 14 (Case 02011 Dkt. 1 ¶¶ 74, 162) (emphases added). In an obvious attempt to plead around the statute of limitations, Plaintiff deleted these allegations from the present Complaint. However, Plaintiff still alleges that "Dartmouth terminated Isaacs in ***March 2012***," and that the Board of Medicine "first published the above false [revocation] orders on the internet" in "***mid-2014***." ECF 1 ¶¶ 119, 167 (emphases added).[6] Indeed, Plaintiff specifically alleges that as a direct result "of false declarations of 'stalking crimes,' the years following 2014 publication, Isaacs became further ostracized from former colleagues, friends, neighbors, and even had AirBNB reservations cancelled." *Id.* ¶ 168. Thus, by Plaintiff's admission, he knew of his alleged injuries by no later than March 2014, when his license was revoked and the Board of Medicine published the revocation order.[7] Because he waited until September 2019 to file this suit, his RICO claim is time barred.[8]

## C. Plaintiff's RICO Claim Is Barred by the 2008 Settlement Agreement

Plaintiff's RICO claim is barred by the 2008 Settlement Agreement. In March 2008, Plaintiff entered into a binding settlement agreement with USC in which he "waive[d] and release[d] all rights and claims, known and unknown, which [Plaintiff]

---

[5] The injuries of which Plaintiff complains are his inability to practice medicine as result of the revocation of his medical license and the reputational harm allegedly caused by the publication of the revocation orders. *See* ECF 1 ¶¶ 8, 84, 166–167, 169, 198, 250, 257, 287.

[6] Plaintiff also alleges that (1) at "least six Dartmouth administrators . . . falsely stated they learned of Keck . . . no earlier than ***January 2012***," (2) Plaintiff "learned about" the Dartmouth administrators' "perjured testimony" "in ***January 2012***," and (3) Plaintiff "became aware of claims against Dartmouth ***early January 2012*** for IIED and fraud." ECF 1 ¶¶ 83, 84, 96 (emphases added).

[7] Plaintiff attempts yet again to plead around the statute of limitations by claiming he did not become aware of the alleged fraud until 2019 when he discovered an AAMC profile referencing his attendance. ECF 1 ¶¶ 4, 6, 57–70, 82, 86, 192–195. But the AAMC profile is irrelevant because of Plaintiff's admissions regarding his much earlier knowledge of the alleged predicate acts. *Id.* at ¶¶ 119, 167.

[8] Indeed, Plaintiff has been suing over these same alleged injuries since 2013. *Isaacs v. Trustees of Dartmouth Coll.*, 2014 WL 4186536, at *15 (E.D. Pa. Aug. 25, 2014).

Gibson, Dunn &
Crutcher LLP

10

may have against" USC and its officers, agents, administrators, employees, faculty, and students, *inter alia*, "from the beginning of time to" the date of the agreement. ECF 1-2 at 35 (2008 Settlement Agreement ¶ 7). Accordingly, Plaintiff cannot assert any claims based on pre-2008 conduct. Plaintiff's RICO claim, however, is based purely on pre-2008 conduct. The Complaint expressly alleges that "Keck engaged in multiple predicate acts, ***which were the subject of a federal lawsuit in 2007***." ECF 1 ¶ 276 (emphasis added). Furthermore, he states that the "pattern of RICO" activity began prior to his expulsion from USC. ECF 1 ¶ 2. These allegations are fatal to Plaintiff's RICO claim.

## D.    Plaintiff's RICO Claim Fails as a Matter of Law

The elements of a civil RICO claim are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to the plaintiff's business or property. *See, e.g.*, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017). Plaintiff fails to allege *any* of these elements.

### 1.    The Complaint Fails to Plead Conduct Sufficient to Establish "Operation or Management" of a RICO Enterprise

To satisfy the conduct element, Plaintiff must plead that USC played "*some* part in directing the enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (emphasis in original). To do so, Plaintiff must allege that USC "participated in the operation or management of the enterprise itself." *Id.* at 183. The Complaint is devoid of any allegations that USC operated or managed the alleged enterprise.

### 2.    The Complaint Fails to Plead a RICO Enterprise

Plaintiff fails to plead a cognizable enterprise. An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," and is "proved by evidence of ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). To be actionable, an associated-in-fact enterprise must have "three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to

pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Critically, the enterprise must have an existence separate and distinct from "the connected 'pattern of racketeering activity.'" *Turkette*, 452 U.S. at 583. Plaintiff's allegations fail to satisfy *any* of these requirements.

