Mark J. Austin (SBN 208880)
E-mail: maustin@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
1851 East First Street, Suite 1550
Santa Ana, California 92705-4067
Tel: 949-863-3363    Fax: 949-863-3350

Keith A Mathews
E-mail: keith@aaone.law
ASSOCIATED ATTORNEYS OF NEW ENGLAND
1000 Elm Street Suite 803
Manchester, NH 03101
Tel: 603-622-8100    Fax: 888-912-1497

Attorneys for Plaintiff
Dr. Jeffrey Isaacs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. JEFFREY ISAACS,<br><br>Plaintiff,<br><br>v.<br><br>USC KECK SCHOOL OF MEDICINE; GEISEL SCHOOL OF MEDICINE AT DARTMOUTH; DARTMOUTH HITCHCOCK MEDICAL CENTER; NEW HAMPSHIRE BOARD OF MEDICINE; GIBSON, DUNN & CRUTCHER,LLP; and JOHN or JANE DOE,<br><br>Defendants. | Case No. 2:19-cv-08000-DSF-RAO<br><br>**PLAINTIFF'S JOINT OPPOSITION/RESPONSE TO:**<br><br>**(1) SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS FILED BY DEFENDANT GIBSON, DUNN & CRUTCHER, LLP; AND**<br><br>**(2) SPECIAL MOTION TO STRIKE FILED BY DEFENDANT USC KECK SCHOOL OF MEDICINE**<br><br>*[Filed concurrently with Declarations in Support Thereof]*<br><br>Date:     February 3, 2020<br>Time:     1:30 p.m.<br>Judge:    Hon. Dale S. Fischer<br>Crtm.:    7D |

Plaintiff Dr. Jeffrey Isaacs ("Plaintiff"), by and through his counsel of record, hereby submits his joint opposition/response to (1) Special Motion to Strike and Motion to Dismiss filed by Defendant Gibson, Dunn & Crutcher, LLP; and (2) Special Motion to Strike filed by Defendant USC Keck School of Medicine.

**TABLE OF CONTENTS**

|   | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF FACTS | 2 |
| III. | SUMMARY OF ARGUMENT | 3 |
| IV. | ARGUMENT | 5 |
|   | A. Defendants' Challenges to Plaintiff's Claims Are Inappropriate on an Anti-SLAPP Motion to Strike in Federal Court | 5 |
|   | B. Neither Noerr Immunity Nor Civil Code Section 47(b) Is Applicable to Plaintiff's Claim | 7 |
|   | C. For The Same Reasons, USC/Gibson's Motion to Dismiss Should Be Denied | 10 |
|   | 1. Standards for Rule 12(b)(6) Motions | 10 |
|   | 2. Motions Under Rule 12 Are Inappropriate For Decision of Disputed Issues of Law and Undeveloped Factual Records | 11 |
|   | 3. In the Interests of Brevity, Plaintiff Refers to His Opposition to Keck's Motion to Dismiss Regarding the State Law and RICO Claims | 12 |
| V. | CONCLUSION | 12 |

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aeroplate Corp. v. Arch Ins. Co.*,
  Case No. 06-CV-1099-AWI-SMS, 2006 WL 3257487 (E.D. Cal. Nov. 9, 2006) ................................................................................................... 7

*al-Kidd v. Ashcroft*,
  580 F.3d 949 (9th Cir. 2009) .................................................................. 10

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988) ................................................................................. 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................... 10, 11

*In re Bah*,
  321 B.R. 41 (9th Cir. 2005) ..................................................................... 7

*Bautista v. Hunt & Henriques*,
  Case No. 11-CV-4010 JCS, 2012 WL 160252 (N.D. Cal. Jan. 17, 2012) ....................................................................................................... 6

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007) ......................................................................... 10, 11

*Blackburn v. Sweeney*,
  53 F.2d 825 (7th Cir. 1995) ..................................................................... 8

*Bradbury v. Superior Court*,
  49 Cal. App. 4th 1108 (Cal. Ct. App. 1996) ........................................... 5

*In re Brand Name Prescription Drugs Antitrust Litigation*,
  186 F.3d 781 (7th Cir. 1999) ................................................................... 8

*Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*,
  448 F. Supp. 2d 1172 (C.D. Cal. 2006) ................................................... 5

*In re Cardizem CD Antitrust Litigation*,
  105 F.Supp.2d 618 (E.D. Mich. 2000) .................................................... 8

