Associated Attorneys of New England
Keith Mathews, Esq.
*Admitted Pro Hac Vice*
1000 Elm Street, Suite 803
Manchester, NH 03101
Tel: (603) 622-8100
Keith@aaone.law

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. JEFFREY ISAACS<br><br>Plaintiff,<br><br>vs.<br><br>DARTMOUTH HITCHCOCK MEDICAL CENTER<br>GEISEL SCHOOL OF MEDICINE AT DARTMOUTH<br>USC KECK SCHOOL OF MEDICINE<br>NH BOARD OF MEDICINE;<br>GIBSON DUNN & CRUTCHER<br><br>and JOHN or JANE DOE,<br><br>Defendants. | Case 2:19-CV-08000-DSF-RAO<br><br>**NOTICE OF NON OPPOSITION TO DARTMOUTH HITCHCOCK MEDICAL CENTER AND GEISEL SCHOOL OF MEDICINE AT DARTMOUTH'S MOTIONS TO DISMISS AND APPLICABILITY OF CCP 425.16(c)(1)128.5 FEES** |

## Notice of Non-Opposition To Dartmouth Hitchcock Medical Center and Giesel School of Medicine At Dartmouth's Motions to Dismiss

Plaintiff, Jeffrey Isaacs, M.D., respectfully submits this notice of non objection to the Dartmouth Defendants Motions to Dismiss. Given the evidence discovered after Dr. Isaacs filed the related 18-cv-02011-DSF complaint, it appears that USC Keck was publishing his attendance at USC at the time he was terminated from Dartmouth, indicating at least preliminarily that there is no John Doe and that Dartmouth discovered his Keck attendance due to malfeasance by USC Keck years before Dartmouth had any involvement in the matter.

It is important to note that the existence of the AAMC profile was covered up by the Dartmouth Defendants who refused to mention the profile in depositions, resulting in the eventual inclusion in this lawsuit. Dartmouth had a legal duty to read Isaacs' AAMC application before he started work in June 2011. It is now apparent the AAMC application included notice of discipline at Keck, and as a matter of law, Isaacs' application was full and complete in its disclosure of his educational history. Multiple Dartmouth witnesses testified that Dartmouth learned of Keck in January 2012. Obviously Isaacs' claims in NHD 12-cv-0040 that he was mistreated during that six month unexplained gap would be further supported had the evidence shown at the time that Dartmouth did in fact know about the Keck matter.

It is thus asserted that Dartmouth covered up the existence of the AAMC profile in order to avoid liability for their harassment and abuse of Dr. Isaacs. It is an accepted fact that Isaacs' email and hospital medical records at DHMC also were improperly spoliated in January 2012. As this complaint states, upon information and belief, former Dartmouth and World Bank president Jim Yong Kim offered a resignation in part due to the unacceptable behavior in federal proceedings that occurred under his watch. The recent AAMC profile discovery corroborates these prior evidence discrepancies, and further justifies the actions taken by the federal authority that held him

accountable; Plaintiff appreciates this enforcement of accountability and at this time is not pursuing further claims against Dartmouth.

Nonetheless, as the John/Jane Doe Defendants listed in the Plaintiff's complaint do not appear to exist, or they exist in a minimal role, there appears to be no direct meaningful relationship between the Dartmouth Defendants and USC. Dartmouth's litigation conduct is under the NHD jurisdiction, but it may be determined that the aforementioned resignation appropriately redressed the matters.

