UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. JEFFREY ISAACS,<br>        Plaintiff,<br><br>               v.<br><br>DARTMOUTH HITCHCOCK<br>MEDICAL CENTER, et al.,<br>        Defendants. | CV 19-8000 DSF (RAOx)<br><br>Order GRANTING Motions to<br>Dismiss (Dkt. Nos. 29, 45, 58, 61,<br>72); Order GRANTING Special<br>Motions to Strike (Dkt. Nos. 64,<br>67) |

Plaintiff Jeffrey Isaacs has brought this suit challenging numerous
actions by various Defendants relating to the aftermath of Plaintiff's
tenure at the University of Southern California's (USC) Keck School of
Medicine and Plaintiff's subsequent termination from a residency
program at Dartmouth Hitchcock Medical Center.  All Defendants have
filed motions to dismiss and Defendants USC Keck School of Medicine
and Gibson, Dunn & Crutcher LLP have filed special motions to strike
under California Code of Civil Procedure § 425.16.  The Court deems
this matter appropriate for decision without oral argument. See Fed.
R. Civ. P. 78; Local Rule 7-15.

**A.    Claims Against the Dartmouth Entities**

Plaintiff does not oppose dismissal of Dartmouth Hitchcock Medical
Center and Geisel School of Medicine at Dartmouth.

**B.    Claims Against the University of Southern California**

The claims against USC based on any acts prior to 2008 are barred
by a combination of waiver and res judicata.  Plaintiff filed a lawsuit
against USC in 2006.  Plaintiff and USC entered into two settlement

agreements resolving that case.  As relevant here, in those agreements
Plaintiff waived all claims against USC predating the settlements.
Plaintiff then tried to avoid the settlements, but their validity was
finally adjudicated against Plaintiff in 2008.  Therefore, Plaintiff
cannot challenge the enforceability of the settlements because of res
judicata and his claims against USC for acts prior to 2008 are barred
by the waivers within those settlement agreements.

Some claims include alleged disclosures by USC in violation of
various agreements between the parties.  These alleged disclosures are
alleged to have led to Plaintiff's dismissal from his residency program
at Dartmouth.  However, they are alleged to have occurred in 2012,
well outside any relevant statute of limitations period.[1]  Even if
Plaintiff did not have any reason to learn of the breach until June 2015
(when he admits knowing of it), all relevant limitations periods would
have run prior to the filing of this suit in September 2019.  Any acts
that form the basis of the RICO claim that are not barred by the
settlement agreements are also barred by the statute of limitations.  A
RICO claim must be brought within four years of when the plaintiff
knew, or should have known, of his injuries.  Living Designs, Inc. v. E.I.
Dupont de Nemours & Co., 431 F.3d 353, 365 (9th Cir. 2005).  The very
last possible harm suffered by Plaintiff occurred in March 2014 when
the New Hampshire Board of Medicine posted its revocation order
revoking Plaintiff's right to practice medicine.

## C.    Claims Against the New Hampshire Board of Medicine

The New Hampshire Board of Medicine's status as a state agency
ultimately bars all of Plaintiff's claims against it.[2]

---

[1] The relevant limitation periods are four years for breach of contract and
rescission, Cal. Code Civ. Proc. § 337(a), (c), three years for the fraud claims,
Cal. Code Civ. Proc. § 338(d), and two years for the emotional distress claims,
Cal. Code Civ. Proc. § 335.1.

[2] Plaintiff asserts that certain individuals are also defendants in this case.
However, none of those individuals are named in the complaint.

The state law claims and any federal claims for retrospective relief are barred by the Eleventh Amendment. The Ninth Circuit considers five factors to determine if a governmental entity is an "arm of the state":

> (1) whether a money judgment would be satisfied out of state funds; (2) whether the entity performs central governmental functions; (3) whether the entity may sue or be sued; (4) whether the entity has the power to take property in its own name or only the name of the state; and (5) the corporate status of the entity.

Ray v. Cty. of Los Angeles, 935 F.3d 703, 709 (9th Cir. 2019) (internal quotation marks omitted). The first factor – the source of any money judgment – is the most important. Id. at 709-10.