First, Plaintiff alleges that Defendants formed an enterprise because they participated in "federally and state funded medical training allocations," have a "reputational and commercial stake in the national health care provider network," and have "authoritative control and or [sic] publishing rights in nationwide medical training databases." ECF 1 ¶ 253. But to the extent these allegations are even intelligible, they are true of virtually every medical institution in the United States and do not suggest Defendants functioned as a "continuing unit."

Second, Plaintiff alleges that Defendants formed an enterprise because they have "some nexus as Dartmouth, Keck or Harvard Medical School faculty [or] alumni." *Id.* But thousands of individuals and institutions have "some nexus" to Harvard Medical School faculty or alumni. They do not comprise a RICO enterprise.

Third, Plaintiff alleges that Defendants formed a "de facto enterprise with the sole purpose of carrying out a vendetta and negatively impacting Dr. Isaac's medical-professional career." *Id.* But this allegation fails to plead a cognizable enterprise because it is not distinct from the alleged pattern of racketeering activity.

Finally, Plaintiff's enterprise allegations are simply not plausible. It defies common sense to suggest, as Plaintiff does, that USC would engage in a decade-long enterprise to destroy Plaintiff's medical career and reputation, let alone that it would do so in conjunction with a medical school, a hospital, and a medical board in a different state. Plaintiff alleges no connection between USC and the other defendants, no coordination between them, and no communications between them. Indeed, Plaintiff does not even allege any conduct by USC after 2008 other than the filing of the motion to dismiss and the refusal to engage in settlement discussions and meet and confers with counsel, all of which are protected activity and none of which has anything to do with

the other defendants. The AAMC profile he claims as "smoking gun" evidence appears to have been pulled from a non-USC website in 2006, and appears to simply show that, in 2006, Plaintiff was dismissed for non-academic reasons. ECF 1-2 at 53. It makes no mention of any disciplinary action and does not reflect the profile after the signing of the settlement agreements. Plaintiff's enterprise allegations fail.

### 3.    The Complaint Fails to Plead Racketeering Activity

RICO requires at least two acts of racketeering activity within the last 10 years. 18 U.S.C. § 1961(5). But "while two acts are necessary, they may not be sufficient." *Sedima*, 473 U.S. at 496 n.14. Plaintiff does not properly plead a single predicate act.

### a.    Wire and Mail Fraud

Plaintiff's mail and wire fraud allegations fail as a matter of law. To plead wire and mail fraud, Plaintiff must allege (1) the formation of a scheme to defraud, (2) the use of the mail or the wires in furtherance of the scheme, and (3) the specific intent to defraud. *See Eclectic Props. East v. Marcus & Millichap Co.*, 751 F. 3d 990, 997 (9th Cir. 2014). Further, these elements must be pled with particularity. *See* Fed. R. Civ. P. 9(b); *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). To plead fraud with particularity, Plaintiff must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (internal quotations omitted). In addition, Plaintiff "must set forth . . . an explanation as to why the disputed statement was untrue or misleading when made." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (internal quotations omitted).

Plaintiff's wire and mail fraud allegations are completely conclusory. Plaintiff alleges that USC "continue[s] to issue false transcript reports via wire and mail," "including the AAMC." ECF 1 ¶ 280. But Plaintiff fails to state the time, place, and specific content of the allegedly false transcripts. Nor does Plaintiff explain why the information in the transcripts or AAMC profile is false, and how the mere issuance of a transcript or third party academic profile can constitute a scheme to defraud.

**b.      Retaliating Against a Witness and Witness Tampering**

Plaintiff's retaliation allegations fail as a matter of law. *See* ECF 1 ¶ 260(a). To plead a violation of 18 U.S.C. § 1513(e), Plaintiff must allege that USC (1) knowingly took an action (2) harmful to Plaintiff (3) with the intent to retaliate against Plaintiff (4) for providing to a law enforcement officer any truthful information relating to the commission or the possible commission of any federal offense. *See* 18 U.S.C. § 1513(e). However, there is no allegation that USC has taken any actions against Plaintiff since the parties entered into the 2007 and 2008 Settlement Agreements, no facts to suggest that USC intended to retaliate against Plaintiff, and no allegation anywhere in the Complaint that Plaintiff provided information to law enforcement at any time regarding any federal offense—let alone that USC knew about any such communication. Plaintiff also does not allege that USC participated in any witness tampering. ECF ¶¶ 275–285.