*Choyce v. SF Bay Area Indep. Media Ctr.*,
   Case No. 13-cv-01842-JST, 2013 WL 6234628 (N.D. Cal. Dec. 2, 2013) ................................................................................................................ 6, 7

*Del Monte Dunes v. City of Monterey*,
   920 F.2d 1496 (9th Cir. 1990) ................................................................................ 11

*Eastern RR Presidents Conference v. Noerr Motor Freight Inc.*,
   365 U.S. 127 (1961) ................................................................................................. 7

*Erickson v. Pardus*,
   551 U.S. 89 (2007) ................................................................................................. 10

*Haneline Pacific Properties, LLC v. May*,
   167 Cal. App. 4th 311 (Cal. Ct. App. 2008) ........................................................... 5

*Helen of Troy Ltd. v. John Paul Mitchell Sys., Inc.*,
   Case No. EP-05-CA-365-FM, 2007 WL 1540980 (W.D. Tex. May 15, 2007) ................................................................................................................ 11

*Hernandez v. Amcord*,
   215 Cal.App.4th 659 (Cal. Ct. App. 2013) ............................................................. 8

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) .................................................................................. 5

*Jacobson v. AEG Capital Corp.*,
   50 F.3d 1493 (9th Cir. 1995) ................................................................................ 11

*Jeld-Wen Master Welfare Ben. Plan v. Tri-City Health Care Dist.*,
   Case Case No. 12-CV-197 GPC (RBB), 2012 WL 5944215 (S.D. Cal. Nov. 27, 2012) ............................................................................................. 11

*Kearney v. Foley & Lardner, LLP*,
   590 F.3d 638 (9th Cir. 2009) .................................................................................. 8

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .............................................................................. 11

*Lopez v. F.I.N.S Constr., LLC*,
   Case No. CV 16-2408, 2016 WL 3430822 (E.D. La. June 22, 2016) ................. 11

*Mack v. South Bay Beer Distrib.*,
   798 F.2d 1279 (9th Cir. 1986) .............................................................................. 11

*Macquarie Grp. Ltd. v. Pac. Corp. Grp., LLC*,
   Case No. 08CV2113-IEG-WMC, 2009 WL 539928 (S.D. Cal. Mar. 2, 2009) ........................................................................................................ 9

*Metabolife Int'l, Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) ................................................................... 6, 7

*Moore v. Conliffe*,
   7 Cal.4th 634 (1994) .................................................................................. 9

*In re New Mexico Natural Gas Antitrust Litigation*,
   MDL No. 403, 1982 WL 1827 (D. N.M. Jan. 26, 1982) ........................... 8

*Rogers v. Home Shopping Network, Inc.*,
   57 F. Supp. 2d 973 (C.D. Cal. 1999) ......................................................... 7

*United States v. Singer Mfg. Co.*,
   374 U.S. 174 (1963) ................................................................................... 8

*United Mine Workers of America v. Pennington*,
   381 U.S. 657 (1965) ................................................................................... 7

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
   143 F. Supp. 3d 982 (N.D. Cal 2015) ........................................................ 6

*University of Southern California v. Superior Court*,
   45 Cal.App.4th 1283 (1996) ...................................................................... 9

*Vergos v. McNeal*,
   146 Cal. App. 4th 1387 (2007) .................................................................. 6

*We, Inc. v. City of Philadelphia Dept. of Licensing and Inspections*,
   983 F.Supp. 637 (E.D Pa. 1997) ................................................................ 9

*Winters v. Jordan*,
   Case No. 09-CV-0522-JAM-KJN, 2010 WL 2838634 (E.D. Cal. July 20, 2010) ............................................................................................ 5

**Statutes and Other Authorities**

Cal. Civ. Proc. Code Section 425.16(b)(1) ...................................................... 6

California Civil Code Section 47(b) ........................................................*passim*

| | |
|---|---|
| Sherman Act | 8 |
| Fed. R. Civ. P. 8 | 7, 10 |
| Fed. R. Civ. P. 8(a) | 10 |
| Fed. R. Civ. P. 12 | 7 |
| Fed. R. Civ. P. 12(b) | 12 |
| Fed. R. Civ. P. 12(b)(6) | 1, 7 |
| Fed. R. Civ. P. 12(b)(6) | 2, 7, 11 |
| Fed. R. Civ. P. 56 | 1 |