In terms of background relevant to USC Keck, in January 2012 Dr. Isaacs was accused by his Dartmouth director Dr. Finn of falsifying his application. Isaacs immediately realized that his residency training was essentially fraudulent as he was harshly treated from day one for purportedly having poor medical knowledge.(*NHD Complaint* p.6 "Plaintiff suddenly realized that, for much of the time he worked at DHMC, the Defendants had been looking for pretextual reasons to terminate his employment.")[1] Ultimately the 'poor knowledge' argument was abandoned, as testimony from his attendings conceded his medical knowledge was in fact quite good. It appears that Dartmouth learned about the Keck discipline and were rather shocked and surprised that Isaacs, a Dartmouth alumnus in good repute, had been accused in such a way. They decided to be the judge & jury themselves and even perhaps give Isaacs a chance during those six months. Unfortunately, things fell apart so to speak and the situation deteriorated, and Dartmouth felt the need to terminate Isaacs (without the peer review hearings required by law) and disavow prior knowledge of the USC controversy. As appropriately worded in the related opposition pleadings, this lead to an eight year "wild goose chase."

---

[1] Gibson Dunn has made at least three references to this January 2012 "illegal situation" where Isaacs was fraudulently criticized by Dartmouth. Per Gibson Dunn's logic, or rather lack thereof, USC was a co-conspirator to Dartmouth's abuse of a resident physician, and therefore, the present RICO claim is supposedly time-barred through *res judicata* theory as applied to co-conspirators. Even *if* John Doe exists, which is not still alleged by Plaintiff, there is absolutely no indication he/she encouraged Dartmouth to go about with their unethical six-month test of Dr. Isaacs. To be sure, John Doe would have preferred an immediate termination rather than Dr. Isaacs being given a chance to succeed at Dartmouth (which he largely did, according to the majority of witness testimony).

Isaacs v. Keck USC et al
Case No. 19-CV-08000-DSF                                3

### Continued Discoverability of Dartmouth Events Apply To Remaining Keck USC/ Gibson Dunn Claims

Whether or not Dartmouth remains a party to this lawsuit, it is virtually certain that they possess evidence that supports the ongoing claims. First, USC has recently filed a reply blaming Dr. Isaacs for not discovering the AAMC profile earlier, claiming Plaintiff "has the burden to show diligence."[2] But justifying a motion to dismiss by blaming Dr. Isaacs for Dartmouth's perjured testimony is reprehensible. For example, Dr. Isaacs spent a substantial portion of a deposition of Dr. Finn trying to ascertain how she learned about the USC discipline. In retrospect, she learned in June 2011 from the AAMC profile she reviewed as Program Director, but clearly she testifies differently:

> **Q.** Is there any sort of cover up as to how you learned about USC?
> **A**. No, I think I've told you exactly how I learned about USC.
> **Q**. You had no knowledge that I was present in Los Angeles or in any way related to USC prior to Attorney Kaplan telling you [in January 2012]?
> **A.**I did not… Then I would say my only source of information [about USC] is that conversation[with Attorney Kaplan in January 2012], so I can't identify any further information.
> **Q.** That's a pretty good way to cover up how you learned about USC, isn't it?
> *Finn Deposition*, p. 103

In addition to the AAMC profile, Dartmouth may also have information about retaliation USC is presently employing against Dr. Isaacs. Jim Yong Kim's academic successor and protégé at Dartmouth, Dr Folt, was appointed President of USC last year. USC has taken actions which appear to amount to abuse of process, including filing an oppressive Anti-SLAPP motion to strike. USC replacing the prior local counsel Dal Soglio and Marten with Gibson Dunn likewise raises serious questions[3]. It cannot be ruled out that Jim Yong Kim's resignation, which Defendants simply don't want to file an answer about, has lead to USC's exaggerated and unusual legal posturing of

---

[2] Plaintiff has spent nearly his entire adult life in this litigation, which has taken an untold effect on his health and well-being. Plaintiff deposed ten individuals at two different universities attempting to uncover how the Keck disciplinary records had leaked. Gibson Dunn has even asserted he is "not unsophisticated" in his efforts to seek redress via federal court protocols. If Dr Isaacs could have uncovered Keck's breach a decade ago – and spared a decade of litigation against his alma mater, which only worsened his plight – he certainly would have done so.