By statute, New Hampshire provides sovereign immunity to the Board. N.H. Rev. Stat. § 329:17, IX. New Hampshire waives this immunity only for a limited class of claims not relevant here and provides that damages for any successful action will be paid from the state treasury. See N.H. Rev. Stat. §§ 541-B:1, I, II-a; 541-B:13. So, to the degree the Board can be sued at all, payment would be made from state funds.

The Board regulates the practice of medicine in New Hampshire. The New Hampshire legislature has explicitly determined this to be a public function for the purposes of protecting the public. N.H. Rev. Stat. § 329:1-aa ("The primary responsibility and obligation of the board of medicine is to protect the public."). The Court finds this regulatory function to be a "central government function."

As stated earlier, the Board generally cannot be sued. It also appears to have a limited ability to sue on its own behalf. The only mention of suit in its enabling statues is a right to sue for injunctive relief against unauthorized practice of medicine. See N.H. Rev. Stat. § 329:17-b. In such a suit, the Board is represented by the New Hampshire Attorney General. Id.

The Board's enabling statute does not appear to authorize it to take property in its own name.  The Board also does not have independent corporate status.  It is designated as an "administratively attached agency" within the New Hampshire Department of Health and Human Services.  N.H. Rev. Stat. § 329:2.  Such an agency is independent in substantive function, but not in administration.  See N.H. Rev. Stat. § 21-G:10.

All of the Eleventh Amendment factors favor a finding that the Board is an arm of the state.  Therefore, it is immune from suit under the Eleventh Amendment.

Plaintiff's federal claims for prospective relief could potentially survive under Ex parte Young, 209 U.S. 123 (1908), but those claims fail independent of the Eleventh Amendment bar.  Under Ninth Circuit law, state agencies are not capable of forming the specific malicious intent required by RICO and, therefore, cannot be liable under that statute.  Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 404 (9th Cir. 1991).  Further, Plaintiff has not plausibly alleged any racketeering acts committed by the Board or the Board's involvement in any enterprise.  Plaintiff fails to allege any association between the Board and the other Defendants other than that the Board received information from them in accordance with its statutory duties, and Plaintiff's claims of obstruction of justice, retaliation, and fraud are not supported by any allegations that satisfy any of those statutes.  Finally, "[s]tate agencies . . . are not 'persons' within the meaning of § 1983, and are therefore not amenable to suit under that statute." Maldonado v. Harris, 370 F.3d 945, 951 (9th Cir. 2004) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 70 (1989)).[3]

---

[3] The Court notes that, while not raised by the Board, all claims against the Board would presumably be barred by the relevant statutes of limitations. All challenged actions by the Board took place in 2013 and 2014.  See Compl. ¶¶ 150-51; 167-70.

### D.    Anti-SLAPP Motion by USC and Gibson, Dunn & Crutcher

The only other claims in this case are those against USC and its counsel, Gibson, Dunn & Crutcher LLP, that concern statements by Gibson Dunn on behalf of USC.  Plaintiff alleges that these statements amount to a "lifetime ban" on Plaintiff from entering the USC campus. The Court finds that the statements by Gibson Dunn were protected activity subject to the California anti-SLAPP statute and that they should be stricken.

Anti–SLAPP motions are subject to a two-step analysis with shifting burdens.  First, USC and Gibson Dunn must make a prima facie showing that Plaintiff's claims "arise[] from an act in furtherance" of their rights of petition or free speech.  Mindys Cosmetics, Inc. v. Dakar, 611 F.3d 590, 595 (9th Cir. 2010) (citations omitted).  They can meet their burden by demonstrating that the act underlying the challenged claim fits into one of the four categories of section 425.16, subdivision (e).  If USC and Gibson Dunn make this prima facie showing, the burden shifts to Plaintiff to demonstrate "a probability of prevailing on the challenged claims."  Mindys Cosmetics, 611 F.3d at 595.  "In deciding whether the 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'"  City of Cotati v. Cashman, 29 Cal. 4th 69, 79 (2002) (quoting Cal. Civ. Code § 425.16(b)).