Additionally, Plaintiff appears to be claiming witness intimidation where ***he*** is the witness in ***this*** litigation, and the intimidation consists of opposing parties defending themselves against ***his*** claims. To the extent Plaintiff is basing his retaliation claim on USC's refusal to accede to his settlement demands, meet and confers with USC counsel regarding Plaintiff's demands regarding access to USC property, and/or USC's filing of the motion to dismiss, his claim is barred by the *Noerr-Pennington* doctrine. *See Sosa*, 437 F.3d at 933–39; *Columbia Pictures*, 944 F.2d at 1528 (9th Cir. 1991).

**c.      Obstruction of Justice**

Plaintiff's suggestion that USC somehow obstructed justice by allegedly failing to release administrative charges against him, or by allegedly breaching settlement agreements, fails as a matter of law. ECF 1 ¶ 260(b)–(c). Obstruction of justice requires a *pending federal* judicial proceeding, which is not alleged here. *See, e.g.*, 18 U.S.C. § 1503; *O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d 704, 708 (2d Cir. 1990); *United States v. Metcalf*, 435 F.2d 754, 756 (9th Cir. 1970). Plaintiff's reliance on the omnibus clause of § 1503 is unavailing. *See, e.g.*, *United States v. Quattrone*, 441 F.3d 153, 170 (2d Cir. 2006) ("In order to convict for obstruction of justice under the omnibus clause of Section 1503, the government must establish (1) that there is a *pending* judicial or

1  grand jury proceeding constituting the administration of justice."); *United States v.*
2  *Weber*, 320 F.3d 1047, 1050 (9th Cir. 2003) (emphasis added).

3      **4.    The Complaint Fails to Plead a *Pattern* of Racketeering Activity**

4      To plead a pattern of racketeering activity, Plaintiff must allege that the predicate
5  acts "are related, *and* that they amount to or pose a threat of continued criminal activity."
6  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original).
7  "It is this factor of *continuity plus relationship* which combines to produce a pattern."
8  *Id.* (internal quotations omitted) (emphasis in original).

9      Relatedness requires that the predicate acts have "the same or similar purposes,
10  results, participants, victims, or methods of commission." *Id.* at 240 (internal quotations
11  omission). Here, Plaintiff fails to explain how his expulsion from *USC* in 2006 is related
12  to the DHMC termination in 2012 or the revocation of his license in 2014. The only
13  apparent relationship is *Plaintiff's* failure to disclose his attendance at USC.

14      Continuity requires either a series of related acts extending over a substantial
15  period of time (close-ended continuity) or past conduct that by its nature projects into
16  the future with a threat of repetition (open-ended continuity). *Id.* at 241–42. To plead
17  close-ended continuity, Plaintiff must allege "a series of related predicates extending
18  over a substantial period of time." *Id.* To plead open-ended continuity, Plaintiff must
19  allege facts showing "past conduct that by its nature projects into the future with a threat
20  of repetition." *Id.* at 241.

21      Plaintiff cannot plead open-ended continuity because the alleged enterprise had an
22  inherent end-point—the revocation of Plaintiff's medical license. *See, e.g.*, *Religious*
23  *Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366 (9th Cir. 1992) ("Since the only goal of the
24  Greene defendants was the successful prosecution of the Wollersheim state tort suit,
25  there was no threat of activity continuing beyond the conclusion of that suit."). *See also*
26  ECF 1 ¶¶ 8 (alleging Defendants "intended to deprive Plaintiff of his medical career"),
27  238 ("The Board . . . revoked [Plaintiffs] medical license.").

28      Nor does Plaintiff plead close-ended continuity. Congress's concern "in RICO

[was] with long-term criminal conduct." *H.J. Inc.*, 492 U.S. at 242. Here, "[a]lthough [Plaintiff] alleges a number of 'acts,' [Defendants'] collective conduct is . . . a single episode having the singular purpose of" harming a "single victim." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992). *See also* ECF 1 ¶¶ 250 ("The case describes a small group of individuals . . . [who] . . . coordinated predicate acts over more than a decade to successfully ruin the Plaintiff's medical career and reputation."), 287 (alleging an "enterprise whose primary focus was to assassinate Dr. Isaac's career").[9]

### 5.   The Complaint Fails to Plead RICO Standing

An individual only has standing to bring a civil RICO claim if he can show: (1) that he suffered an injury to a business or property interest; and (2) that the alleged RICO violation caused his claimed injury. *See Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008); 18 U.S.C. § 1964(c). In the Ninth Circuit, to show an injury to business or property, a plaintiff must allege a "concrete financial loss." *Canyon Cnty.*, 519 F.3d at 975. "Financial loss alone, however, is insufficient." *Id.* "Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005).