## I. INTRODUCTION

Plaintiff's pro se complaint may be inartfully pleaded, and could benefit substantially from amendment, but it should survive defendants' Keck School of Medicine at the University of Southern California ("USC") and Gibson, Dunn & Crutcher, LLP ("Gibson") (collectively "USC/Gibson") state law anti-SLAPP special motion to strike and Federal Rule of Civil Procedure, Rule 12(b)(6) motion to dismiss (collectively "Motions"). The crux of Plaintiff's claim[1] against USC/Gibson is for a declaratory judgment that his constitutional rights have been and are being violated by the lifetime ban from its grounds imposed against him by USC. ("Lifetime Ban"). The pro se complaint includes an abundance of some facts and other allegations from past litigation among the parties, but the Court should view it liberally to state a claim for at least declaratory judgment. Even if the Court agrees with USC/Gibson's Motions, the Court should grant plaintiff leave to amend to clarify the relevant factual allegations and state his claim more precisely.

The Motions should be denied for both procedural and substantive reasons. California's anti-SLAPP statute is inapplicable to federal law claims. The state law-imposed discovery stay and remedy of summary disposal of factual questions on a motion to strike is antithetical to the Federal Rules of Civil Procedure, especially Rule 56. The special motion to strike should be denied on that basis alone. Substantively, the motions fare no better. Noerr Pennington immunity pertains to government petitioning activity. Private, non-judicially supervised settlement agreements are not included in the definition of government petitioning activity. Similarly, neither Noerr immunity nor California Civil Code section 47(b) creates an evidentiary privilege. Plaintiff should not lose his claim by inartfully alleging the existence of the Lifetime Ban, the release of claims by the parties in

---

[1] The other claims raised in Plaintiff's complaint are addressed in the Plaintiff's opposition to USC Keck School of Medicine's motion to dismiss, filed separately.

settlement agreements, and the ongoing existence and threat to enforce the Lifetime Ban after the settlement agreements were executed.

Both USC's and Gibson's Motions narrowly characterize the allegations plaintiff's complaint as stating claims based on statements made during meet and confer discussions related to litigation, which they argue demonstrates plaintiff's claims fail. A fair reading under the applicable liberal pleading standard demonstrates that plaintiff's allegations are sufficient to survive pleading-stage motions to strike or dismiss. What can be gleaned from plaintiff's complaint is that USC banned plaintiff from its property in or around 2006; plaintiff and USC entered into settlement agreements that ended and released disputes and claims (including USC's ban); after those settlement agreements were executed, and based upon an email from Gibson, Dunn & Crutcher, it is plain that USC continues to ban plaintiff from its property; and, plaintiff believes his constitutional rights are violated by the ban and seeks a declaration to that effect and/or that the settlement agreements have been breached. Although the communications identified in plaintiff's complaint were made during litigation, the ban itself and its continued existence do not arise out of protected activity – the ban and its continued existence are separate and apart from communications made during litigation that reference the ban. Noerr immunity and the state law litigation privilege are therefore inapplicable. The Motions should be denied, or if granted, plaintiff should be granted leave to more precisely state his claim(s).

## II. STATEMENT OF FACTS

Only a small part of the lengthy history of litigation among plaintiff, USC/Keck School of Medicine ("USC") and Gibson, Dunn & Crutcher ("Gibson") is relevant to USC's and Gibson's state law-based special motion to strike and Rule 12(b)(6) motion to dismiss (collectively "Motions"). At paragraph 21 of Plaintiff's pro se complaint, Plaintiff alleges a lifelong ban that bars Plaintiff from USC's property ("Lifetime Ban.") See complaint (ECF No. 1) at (ECF) p. 7, paragraph 21.

There is a factual dispute at this point whether the Lifetime Ban is a continuation of a ban that was instituted by USC against Plaintiff in or around 2006 (see Complaint at para. 27; and *see* Declaration of Jeffrey Isaacs filed concurrently with this Opposition, at para. 2 and Exhibit A thereto) and subsequently released by USC in prior written settlement agreements between USC and plaintiff, or if the Lifetime Ban was issued unilaterally by Gibson.  See Isaacs Decl., at para. 3; see also Declaration of Mark Austin, also filed concurrently, at para. 2-3.