[3] USC asserts Dr. Isaacs' legal claims are non-sensical, yet appointed one of the top complex litigation firms in the country to try to defeat the supposedly rambling claims. One does not need a law degree to realize something is unusual about choice of counsel. There can be little doubt Gibson Dunn's billing in this case would bankrupt nearly anyone, and they are inappropriately using this implied threat to intimidate Dr. Isaacs.

Isaacs v. Keck USC et al
Case No. 19-CV-08000-DSF
4

effectively countersuing a student who purportedly failed out/to meet academic milestones. Gibson Dunn's arguments are simply not based in fact, e.g., they claim "nothing in the settlements acquits Isaacs," when the plain language does so. They gave themselves authority to declare that a well-intending doctor is a threat worthy of a lifetime campus ban. Beyond this case, if viewed as precedent Gibson Dunn's anti-SLAPP motion dangerously infringes upon first amendment rights of students, and should be denied and fees reversed.

Neither Gibson Dunn nor USC Keck have responded to the basic arguments already on the docket, which are highly relevant to the pending anti-SLAPP:

> "The anti-SLAPP claims that their threats were protected because they took place in protected pleadings and Meet & Confers. To be clear, Attorney James Fogelman's threatening email to Plaintiff was neither in a pleading, nor part of a telephonic meet & confer. It was an administrative decision, in a conflicted capacity as litigation counsel, to bar Plaintiff from going to USC police or the USC registrar's office. USC counsel, and Gibson Dunn, have acted as administrators for years in Plaintiff's dealings with the university. They have issued *instructions* to Plaintiff barring him from campus. These are actions taken, not legal pleadings. The campus ban has already resulted in important neuroradiological medical care being delayed…" (*Motion to Reconsider and Stay*)

The complaint alleges, and it must be accepted as true at this point, that USC has appointed outside counsel to administer all business with Dr. Isaacs. This is a longstanding dispute, the record is clear Dal Soglio blocked a police complaint in 2006, Plaintiff telephoned James Fogelman in August 2019 to reopen the matter, and Gibson Dunn responded by again blocking Plaintiff's access to USC Campus Police:

> "By extending their 2006 no trespass instructive to 2019, Defendants illegally issued a fourteen year, or apparently lifelong, campus ban against Plaintiff …USC and Gibson Dunn simply wanted to continue their fourteen year witness retaliation against Plaintiff and make him uncomfortable and unsafe in the Los Angeles area. **They also sought to prevent him from filing complaints with USC Police**, or mediating contract matters with the USC registrar, both of which they have successfully blocked for fourteen years. (*Complaint*, Count X)"

> "Plaintiff was ordered to use USC Counsel as a conduit for any communication with any USC student or faculty or employee. Around August 2006, **Plaintiff requested USC Counsel forward his criminal complaints to USC Police so that charges could be pressed**. A year later, he complained to USC counsel for not responding and running out statutes of limitations on some misdemeanor charges."(*Motion for Preliminary Injunction*, P.2)

A campus ban, and appointment of counsel as university business administrator, is not the usual course of action in litigation against a university. To be sure, Dartmouth has never banned Dr. Isaacs from communicating or setting foot on campus, despite the existence of protracted contentious litigation. The *Complaint Exhibits* show clear instructions from Katsufrakis (*Complaint Exhibits* p. 70, "No trespassing Letter") and Dal Soglio and Martin (*Complaint Exhibits* p. 65, "Transfer complaints to respective [law enforcement] entities") to conduct all communication through outside counsel. Again, neither USC nor Gibson Dunn have contested these facts. Dr. Isaacs reached out to James Fogelman to notice that he would like to re-open his criminal complaints to USC Police, in light of USC's pleadings in this present lawsuit essentially revoking/breeching/rescinding the settlement agreements. These were claims Isaacs raised with Dal Soglio in 2006 that were quite similar in nature to those in the ongoing criminal Operation Varsity Blues case against USC. In fact, Isaacs' claims were more egregious because USC's administration knowingly supported, employed favoritism, and participated in retaliation to help suppress Isaacs' allegations concerning an NIH donor's probable federal bribery/corruption of office acts.