An "act in furtherance of a person's right of petition or free speech" includes:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in

furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. § 425.16(e). "The California Court of Appeal has interpreted the anti-SLAPP statute's 'arising from' language to mean that a claim is based on whatever conduct constitutes the 'specific act[ ] of wrongdoing' that gives rise to the claim." Jordan-Benel v. Universal City Studios, Inc., 859 F.3d 1184, 1190 (9th Cir. 2017) (quoting Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP, 133 Cal. App. 4th 658, 671 (2005)). "Put another way, a court focuses its anti-SLAPP analysis on the specific conduct that the claim is challenging." Id. (citing Wang v. Wal-Mart Real Estate Bus. Trust, 153 Cal. App. 4th 790, 808 (2007)).

The statements by the Gibson Dunn lawyer were in response to e-mails from Plaintiff about Plaintiff's right to enter USC's campus and to contact "USC Police." At least one e-mail threatened "action against [Gibson Dunn]" and another noted that Plaintiff "expects a concrete answer or this will go straight to the judge." The statements that have been interpreted as a threat of a lifetime ban expressed USC's legal position that Plaintiff had no right and no reason to be present on USC property.

The statements by the Gibson Dunn lawyer that are at issue were statements of the legal position of USC in a long running legal dispute. They were made in direct response to threats by Plaintiff to seek legal relief against USC and Gibson Dunn itself. This qualifies the statements as acts in furtherance of USC and Gibson Dunn's right of petition or free speech.

Given that USC and Gibson Dunn satisfy the first prong of the anti-SLAPP analysis, Plaintiff now must show some likelihood of success on the merits. To meet this requirement, "the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." Oasis W. Realty,

LLC v. Goldman, 51 Cal. 4th 811, 820 (2011) (internal quotation marks
omitted).  Courts consider the pleadings and supporting and opposing
affidavits, but do not make credibility determinations or compare the
weight of the evidence.  Id.  Instead, courts "accept as true the evidence
favorable to the plaintiff and evaluate the defendant's evidence only to
determine if it has defeated that submitted by the plaintiff as a matter
of law."  Id. (internal quotation marks and brackets omitted).  The anti-
SLAPP motion must be granted "if the plaintiff fails to produce
evidence to substantiate his claim or if the defendant has shown that
the plaintiff cannot prevail as a matter of law."  Siam v. Kizilbash, 130
Cal. App. 4th 1563, 1570 (2005); see also Oasis W. Realty, 51 Cal. 4th
at 820.

In denying Plaintiff's motion for a preliminary injunction, the Court
found that Plaintiff has virtually no chance of success on the merits of
this case.  As for the particular "lifetime ban" related claims, Plaintiff
especially has no chance of success.  The statements are protected by
the California litigation privilege as they were made during litigation
between the parties in direct response to threatened legal action by
Plaintiff.  Plaintiff has also not alleged or otherwise given any reason
why USC is not within its rights to exclude him from the USC campus.
USC is a private school, and Plaintiff has not articulated any right to
be there if USC does not want him there.

## E.    Conclusion

The motions to dismiss and the motions to strike are GRANTED.
The Court finds that there is no reason to grant leave to amend.
Plaintiff has brought numerous lawsuits based on the same essential
dispute in courts all around the country over a period of more than ten
years.  He recently filed another case in this Court that he dismissed in
the face of motions to dismiss.  Nothing Plaintiff could allege could
avoid the settlement waiver, res judicata, statute of limitations, and
Eleventh Amendment bars to his claims.  Any further pleadings would
only be a futile waste of time and resources for all concerned.  The
Court will enter judgment in favor of Defendants without further delay.
USC and Gibson Dunn may file a motion for a determination of

7

reasonable attorney's fees under § 425.16 no later than February 24, 2020.

   IT IS SO ORDERED.


   Date: 2-3-2020                    _____
                                     Dale S. Fischer
                                     United States District Judge