Here, Plaintiff does not allege any financial loss caused by the purported predicate acts perpetrated by USC—only "[r]eputational and career harm." ECF 1 ¶ 171. But reputational harm does not suffice. *See, e.g.*, *Choudhuri v. Wells Fargo Bank, N.A.*, 2011 WL 5079480, at *10 (N.D. Cal. Oct. 25, 2011) ("[I]njury to reputation is a personal injury, and therefore, is beyond the purview of RICO."); *Diaz*, 420 F.3d at 910 ("Had Congress intended to create a federal treble damages remedy for cases involving bodily injury, injury to reputation, mental or emotional anguish, or the like, *all of which will cause some financial loss*, it could have enacted a statute referring to injury generally,

---

[9]   To the extent that Plaintiff is alleging that USC's actions in this lawsuit constitute an "open-ended threat," his allegation fails as a matter of law. ECF 1 ¶ 282. USC's litigation conduct is under the *Noerr-Pennington* doctrine. *See supra* Section I.

DEFENDANT USC KECK SCHOOL OF MEDICINE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Gibson, Dunn & Crutcher LLP

without any restrictive language.") (internal citation omitted) (emphasis in original).[10]

Nor does Plaintiff plead any facts establishing a direct relationship between the alleged harm and USC's alleged predicate acts. To plead causation, Plaintiff must allege "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). Accordingly, "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added). Here, it was not USC's transmission of Plaintiff's transcript that prompted the revocation of his license; rather, it was *Plaintiff's* failure to disclose his attendance that caused the termination of his residency and the revocation of his license. *In re Jeffrey D. Isaacs M.D.*, Final Decision and Order, at 8–9. USC did not "cause" Plaintiff's intentional omissions.

## E.    Plaintiff's Retaliation Claim Fails as a Matter of Law

Plaintiff's retaliation claim is nothing more than an improper attempt to tortify his contract claim. Incredibly, Plaintiff alleges that USC's "refus[al]" to acquiesce in his demands, including his demand that USC accept his interpretation of the Settlement Agreements, constitutes "unlawful retaliation." ECF 1 ¶¶ 296–298. Indeed, Plaintiff even cites USC's prior motion to dismiss as evidence of USC's supposed "retaliation." *Id.* ¶ 297. These allegations do not remotely suffice to plead retaliation under 29 U.S.C. § 701 and 42 U.S.C. § 12101.

To plead retaliation under the Rehabilitation Act, Plaintiff must allege that: (1) he engaged in statutorily protected activity; (2) the defendant was aware of this activity; (3) the defendant took adverse action against the plaintiff; and (4) a causal connection

---

[10] Plaintiff's new allegation that he "suffered" a "financial loss" because of "the tuition he paid to Keck" fails as a matter of law. ECF 1 ¶ 288. First, the settlement agreements bar Plaintiff from asserting claims based on pre-2008 "damages" or "expenses." ECF 1-2 at 35 (2008 Settlement Agreement ¶ 7). Second, Plaintiff alleges no facts to suggest that he paid USC's tuition "[a]s the result of" the alleged predicate acts. ECF 1 ¶ 288. *See also* ECF 1 ¶ 280 (alleging that the issuance of supposedly "false transcript reports" constituted wire and mail fraud). Finally, when Plaintiff paid the fees, he received something of value—medical training. Nothing prevented Plaintiff from seeking to transfer his USC credits to his next medical school. The fact that Plaintiff decided to conceal his attendance does not transform the tuition he voluntarily paid into "damages" supporting a federal RICO cause of action.

17

exists between the protected activity and the adverse action. 29 U.S.C. § 701. *See also Coons v. Sec'y of U.S. Dept. of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004). Similarly, to state a retaliation claim under the ADA, a plaintiff must plead that: (1) he or she engaged in a protected activity; (2) the employer subjected him or her to an adverse employment action; and (3) a causal connection existed between the employee's protected activity and the employer's adverse action. 42 U.S.C. § 12101; *Kailikole v. Palomar Cmty. Coll. Dist.*, 2019 WL 1877186, at *2 (S.D. Cal. Apr. 26, 2019). An adverse decision is one that imposes "tangible harm, such as loss of salary, benefits, or position." *Id.* (citing *Wu v. Thomas*, 996 F.2d 271, 273 (11th Cir. 1993)).