Communications by USC and Gibson regarding the ongoing Lifetime Ban were made in email communications among USC's in-house counsel, Gibson partner James Fogleman and Plaintiff in or around August, 2019.  Isaacs Declaration at para. 4, and Exhibit A.  Specifically, Mr. Fogleman stated the following in an email to Plaintiff:

> You have no right to be on the USC campus.  And you have no reason to be there.  You asked me if USC or this firm is blocking you from calling a police department.  We are not.  But that is not the same as appearing in person on USC's campus.  USC does not have a police station on campus – it has a private department of public safety.  You do not need to access the campus in order to file a police report.  Entering USC's campus would be trespassing.  JPF

ECF 1-2, p. 42, Isaacs Declaration at para. 5, and Exhibit A.  Mr. Fogelman's email demonstrates that the Lifetime Ban is ongoing (*e.g.*, any ingress by Plaintiff to USC's campus "would be trespassing"); *see also* Isaacs Decl. at para. 5, Exhibit A (additional email dated August 3, 2019 from Fogleman to Plaintiff: "You have already breached the settlement agreement by filing your lawsuit against USC.  USC is entitled to collect its attorneys (*sic*) fees from you as a result of that breach.  And now you want to breach your agreement again by filing an application with USC?  And threatening to trespass on the USC campus to boot?")

### III. **SUMMARY OF ARGUMENT**

USC/Gibson's Anti-SLAPP Special Motion to Strike ("Anti-SLAPP

Motion") is both procedurally and substantively flawed. Procedurally, the Anti-SLAPP Motion is defective because Plaintiff's claim for declaratory relief seeks relief under federal law, and state Anti-SLAPP motions cannot reach those claims based on federal law. Substantively, USC/Gibson's Anti-SLAPP Motion fails because it relies on characterizations of the pro se Plaintiff's allegations rather than focusing on the crux of Plaintiff's claims.

While admittedly difficult to discern because of the depth of the allegations pled, the thrust of Plaintiff's claims is the lifetime ban ("Lifetime Ban") imposed against Plaintiff by USC, and recently reaffirmed by Gibson via an email from its partner James Fogleman, without providing Plaintiff due process or a fair hearing. The Gibson email also carried a threat against Plaintiff of criminal prosecution for trespass should Plaintiff enter the USC campus to file a police report. Plaintiff resolved the Lifetime Ban in past litigation, but the Lifetime Ban itself did not arise out of litigation, government petitioning activity, or other protected activity. USC has only a private "department of public safety," not a government police force. The Lifetime Ban was issued separate and apart from any litigation and continues through the present day. USC/Gibson's continuing threats to enforce the Lifetime Ban violate Plaintiff's Constitutional rights under the First and Fifth Amendments. Plaintiff's First Claim for Relief attempts to plead the controversy that exists among Plaintiff, USC and Gibson and frame a request for a declaration from this Court that the Lifetime Ban is unenforceable. That claim should survive the Motions.

USC/Gibson's other arguments, namely that plaintiff's claims are barred by *Noerr-Pennington* immunity and/or Civil Code section 47(b) ("section 47") fail for similar reasons. *Noerr-Pennington* immunity is unavailable to USC/Gibson because no government action is or was implicated by Plaintiff's request to enter the USC campus, and the Lifetime Ban was not part of government petitioning activity. Plaintiff's claim is not the type *Noerr-Pennington* immunity was designed to shield. Similarly, Plaintiff's pleading of facts embodied in communications

between himself and USC (and its counsel) about the Lifetime Ban and a threat to enforce it is not controlled by Section 47 or the common law litigation privilege. Section 47 is substantive law and not an evidentiary rule. Mere reference in the complaint to communications that evidence underlying unlawful actions does not insulate these defendants nor render the complaint susceptible to a special motion to strike.

## IV. ARGUMENT

### A. Defendants' Challenges to Plaintiff's Claims Are Inappropriate on an Anti-SLAPP Motion to Strike in Federal Court

California's anti-SLAPP statute does not apply to federal claims. *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) ("[A] federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims."); *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F. Supp. 2d 1172, 1181-82 (C.D. Cal. 2006) (declining to strike federal RICO claims, reasoning that "applying [state anti-SLAPP statute] to federal claims . . . [is a] violation of the Supremacy Clause of the Constitution."); *Winters v. Jordan*, No. 09-CV-0522-JAM-KJN, 2010 WL 2838634, at *4 (E.D. Cal. July 20, 2010) ("[A] party may not use an anti-SLAPP special motion to strike to seek the dismissal of claims based on federal law."), *report and recommendation adopted*, 2010 WL 3636221 (E.D. Cal. Sept. 14, 2010), *aff'd*, 479 F. App'x 742 (9th Cir. 2012).