Gibson Dunn is silent on their role as an administrator. From reading their motions, one would believe that they are being sued for something they said in a court trial, deposition, or official pleading. This is not the case. They are being sued for acting in a conflicted administrative capacity, where they blocked Plaintiff from conducting university business, blocked his first amendment right to assemble on public facilities, and now outrageously claim their first amendment rights as attorneys were trampled upon. For these reasons, Plaintiff notices the court that CCP permits fees sanctions

cases such as this where USC simply does not want to answer the complaint. Recent Ninth Circuit precedent effectively reduces an anti-SLAPP motion to either a 12(b)(6) or a Motion for Summary Judgement[4], which would also seemingly invoke FRCP Rule 11 for fees awards rather than the relevant CCP:

> "*If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5.*"

In sum, Dr Isaacs witnessed inappropriate admissions corruption at USC fourteen years (of which a personal benefactor relationship then extended to his disciplinary hearings) ago, and reported this to USC on January 9th 2006. On January 10th, 2006, armed USC guards marched into Isaacs' medical school classroom and served retaliatory orders upon him. In February 2006, USC faculty were given a document with the dates swapped – that armed guards served an order to Isaacs on 1/9/06, and he complained on 1/10/06(see 06-cv-3338 MSJ). The dispute continues to this day – with Gibson Dunn unilaterally maintaining the narrative that Isaacs deserves a campus ban, despite any due process finding as such. They should have learned better, at the latest, when *Operation Varsity Blues* brought RICO charges against USC. Rather, when Dr Isaacs protested his first amendment rights being violated, Defendants filed an anti-SLAPP outrageously claiming their first amendment rights[5] were violated. This is a perversion of the intent of the California legislature.

---

[4] Current Ninth Circuit guidance reduces a "CCP special motion to strike" to either a 12(b)(6) or MSJ depending on whether legal or factual sufficiency is challenged. Defendants purport to file their related MTD pursuant to 12(b)(6), which would render the CCP motion moot, however it is clear they attack factual sufficiency of the allegations – the underlying intent of the settlement agreements, the administrative role of counsel, the diligence of Dr Isaacs in discovering the AAMC profile, etc. For these reasons alone, discovery should progress under MSJ standards.

[5] To clarify any ambiguity, Plaintiff's Complaint and Motion for Preliminary Injunction asserted that Gibson Dunn acted in a conflicted administrative capacity by issuing the campus ban. Gibson Dunn inappropriately claims they, rather than Dr. Isaacs, are protected by the first amendment, because there is related litigation. If this were so, any law firm could execute illegal actions (be it financial, personal, or in this case, university business interference) towards a litigation adversary by taking unrelated actions against them, and then claiming litigation privilege. Even if the court accepts their argument that this was a "Meet & Confer," it nonetheless evidences the existence of an illegal campus ban (see Plaintiff's Anti-SLAPP opposition).

Simply put Dr. Isaacs is assenting to the dismissal of the Dartmouth Defendants due to the recently discovered evidence which indicates that USC Keck is the primary perpetrator of the injuries he has suffered by their unceremonious violation of their contract with Dr. Isaacs as well as the continuing campus ban.

WHEREFORE, Dr. Isaacs notes his non opposition to the Dartmouth Defendant's motions to dismiss.

Respectfully submitted, this 27th day of January, 2019.

/s/ Keith Mathews
Keith Mathews
NH Bar No. 20997
Associated Attorneys of New England
587 Union Street
Manchester, NH 03104
Ph. 603-622-8100
keith@aaone.law

**CERTIFICATE OF SERVICE**

I, Keith Mathews, do declare as follows:

I certify that a copy of the foregoing was delivered electronically to counsel for the Defendants with counsel, and emailed to those without known counsel.

Executed on this 27th day of January, 2019.

                                /s/ Keith Mathews
                                Keith Mathews
                                Attorney for Plaintiff