Plaintiff does not even attempt to satisfy these elements. Nor can he. Refusing to comply with an adversary's litigation demands is not an "adverse action," and filing a motion to dismiss a meritless complaint is not "retaliation." As courts have recognized, "[E]xcept in rare cases, conduct occurring within the scope of litigation does not provide grounds for a retaliation claim." *Beltran v. Brentwood N. Healthcare Ctr., LLC*, 426 F. Supp. 2d 827, 833 (N.D. Ill. 2006). *See also Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998) ("[I]t will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation."); *Harmar v. United Airlines, Inc.*, No. 95 C 7665, 1996 WL 199734, at *1 (N.D. Ill. Apr. 23, 1996) ("Presenting an affirmative defense, even a frivolous one, will not support a retaliation claim."). Indeed, USC's litigation conduct, including its communications with Plaintiff in response to his demand letter, their responses to Plaintiff's unreasonable demand that he be able to access USC facilities for any and all purposes, and the filing of the motion to dismiss, are immunized from liability under the *Noerr-Pennington* doctrine. *See supra* Section I.

## F.    Plaintiff's Due Process and First Amendment Claim Fails

Plaintiff's claim for Due Process and First Amendment Violation fails because it is based on litigation conduct and thus barred by *Noerr-Pennington*, and because USC is not a state actor. *See, e.g.*, *Sosa*, 437 F.3d at 933–39; *Columbia Pictures*, 944 F.2d at 1528; *Rupert*, 68 F. Supp. 3d at 1159; *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349

(1974) (stating that the "Fourteenth Amendment offers no shield" against "private conduct, however discriminatory or wrongful") (internal quotation marks omitted); *Apao v. Bank of New York*, 324 F.3d 1091, 1093 (9th Cir. 2003) ("The Fourteenth Amendment provides: 'No state shall ... deprive any person of life, liberty, or property, without due process of law.' It thus shields citizens from unlawful governmental actions, but does not affect conduct by private entities."); *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1926 (2019) (applying the state action doctrine to first amendment claims). This claim is entirely based on the meet and confer between Plaintiff and USC Counsel, all of which was litigation related. *See supra* Section III.

## G.  Plaintiff's *Bivens* Claim Fails as a Matter of Law

Plaintiff's *Bivens* claim fails as a matter of law. *Bivens* provides an implied cause of action for private citizens to recover for injuries arising from the violation of their constitutional rights by federal officers. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971); *Carlson v. Green*, 446 U.S. 14, 18 (1980). There is no *Bivens* claim against private entities acting under the color of federal law. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Here, Plaintiff does not bring his *Bivens* claim against a federal officer, but against a private university, which is what *Correctional Services* prohibits.[11]

## H.  Plaintiff's Breach of Contract and Rescission Claims Are Time Barred

Breach of contract claims are subject to a four-year statute of limitations (Cal. Civ. Proc. Code § 337(1)), and generally "accrue at the time of the breach of contract . . . regardless of whether any damage is apparent or whether the injured party is aware of his right to sue." *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134 (N.D. Cal. 2006); *IV Sols., Inc. v. United Healthcare*, 2015 WL 4127823, at *2 (C.D. Cal. July 7, 2015). For this same reason, Plaintiff's rescission claim, which is based on

---

[11]  Plaintiff's *Bivens* claim is also time barred. *Bivens* claims have a one-year limitations period. *Papa v. United States*, 281 F.3d 1004, 1009 (9th Cir. 2002). Here, Plaintiff purports to base his *Bivens* claim on his having been denied admission to various federally funded programs, but Plaintiff does not allege that he applied to, and was denied admission to, any USC program at any time. ECF 1 ¶¶ 232–236.

DEFENDANT USC KECK SCHOOL OF MEDICINE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1    the same factual allegations (ECF 1 ¶¶ 324–327), is barred by the statute of limitations.

2    *Galen v. Mobil Oil Corp.*, 922 F. Supp. 318, 320 (C.D. Cal. 1996) (applying the four-

3    year statute of limitations to a rescission claim) (citing Cal. Civ. Proc. Code § 337).

4        Here, any alleged breach necessarily occurred at some point prior to March 2012,

5    when DHMC issued a letter to the Plaintiff stating that he was being terminated for

6    failing to disclose his attendance at USC. ECF 1 ¶ 119. While Plaintiff conclusorily

7    alleges that he did not learn of USC's alleged breach until June 2015, his own allegations

8    and the judicially noticeable facts establish that DHMC referenced his attendance at USC

9    in its termination letter in 2012 and that the Board of Medicine referenced his attendance

10   at USC in its revocation order in 2014. ECF 1 ¶ 192. Indeed, Plaintiff expressly alleges

11   that the Board of Medicine "found that Dr. Isaacs had improperly failed to disclose his

12   'criminal stalking' and Keck enrollment on his residency application," and published its

13   "'false' findings on the internet" in "***mid-2014***." *Id.* ¶¶ 154, 167 (emphasis added).