Here, the crux of plaintiff's complaint is based on the Lifetime Ban. *Haneline Pacific Properties, LLC v. May*, 167 Cal. App. 4th 311, 319 (Cal. Ct. App. 2008) ("[I]t is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation]....") Despite USC's and Gibson's characterization of plaintiff's pleading as based exclusively on matters that have been settled and distinguished via the 2007 and 2008 settlement agreements. *See Bradbury v. Superior Court*, 49 Cal. App. 4th 1108, 1118 (Cal. Ct. App. 1996) (holding that "[w]here the action is founded on a

federal statute and brought in state court, state procedure controls unless the federal statute provides otherwise"); *Vergos v. McNeal*, 146 Cal. App. 4th 1387, 1392 n.4 (2007) (citing *Bradbury*); *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 988 (N.D. Cal 2015) (California's anti-SLAPP statute does not apply to federal law causes of action.)

Even were the Court to find that Plaintiff's claims are based on state law, the Motions should be denied at the pleading stage. While the Ninth Circuit and federal district courts in California have applied the California anti-SLAPP statute to state law claims asserted in federal court, it is well-settled that a motion to strike will be denied where the plaintiff demonstrates a probability of success on each of the challenged claims. *See* Cal. Civ. Proc. Code § 425.16(b)(1). Federal courts in California have held that "plaintiff's burden of establishing probability of success is *not high*." *Bautista v. Hunt & Henriques*, No. 11-CV-4010 JCS, 2012 WL 160252, at *7 (N.D. Cal. Jan. 17, 2012) (emphasis added). Indeed, "probability in this context has been described as a mere possibility of success." *Id*.

Likewise, the Ninth Circuit and federal district courts in California have recognized that certain aspects of the California anti-SLAPP statute directly conflict with the Federal Rules of Civil Procedure and therefore cannot be applied in federal court. As a result, courts have severely limited the application and impact of anti-SLAPP statutes in federal court. Indeed, as the Northern District of California has recognized, a "federal court special motion [to strike] is a far different (and tamer) animal than its state-court cousin." *Choyce v. SF Bay Area Indep. Media Ctr.*, No. 13-cv-01842-JST, 2013 WL 6234628 at *5 (N.D. Cal. Dec. 2, 2013). The Ninth Circuit has also held that allowing a state anti-SLAPP statute to alter the burden of proof to require a plaintiff to prove their allegations at the pleading stage would result in a "direct collision" with the Federal Rules of Civil Procedure. *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845-46 (9th Cir. 2001) ("If this expedited procedure were used in federal court to test the plaintiff's evidence before

- 6 -

the plaintiff has completed discovery, it would collide with [FRCP] 56."). Therefore, courts in the Ninth Circuit have routinely held that anti-SLAPP statutes' "expedited procedure" to strike a plaintiff's claims based on a lack of evidence prior to completion of discovery is not applicable to claims brought in federal court. *See Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999) (defendant cannot bring a motion to strike in federal court based on lack of evidence until discovery has been developed); *Aeroplate Corp. v. Arch Ins. Co.*, No. 06-CV-1099-AWI-SMS, 2006 WL 3257487, at *7 (E.D. Cal. Nov. 9, 2006) (motions to strike pursuant to anti-SLAPP statutes are "restricted in federal court to only those situations where the issues presented by the anti-SLAPP motion can be resolved purely as a matter of law. . .").

Accordingly, USC/Gibson's special motion to strike and their Rule 12(b)(6) motion to dismiss should be decided under the standards set forth in Federal Rules of Civil Procedure 8 and 12. *See Rogers*, 57 F. Supp. 2d at 982-83; *Metabolife*, 264 F.3d at 846; *In re Bah*, 321 B.R. 41, 45 n.6 (9th Cir. 2005); *Choyce*, 2013 WL 6234628 at *5 ("'If a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6)'") (quoting *Rogers*, 57 F. Supp. 2d at 980). Neither USC nor Gibson provides arguments or authority based on Rule 8 and/or 12 in the Motion. The Motions should therefore be denied.