14   Moreover, since Plaintiff voluntarily dismissed the 02011 Case, even the newly invented

15   June 2015 date means his claims expired in June 2019.

16   **I.    Plaintiff's Breach of Contract and Rescission Claims Fail as a Matter of
         Law**

17
18       Plaintiff pleads no facts to support his breach of contract claim, and thus cannot

     support his rescission claim. To state a claim for breach of contract, Plaintiff must plead
19
     (1) a contract, (2) performance of the contract or excuse for nonperformance, (3) breach
20
     of the contract, and (4) resulting damage. *Richman v. Hartley*, 224 Cal. App. 4th 1182,
21
     1186 (2014).
22
         Here, Plaintiff pleads *no* facts to support his allegation that USC breached the 2007
23
24   and 2008 Settlement Agreements. To the contrary, Plaintiff expressly alleges that "***John***

25   ***Doe provided personal knowledge of the Keck student records and litigation directly***

     ***to Dartmouth***." ECF 1 ¶ 90 (emphasis added). *See also id.* ¶¶ 6 ("Knowledge of the
26
     sealed USC controversy, whereby John Doe proffered further information and advice on
27
     the AAMC leaks, reached Dartmouth's medical school."), 82 ("Dartmouth learned about
28
     Isaacs' Keck enrollment and discipline . . . through John Doe."), 244 ("But for John

1  Doe's transmission of the sealed records, none of the aforementioned injuries would have

2  occurred."). Plaintiff's speculation that John Doe had some unknown and unexplained

3  "connections with" USC does not suffice. ECF 1 ¶ 278; *Twombly*, 550 U.S. at 555

4  (factual allegations must rise "about the speculative level").[12]

5  **J.    Plaintiff's IIED and NIED Claims Are Barred by the Statute of Limitations**

6       The statute of limitations for IIED or NIED claims is two years. Cal. Civ. P. Code

7  § 335.1. A cause of action for IIED accrues once the plaintiff suffers severe emotional

8  distress as a result of defendant's conduct. *Wassmann v. S. Orange Cty. Cmty. Coll. Dist.*,

9  24 Cal. App. 5th 825, 852–53 (2018). A cause of action for NIED accrues at the time of

10  the injury-producing event. *Campanano v. California Med. Ctr.*, 38 Cal. App. 4th 1322,

11  1325 (1995), *as modified* (Oct. 10, 1995).

12       The basis for Plaintiff's IIED and NIED claims is USC's alleged breach of

13  contract, which Plaintiff knew about as early as 2012 and no later than 2014. Any alleged

14  breach necessarily occurred, if at all, prior to March 2012, when DHMC issued a letter

15  to the Plaintiff stating that he was being terminated for failing to disclose his attendance

16  at USC. ECF 1 ¶ 119. While Plaintiff conclusorily alleges that he did not learn of USC's

17  alleged breach until June 2015, this would still mean the claims expired in June 2017.

18  The statute of limitations on Plaintiffs' IIED and NIED claims has long since expired.

19  **K.    Plaintiff's IIED Claim Fails as a Matter of Law**

20       A claim of IIED has three elements: (1) extreme and outrageous conduct by the

21  defendant with the intention of causing, or reckless disregard of the probability of

22  causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional

23  distress; and (3) actual and proximate causation of the emotional distress by the

24  defendant's outrageous conduct. *Simo v. Union of Needletrades*, 322 F.3d 602, 621–22

25  (9th Cir. 2003). The Complaint fails to plead any of these elements.

26       First, none of the conduct alleged amounts to "extreme and outrageous conduct."

27

28  _____

[12]  To the extent Plaintiff purports to base his breach of contract claim on Keck's refusal to acquiesce to Plaintiff's litigation demands, *see* ECF 1 ¶ 200, his claim is barred by the litigation privilege. *See, e.g.*, *Blanchard*, 123 Cal. App. 4th at 919; Cal. Civ. Code § 47(b).