  **B.**  **<u>Neither Noerr Immunity Nor Civil Code Section 47(b) Is Applicable to Plaintiff's Claim</u>**

The Noerr-Pennington Doctrine ("Noerr immunity") is derived from two cases that clarified First Amendment immunities to antitrust liability *viz.* those who engage in government petitioning activity. *Eastern RR Presidents Conference v. Noerr Motor Freight Inc.*, 365 U.S. 127, 144 (1961) (efforts to influence political branches of government protected) and *United Mine Workers of America v. Pennington*, 381 U.S. 657, 670-71 (1965) (extending protection to administrative

agencies). It provides that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643-44 (9th Cir. 2009) (citation and quotations omitted). The Noerr immunity applies *only* to acts of petitioning the government. *Id.*, at 644. This is where USC/Gibson's analysis in their Motions breaks down.

Purely private agreements between private parties are not subject to Noerr immunity. *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988); *see also United States v. Singer Mfg. Co.*, 374 U.S. 174, 194 (1963) (settlement agreements between defendant and its Swiss and Italian competitors violated Sherman Act); *Blackburn v. Sweeney*, 53 F.2d 825, 828 (7th Cir. 1995) (dissolution agreement between former law partners settling a state court lawsuit was a horizontal agreement to allocate markets among competitors and per se violation of the Sherman Act); *In re New Mexico Natural Gas Antitrust Litigation*, MDL No. 403, 1982 WL 1827 (D. N.M. Jan. 26, 1982) (". . . the Court concludes that plaintiffs are correct in asserting that a private settlement agreement accomplished without Court participation should not be afforded Noerr-Pennington protection." *Accord, In re Cardizem CD Antitrust Litigation*, 105 F.Supp.2d 618, 641-42 (E.D. Mich. 2000).

Moreover, Noerr immunity is a doctrine of substantive law, not a rule of evidence. *In re Brand Name Prescription Drugs Antitrust Litigation*, 186 F.3d 781, 789 (7th Cir. 1999) ("The district judge thus erred in . . . treating [Noerr immunity] as a rule of evidence that forbids the introduction of evidence . . . relating to efforts to obtain governmental protection . . ."); *see also Hernandez v. Amcord*, 215 Cal.App.4th 659, 679-80 (Cal. Ct. App. 2013). To the extent plaintiff includes references to statements made during litigation as a basis of its motion to dismiss, plaintiff is not precluded from relying on those statements as evidence of the Lifetime Ban that continues through the present day, irrespective of Noerr

immunity.

The Lifetime Ban and its continued enforcement after the settlement agreements were executed is the crux of plaintiff's claim against USC/Gibson, which simply does not involve petitioning activity. *E.g., We, Inc. v. City of Philadelphia Dept. of Licensing and Inspections*, 983 F.Supp. 637, 639-40 (E.D Pa. 1997) (denying, on reconsideration, motion to dismiss claim, premised on Noerr immunity grounds, against university and its police officers for enforcing cease operations order on businesses university had deemed a public nuisance: "There is no petitioning element to this activity.") Consequently, USC's Lifetime Ban, which it claims is part of the Settlement Agreements, is a term in non-judicially supervised agreements between private parties. Noerr immunity therefore does not attach.

USC's other argument under California Civil Code section 47(b), is equally misplaced. Section 47(b) is not a rule of evidence. *Moore v. Conliffe*, 7 Cal.4th 634, 638 n.1 (1994) ("Although the protection afforded by the statute is commonly denominated a 'privilege' which creates a 'privileged communication,' [Civil Code] section 47(b) does not create an evidentiary privilege.") *See also University of Southern California v. Superior Court*, 45 Cal.App.4th 1283, 1292 (1996). For the same reasons that Noerr immunity does not preclude plaintiff from relying on communications from USC and/or Gibson regarding the Lifetime Ban as evidence of its existence and USC's intent to continue its enforcement – because the communications themselves are not the basis of Plaintiff's claim, neither does Civil Code section 47(b). *See Also Macquarie Grp. Ltd. v. Pac. Corp. Grp., LLC*, No. 08CV2113-IEG-WMC, 2009 WL 539928, at *13 (S.D. Cal. Mar. 2, 2009) (denying defendants' motion to strike allegations referencing defendants' prelawsuit communications on the grounds that their admission violated the litigation privilege and the Noerr-Pennington doctrine, finding that because such communications were not the basis of plaintiff's causes of action, the privileges were inapplicable and there was no basis to strike the allegations.)

**C.     For The Same Reasons, USC/Gibson's Motion to Dismiss Should Be Denied**

1.     Standards for Rule 12(b)(6) Motions

Under the Federal Rules of Civil Procedure, a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The complaint must also give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation and modification omitted). To meet this requirement, the complaint must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[A] complaint need contain "only enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678.