To constitute "extreme and outrageous conduct," the defendant's conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id*. *See, e.g.*, *So v. Shin*, 212 Cal. App. 4th 652, 672–73 (2013) (forcing a hospitalized woman who recently suffered a miscarriage to look at what she believed to be her dismembered fetus was extreme and outrageous); *Kiseskey v. Carpenters' Trust for So. California*, 144 Cal. App. 3d 222, 229–30 (1983) (threats of personal harm, death, and harm to family if the plaintiff did not sign union agreement constituted outrageous conduct). Breaching a contract does not suffice. *See Reynolds v. Shure*, 148 F. Supp. 3d 928, 932 (E.D. Cal. 2015). Transmitting academic records does not suffice. ECF 1 ¶¶ 202–203; *Simo*, 322 F.3d at 621-22. And declining to engage in mediation or settlement discussions, or acquiescing to litigation demands does not suffice. ECF 1 ¶¶ 208–211; *Madrigal v. Allstate Indem. Co.*, No. CV 14-4242 SS, 2015 WL 12747906, at *19 (C.D. Cal. Sept. 30, 2015) (failure to accept an offer of settlement not outrageous conduct); *Moss v. Bank of New York Tr.*, No. C 10-01734 JSW, 2011 WL 13243802, at *3 (N.D. Cal. Oct. 13, 2011) (claim based on "activities related to the unlawful detainer action in state court, including any filings by the process server" are "protected by the litigation privilege"); *Chang v. Lederman*, 172 Cal. App. 4th 67, 86–88 (2009) (it was not extreme or outrageous conduct for attorney to direct a wife to vacate residence without notifying her of homestead rights, and was protected by litigation privilege).[13]

Second, Plaintiff pleads no facts to suggest that USC intended to cause, or recklessly disregarded the probability of causing, emotional distress. *See Hughes v. Pair*, 46 Cal. 4th 1035, 1040 (2009). His allegations are wholly conclusory. ECF 1 ¶¶ 202–211. Indeed, Plaintiff elsewhere alleges that the "***negligent*** actions of Keck officials . . . have proximately caused Plaintiff's emotional distress." ECF 1 ¶ 227 (emphasis added).

Third, Plaintiff fails to plead severe emotional distress. "Severe emotional distress [is] emotional distress of such substantial quantity or enduring quality that no reasonable

---

[13] To the extent Plaintiff purports to base his IIED claim on USC's refusal to acquiesce to Plaintiff's litigation demands or emails with counsel regarding campus access, *see* ECF 1 ¶¶ 202, 206–209, it is barred by the litigation privilege. *See supra* n.12.

DEFENDANT USC KECK SCHOOL OF MEDICINE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Gibson, Dunn & Crutcher LLP

1   [person] in a civilized society should be expected to endure it." *Wong v. Jing*, 189 Cal.

2   App. 4th 1354, 1376 (2010) (citations and quotations omitted). Stress, discomfort, and

3   anxiety do not constitute distress that no reasonable person should be expected to endure,

4   even if caused by objectionable behavior. *See Hughes*, 46 Cal. 4th at 1039 ("worry,

5   anxiety, upset stomach, concern and agitation" are not severe emotional distress, even

6   when they were the result of explicit and threatening comments and demands for sex).

7         Finally, Plaintiff fails to plead any facts suggesting that Defendant's actions were

8   the actual and proximate cause of Plaintiff's alleged distress. It was *Plaintiff's* failure to

9   disclose his attendance at USC that led to the revocation of his license, not any action on

10   the part of USC. *In re Jeffrey D. Isaacs M.D.*, Final Decision and Order, at 8–9.

11   **L.   Plaintiff's NIED Claim Fails as a Matter of Law**

12         Because NIED also requires severe mental distress and actual and proximate

13   causation, Plaintiff's NIED claim fails for these same reasons as well. *See, e.g.*, *Wong*,

14   189 Cal. App. 4th at 1378; *Hughes*, 46 Cal. 4th at 1051; *Christensen v. Superior Court*,

15   54 Cal. 3d 868, 900–1001 (1991). In addition, Plaintiff's NIED claim fails because the

16   Complaint pleads no facts to suggest that USC had a duty to avoid negligently causing

17   emotional distress to Plaintiff. Under California law, there is no duty to avoid negligently

18   causing emotional distress to another. *See Potter v. Firestone Tire & Rubber Co.*, (1993)

19   6 Cal. 4th 965, 984. Rather, a claim for NIED will lie only where the plaintiff suffers

20   serious emotional distress "as a result of a breach of duty owed the plaintiff that is

21   assumed by the defendant or imposed on the defendant as a matter of law, or that arises

22   out of a relationship between the two." *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1073

23   (1992). The relationship must be a preexisting, consensual relationship giving rise to a

24   legally protectable interest in being free from emotional distress caused by another's

25   negligent conduct. *Bro v. Glaser*, 22 Cal. App. 4th 1398, 1441 (1994). USC had no legal

26   duty to prevent Plaintiff's alleged emotional distress. Plaintiff and USC were litigation

27   adversaries who entered into negotiated, arm's-length settlement agreements. The mere

28   existence of a contract between parties does not suffice to impose a duty of care, *see*

Schwarz v. Regents of Univ. of California, 226 Cal. App. 3d 149, 168 (1990), and there is nothing in those agreements that required USC to refrain from negligently causing severe emotional distress to Plaintiff.