*Twombly* defines plausibility in terms of what it is not. It is not a probability requirement. *Iqbal*, 556 U.S. at 678. As the Ninth Circuit has explained, "*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden. 'Asking for plausible grounds to infer' the existence of a claim for relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' to prove that claim." *al-Kidd v. Ashcroft*, 580 F.3d 949, 977-978 (9th Cir. 2009) (quoting *Twombly*, 550 U.S. at 570). And as the *Twombly* Court itself explained, pleading a plausible claim does not require "heightened fact pleading of specifics[.]" *Twombly*, 550 U.S. at 555, 570. *See also Iqbal*, 556 U.S. at 678 ("the pleading standard Rule 8 announces does not require 'detailed factual allegations[.]").

Moreover, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Iqbal*, 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity . . . ."). After accepting as true plaintiff's allegations

and drawing all reasonable inferences in its favor, a court must then determine whether the complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotations omitted).

Moreover, a court may, in ruling on a motion to dismiss, consider only the complaint, documents that are attached to or incorporated into the complaint, and matters of public record. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). "If matters outside the pleadings are submitted, the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is treated as one for summary judgment." *Jacobson v. AEG Capital Corp.*, 50 F.3d 1493, 1496 (9th Cir. 1995); *see also Del Monte Dunes v. City of Monterey*, 920 F.2d 1496, 1507-08 (9th Cir. 1990) (where district court considered affidavits and exhibits in support of and opposition to motion to dismiss, court of appeals treated dismissal as order granting summary judgment under Fed. R. Civ. P. 56(c)). *See also Jeld-Wen Master Welfare Ben. Plan v. Tri-City Health Care Dist.*, Case No. 12-CV-197 GPC (RBB), 2012 WL 5944215, at *4 (S.D. Cal. Nov. 27, 2012) (converting motion to dismiss into motion for summary judgment after both parties filed extraneous documents and declarations with dismissal motion).

    2. <u>Motions Under Rule 12 Are Inappropriate For Decision of Disputed Issues of Law and Undeveloped Factual Records</u>

Courts have been wary of deciding disputed issues of law on undeveloped factual records at the pre-discovery stage. *See e.g. Helen of Troy Ltd. v. John Paul Mitchell Sys., Inc.*, No. EP-05-CA-365-FM, 2007 WL 1540980, at *1 (W.D. Tex. May 15, 2007) (finding it inappropriate to decide disputed issues of law on a motion to strike); *see also Lopez v. F.I.N.S Constr., LLC*, No. CV 16-2408, 2016 WL 3430822, at *2 (E.D. La. June 22, 2016) ("the court should not determine

disputed and substantial questions of law when there is no showing of prejudicial harm to the moving party"), citing *Augustus v. Board of Public Instruction of Escambia County, Fla.*, 306 F.2d 862, 868 (5th Cir. 1962).

Here there is a bona fide dispute regarding whether Noerr immunity or the privilege of Civil Code section 47(b) should bar plaintiff's claims in total, or if plaintiff's pleading of evidence to support his claim regarding the Lifetime Ban can be amended sufficiently to state the claim clearly. There are further factual disputes regarding whether the Lifetime Ban was issued and continued by USC, or whether it was Gibson that unilaterally informed Plaintiff that he could not enter USC's grounds or risk criminal prosecution. The legal and factual disputes presented by Plaintiff's pro se complaint are simply not amenable to resolution on a Rule 12(b) motion. The Motions should therefore be denied.

3. <u>In the Interests of Brevity, Plaintiff Refers to His Opposition to Keck's Motion to Dismiss Regarding the State Law and RICO Claims</u>

Rather than restate the same arguments in this memorandum, Plaintiff refers the Court to his Opposition memorandum to USC's Motion to Dismiss for the other state law and RICO-based claims.

## V. **CONCLUSION**

Based on the foregoing, Plaintiff requests the Court deny USC's and Gibson's Motions. In the alternative, should the Court grant the Motion to Dismiss, Plaintiff requests the Court grant him leave to amend so that he may plead his claim(s) more precisely.

Dated: January 13, 2020　　　　　　　BURKE, WILLIAMS & SORENSEN, LLP


By: /s/ Mark J. Austin
Mark J. Austin
Attorneys for Plaintiff Jeffrey Isaacs