## M.    Plaintiff's Fraud and Constructive Fraud Claims Fail as a Matter of Law

Plaintiff's fraud and constructive fraud claims fail as a matter of law. First, the claims are time barred. The statute of limitations for fraud and constructive fraud is three years. Cal. Civ. Proc. Code § 338(d). *See also Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 786 n.2 (Cal. 1979); *Sun'n Sand, Inc. v. United Cal. Bank*, 21 Cal. 3d 671, 701 (1978). The cause of action accrues when the aggrieved party discovers the facts constituting the fraud. Cal. Civ. Proc. Code § 338(d). *See also Austin v. Medicis*, 21 Cal. App. 5th 577, 588 (2018). In his original Case 02011 Complaint, Plaintiff admitted he became aware of the situation in January of 2012. Ryzewska Decl., Ex. 14 (Case 02011 Dkt. 1 ¶¶ 74, 162). Though he deleted these admissions, Plaintiff still admits that he knew about the alleged actions in 2012 when he was terminated by Dartmouth, and in 2014, when the Board revoked his medical license. See ECF 1 ¶¶ 96, 119, 167, 175.[14] Thus, because he did not file suit until September 2019, his claim is time barred.

Second, Plaintiff fails to plead the elements of fraud or constructive fraud. Constructive fraud requires (1) a fiduciary or confidential relationship, (2) an act, omission or concealment involving breach of that duty, (3) reliance, and (4) resulting damage. *Dealertruck, Inc. v. Huber*, 460 F. Supp. 2d 1177, 1183 (C.D. Cal. 2006). The elements of fraud are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. *Morn v. Am. Messaging Servs., LLC*, No. SACV141635DOCRNBX, 2014 WL 12660529, at *2 (C.D. Cal. Nov. 18, 2014).

Plaintiff does not plead any of these elements with particularity. See Fed. R. Civ. P. 9(b). Additionally, Plaintiff does not and cannot plead that any confidential or

---

[14] Although it is far from clear, Plaintiff appears to be alleging that he was defrauded into entering into the 2007 and 2008 Settlement Agreements because USC's alleged breach of those agreements supposedly deprived him of the "consideration" to which he was entitled. *See* ECF 1-1 ¶¶ 329–31.

24

Gibson, Dunn & Crutcher LLP

fiduciary relationship existed at the time the parties negotiated the 2007 and 2008 Settlement Agreements, let alone that USC breached any alleged duty to Plaintiff or that Plaintiff relied on anything that USC supposedly said or did in connection with those agreements. As Plaintiff admits, the settlement agreements were the product of "protracted litigation and negotiations" and "[e]xhaustive settlement discussions." ECF 1 ¶¶ 3, 33. And the settlements themselves contain express representations that the parties were not relying on any "promises, statements or inducements . . . other than those expressly stated," and that the parties "have thoroughly discussed all aspects of their rights and this Agreement with their attorneys, or have knowingly and voluntarily chosen not to so." ECF 1-2 at 31 (2007 Settlement Agreement ¶ 8); 36 (2008 Settlement Agreement ¶ 12). Thus, his constructive fraud claim should be dismissed with prejudice.

## N.    Plaintiff's Declaratory Judgment Claim Fails as a Matter of Law

Declaratory judgments are not a vehicle for "redress[ing] past wrongs." *Tatung Co. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036, 1064 (C.D. Cal. 2014); *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 909 (2013). Rather, they are "designed to resolve uncertainties and disputes that may result in future litigation" and operate "prospectively." *Id*. Thus, a claim for declaratory relief will not lie where there is no possibility of prospective relief. *See United Safeguard Distributors Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*, 145 F. Supp. 3d 932, 961 (C.D. Cal. 2015) (dismissing declaratory relief claim brought "not as a preventative measure, but as a remedial measure to address previously alleged breach of contract claims"). Here, Plaintiff seeks to redress an alleged breach that occurred, if at all, years ago and to establish his "factual innocence" regarding events that, by his own admission, occurred more than a decade ago. ECF 1 ¶¶ 184, 306.

## V.    CONCLUSION

For the foregoing reasons, USC respectfully requests that the Court grant the Motion to Dismiss and dismiss Plaintiff's Complaint with prejudice.

1    Dated: October 17, 2019                GIBSON, DUNN & CRUTCHER LLP

2

3                                            By:    _____*/s/ James P. Fogelman*_____

4                                                       James P. Fogelman

5                                            Attorney for USC Keck School of Medicine

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28