Associated Attorneys of New England
Keith Mathews, Esq.
*Admitted Pro Hac Vice*
1000 Elm Street, Suite 803
Manchester, NH 03101
Tel: (603) 622-8100
Keith@aaone.law

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

DR. JEFFREY ISAACS

    Plaintiff,

vs.

DARTMOUTH HITCHCOCK MEDICAL CENTER
GEISEL SCHOOL OF MEDICINE AT DARTMOUTH
USC KECK SCHOOL OF MEDICINE
NH BOARD OF MEDICINE;
GIBSON DUNN & CRUTCHER

and JOHN or JANE DOE,

    Defendants.

Case 2:19-CV-08000-DSF-RAO

**PLAINTIFF'S OPPOSITION TO DEFENDANT USC'S MOTION FOR FEES**

## I. INTRODUCTION

In plain sight of the Court, Dr. Isaacs is being abused by Gibson Dunn and USC. Dr Isaacs is a talented physician who cannot even volunteer in the national coronavirus[1] emergency, because of foul play enacted by the Defendants to rob him of his medical license and competitive medical credentials. Unconscionably, after torturing Dr. Isaacs for over a decade with false settlement agreements, spoliated federal evidence, and ongoing process abuses (e.g. Anti-SLAPP against a devastated medical student) that took a massive toll on his health and career, Gibson Dunn has crafted a sinister motion to make Dr. Isaacs pay again – nearly a quarter million dollars in supposed punitive fees owed. Their rubbish pending Motion must be denied and referred to federal authorities.

Dr Isaacs called out improper federal corruption in 2005 as a medical student at USC. He protested specifically that an NIH director, who had overseen $30 million in NIH grants to USC's dean, intervened in a dispute with a classmate – a classmate whose very admission to USC med school itself was apparently the result of federal bribery.

USC's Deans and attorneys – detailed in the underlying RICO complaint – enacted a character assassination campaign, ousting Dr. Isaacs from USC's medical school. Isaacs went on to achieve neurosurgeon level board scores elsewhere, and signed two settlement agreements with USC. The first agreement, in 2007, sealed Isaacs' retaliatory discipline at USC. The second agreement, in 2008, cancelled all contracts and dismissed administrative charges. Despite the Court's order stating otherwise[2], Isaacs had no written proof that USC breached these agreements until 2019, when he found the AAMC profile. The AAMC profile was improperly withheld from federal discovery in 2007; Defendants have not disputed that; equitable estoppel tolling of claims should have applied, and is, respectfully, the subject of Ninth Circuit appeal.

---

[1] The ongoing controversy Isaacs sought to clarify with declaratory judgment, whether or not his academic records at USC were sealed and expunged, is even more apparent today than ever.
[2] The Court appears to be citing the NH Board decision declaration that "no evidence exists that USC ever complied with the settlement." Of course, a lack of evidence of compliance in 2015 is different from the 2019 discovery of AAMC profile breach and discovery violations.

Over the course of a decade, the Defendants have ratcheted up their fictional narrative against Isaacs each time he seeks to simply enforce his right to be a physician. Isaacs was described as "sensitive, soft spoken" by his first semester USC professor Fred Kuyt. Within weeks, USC's Deans sent armed officers into his classroom and requested the NIH classmates' ex-boyfriend file a complaint that Isaacs was a "threatening" danger to the class.[3] Nonetheless Dr Isaacs continued on at other hospitals, well-socialized with his colleagues. Only again six years later, as the complaint alleges through John Doe, or the AAMC profile, Defendants accused Isaacs of "dishonesty" and revoked his medical license, for merely complying with the USC settlement agreement. Isaacs complained of retaliatory evidence spoliation at Dartmouth, which resulted in Dr Jim Yong Kim's termination from the president-appointed role as Head of the World Bank.

Isaacs filed the underlying claim in 2019, seeking declaratory-injunctive relief that reconciled three divergent competent authority interpretations of the aforementioned settlement agreement. USC's president – a close friend of Jim Yong Kim – apparently authorized hiring Gibson Dunn to arrest Dr. Isaacs' claims, which had been progressing in the federal government. Gibson Dunn, eager to comply, ratcheted up the allegations once again, banning Isaacs' from all USC public facilities for life, their fictional narrative again insinuating something far different than the accomplished physician scientist with neurosurgeon level achievements.

Gibson Dunn has hence succeeded in denying Isaacs any benefit of his settlement agreements, effectively banning a talented physician scientist from ever contributing to the medical field. They have humiliated and ostracized Isaacs with a new campus ban, and now, incredulously, that want the victim of their legalized bullying to pay nearly a quarter million dollars in legal fees.

---

[3] The horror of the false allegations seems to have been the causation of PTSD like syndrome, and this Court ordering a further undue punishment would seemingly compound his condition.

Isaacs v. Keck USC et al
Case No. 19-CV-08000-DSF

The Court's order stated that Gibson Dunn was protected in their issuance of the campus ban. But, as Attorney Mark Austin argued from Burke Williams Sorenson, the protected speech embodied underlying evidence of illegality. Put simply, if Gibson Dunn had described burying dead bodies in a legal pleading, it would be absurd to grant them immunity to the underlying murder. USC and Gibson Dunn have no right carrying on their damaging false narrative that Dr. Isaacs is some kind of campus terrorist, "Dr Death" physician, or "Harvey Weinstein" rapist.[4] To the contrary, Dr. Isaacs has quietly kept to himself for a decade hoping one day the legal system will free him to help others as a physician. He has in this time developed computer applications used by hundreds of millions, and is awaiting a chance to volunteer in the COVID-19 emergency. He is, by all reasonable accounts, far from the image Gibson Dunn and USC endeavor to portray. Dr Isaacs was a victim of bullying at USC, plain and simple. There is no reason USC should be awarded legal fees for destroying this man's career, breaching their settlement, and wrongfully shaming him with a lifelong campus ban.

The Defendants use of *res judicata* is misleading, and also prompts clarification necessary of this Court's order wherein it states "Plaintiff then tried to avoid the settlements, but their validity was finally adjudicated against Plaintiff in 2008."

In fact, the chief reason Plaintiff tried to "avoid" the 2008 global settlement was because he feared it would make the 2007 discipline sealing unenforceable, which is precisely what USC is attempting to now do by suggesting they are the "prevailing party" on the contract dispute. Fortunately Plaintiff did foresee this, and pre-empted a response from USC stipulating, declaring, and/or waiving such a defense:

---

[4] The worst fact-based allegation ever levied against Dr. Isaacs by USC is that he mocked the NIH classmate's entitled attitude when she vandalized a school tablet with "Wanna F*ck" in indelible ink.

Isaacs v. Keck USC et al
Case No. 19-CV-08000-DSF

"*Plaintiff argues in his Opposition that Paragraph 22 of the Settlement Agreement may have "accidentally" superseded the provision contained in the parties' earlier partial settlement in which USC agreed not to "release or disclose Isaacs' disciplinary records to any third party" in exchange for the Plaintiff's dismissal of the Individual Defendants from the lawsuit. Paragraph 22 makes clear, however, that the Settlement Agreement supersedes prior agreements reached on the "subject matter" covered in the Settlement Agreement. The current "global" Settlement Agreement does not deal with nor address sealing of disclosing Plaintiff's disciplinary records, and therefore has no effect on the prior partial settlement*" (06-cv-3338-GAF Docket #80 p.10)

Hence, Judge Feess never touched or ruled upon the first settlement agreement and its modification of the disciplinary academic records. USC's pleading was clear that the subject matter of "sealing the disciplinary records" had nothing to do with that motion. For this reason, and the fact this Court denied discovery into these matters, the benefit assigned to Isaacs in the first settlement agreement remains unadjudicated and/or in conflict amongst competent authorities. For USC to suggest they prevailed on this matter – without any discovery – is disingenuous.

Isaacs had every right to attempt to enforce both the settlement agreements by filing this lawsuit. USC does not deny that they withheld the AAMC profile from discovery. Three independent law firms brought this case believed equitable estoppel should apply. While this Court did not elaborate upon why it chose not to estop the statute of limitations, that is far from reason to award attorneys' fees. USC has unclean hands; they never honored the settlement agreement. They refuse to answer what consideration Isaacs achieved. They state it did not "acquit" him, when it did. To suggest they prevailed on the contract claim here under Section 1717 is simply not the case. Second, even Defendants concede that California Code 1717 precludes fees for the dismissed claims: *"where an action has been voluntarily dismissed . . . there shall be no prevailing party for purposes of this section*." Furthermore, USC's attempt to frame this case as litigating pre-settlement activity is patently false. Plaintiff has been clear in the injunction and all other pleadings that should the court declare no consideration existed in the settlements, i.e. they were subject to rescission, only then would he reopen pre-2008 claims. The

argument that Plaintiff provided some background reference in his federal court pleadings in not compelling; in fact, it is the same (but incorrectly applied) first amendment litigation right Defendants purport to rely upon in their Anti-SLAPP claim. This case did not re-litigate pre-settlement claims (although that action is pending shortly), and seeking a quarter million dollars in attorneys' fees[5] suggesting otherwise is abuse of process.

In addition to being morally wrong and ill-intended, Gibson Dunn's motion fails for other reasons. The pending motion is in defiance of this Court's order to limit the fees request to 425.16, which would amount to $5,092 .

USC and GD are merely hoping this Court will rubber stamp their inhumane treatment of Dr. Isaacs in the false light of litigation First Amendment privilege. But it is Dr Isaacs with the First Amendment right to assemble at USC public facilities. The Court, *sua sponte* raises an argument never raised by USC: That as a private school, they can ban whomever they choose. But this is not correct; Supreme Court holdings cited earlier in the docket make clear that public access facilities such as hospitals, sporting venues, etc operated by USC cannot deprive Dr. Isaacs access without due process. The defendants have never proffered any semblance of due process; James Fogelman's doomed unilateral decision to ban Isaacs from USC campus does not represent due process. In short, USC does not deserve the $5,092 of time spent on their Anti-SLAPP motion according to their affidavit. The campus ban was retaliatory and inappropriate. USC uses an opportunity where they are awarded arguably $5,092 in fees to attempt to collect a quarter of a million dollars from a Doctor who cannot practice because of an agreement drafted by their counsel; this is an act of continued bullying by USC.

## II.     BACKGROUND AND PROCEDURAL HISTORY

---

[5] Time and time again, USC argued that Plaintiff's claims were non-sensical and rambling. USC replaced a small local firm , Dal Soglio Marten, with Gibson Dunn on this case last year - the top litigation firm in Los Angeles - and spent a quarter million dollars on the claim. Plaintiff's position is that USC's is politically retaliating against Isaacs for a related colleague's termination from the World Bank presidency. This abuse of process will be investigated and reported to authorities.

### III.   LEGAL STANDARD

Under Cal. Civ. Pro. § 425.16(c)(1): "in any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." "Where a complaint contains both anti-SLAPP claims and non-anti-SLAPP causes of action e.g., federal claims, the SLAPP claims alone may be stricken and a motion to dismiss may be directed to the non-SLAPP causes of action. Kearney v. Foley and Lardner, 553 F. Supp. 2d 1178, (SD Cal 2008) (citations omitted). The Courts have found fees beyond those necessary for the party to prevail on the anti-SLAPP motions when "all of the plaintiffs' claims involve a common core of facts and are based on related legal theories." Id.

### IV.   ARGUMENT

**A.  Section 6 of the Agreement Does Not Apply To The Awarded Fees**

USC, in an attempt to extend their fee award beyond the fees permissible under Cal. Civ. Pro. §425.16(c)(1) rely on the Attorney's fees permissible under the contractual agreement between the parties which states the following:

"With the exception of United States District Court Case No. CV-06-3338 GAF (Ex), which is fully and finally settled herein, [Plaintiff] represents that he has not filed any other lawsuits, charges, claims for arbitration, complaints, or appeals of any kind with any court or administrative or governmental agency against USC or any other persons or entities released herein, and he agrees that he will not file any lawsuits, charges or complaints or appeals at any time hereafter based on, referring to, or **incorporating any events, acts or omissions through and including the date hereof.**" USC in a creative and misguided interpretation of this contract section are asking for fees that the Court did not award. Additionally it is important to note that USC has not come to this contractual dispute with clean hands, the court has not ordered as to whether the contract has been breached by USC but would

need to do so if USC was to collect their fees under this theory. In equity it is inappropriate to order USC's fees under an order that does not address the issue of their breach of that contract.

Preliminarily this argument suffers from the same maladies as the award of fees under Cal. Civ. Pro. §425.16(c)(1) which is that USC has filed affidavits and fees unrelated to any argument made related to claims that reference actions before the contracts were entered in to. Additionally because the Court's order orders fees for the anti- SLAPP motions only the Court has not delineated which causes were dismissed because of the contract and which causes were dismissed unrelated to the contract. The language in this Court's order gives no clarity here. "As relevant here, in those agreements Plaintiff waived all claims against USC **predating** the settlements. Plaintiff then tried to avoid the settlements, but their validity was finally adjudicated against Plaintiff in 2008. Therefore, Plaintiff cannot challenge the enforceability of the settlements because of res judicates and his claims against USC for acts prior to 2008 are barred by the waivers in those settlement   agreements."

It is disputed that any claims made in this complaint predate the contract between the parties. The Court indicates that "Some claims include alleged disclosures by USC in violation of  various agreements between the parties." In fact, all of the Plaintiffs causes of action can be traced to post contract behavior of the parties, which moots the Defendant's argument. Without discovery it would be impossible to determine what acts predate the agreements, two distinct agreements issued one year apart, and which do not. The Defendant's theory that all of the claims brought forth in this matter predate that contract is not found on the record or in this Court's order.

**B. USC Is Not Entitled to Fees and Costs Because They Did Not Prevail On The Contract**

a. The Instant Action

It is of note that USC does not address whether the claims on which they prevailed were related to acts that occurred before the 2008 contract was signed or after, this is because the record in this case

does not allow for such a determination. Any argument regarding this issue should have been made with particularity. What if any of their fees they allege occurred due to the defense of claims related to acts that occurred before the contract was signed is a mystery not clarified by the present pleading.

Cal. Civ. Code §1717(a) provides: "In any action on a contract, whether the contract specifically provides that attorney's fees and costs, which are incurred to *enforce that contact*, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees.

It would be unjust and unreasonable for USC to breach the contract, and then be protected because the court determined that the statute of limitations ran on that breach and then for them to recover fees because they prevailed regarding the contract they are alleged to have breached. Such a finding would encourage parties to hide a breach of contract for as long as possible. Again the Defendants seem to ignore this Court's order, which dismisses the Plaintiff's contract claims on Statute of Limitation grounds not contractual ones.

Plaintiff notes that his requests relate to acts taken after the settlement agreement was signed, in fact the amended complaint was filed due to the discovery of the wonton disclosure of Dr. Isaacs' attendance at USC Keck contrary to the parties agreement. Dr. Isaacs makes it abundantly clear that his amendment was due to the discovery that USC was publishing his attendance publicly since the agreement was executed. These claims were dismissed on statute of limitations grounds, ignoring equitable estoppel arguments, and not due to a determination that the contract was not breached. USC's unclean hands when it comes to the contract at issue must be addressed before the Court enters the requested fees.

b. Prior Action

This argument is especially clear when it comes to the prior action. At the point that action was dismissed the only causes of action against USC were the RICO matter and the request for injunctive relief. By its nature, a request for injunctive relief cannot, and here does not, reflect the actions of USC prior to the contractual formation. It merely requests acts in the future.

Additionally, the RICO claim in the prior action complaint referenced pre settlement acts of the Defendant only for background, focusing on the dissemination of information by "Jane and John Doe" after the parties agreed Dr. Isaacs' time at USC would not be disclosed. USC has failed to present any argument by which the contract between the parties would entitle them to the fees they seek here for their defense of the first action.

   c.   Conclusion

USC has failed to make any argument that would entitle them to relief under the contract. The claims brought against USC in both actions were related to their behavior after the contract was signed. USC was not a prevailing party when it came to the enforcement of that agreement. There is no argument that would entitle USC to $182,925.97 in fees and $1,009.32 in costs under the contractual attorneys between the parties.

**C.   The Defendants Should Not Be Awarded Fees Under Federal Rule of Civil Procedure 41(d)**

The Plaintiff was *pro se* during the entirety of the previous action. Although Dr. Isaacs is a more sophisticated litigant then most pro se parties he can hardly be expected to defend his case against a firm with the resources of Gibson Dunn without making some errors. Additionally, his first complaint was filed before he received the additional discovery which made it clear that USC was publishing his attendance and that was likely how his attendance there was being discovered. All of his pleadings, most notably the motion for preliminary injunction, were absolutely clear that he sought declaratory judgment for or against rescission, *before* he would contemplate re-opening pre-Settlement claims.

Particularly with regards to that issue, USC should not be able to recoup their fees. The reason for that amendment was that USC had failed to provide Dr. Isaacs with the evidence that was in his file there. USC did not dispute they withheld critical evidence from federal discovery production. The complaint was amended due to additional information being discovered of illegal evidence spoliation. The AAMC profile was not in a 2007 student record discovery production, but it mysteriously appeared years later in an identical student record request. The Court should not let USC off the hook so easily, denying even discovery into the matter.

Dr. Isaacs prior action was superseded not because he was being vexatious or because he was forum shopping (he refiled his compliant in the same court). It occurred because 1. Dr. Isaacs discovered new evidence after he filed his first complaint, 2. Because Dr. Isaacs was unable to find counsel to defend his case for some time and 3. Because the facts that give rise to Dr. Isaacs complaint are by their nature difficult to ascertain.

In addition, USC references a useful chart which makes clear that the time and energy put in to defending the first case was useful in their defense of this case. It would be inequitable to award USC's fees for defending the prior case when that time and effort improved their ability to defend the current case. *See.* Esquivel v. Arau, 913 F.Supp 1382 (Dist. CD Cal 1996) (finding a court should not award costs under Rule 41(d) for costs associated with past work that will still be useful to the defendants in the present litigation).

In LegalForce, Inc. v. LegalZoom.com, Inc., a 2019 the Northern District of California applied the 'American Rule' to a request for fees under Rule 41(d), which states that "attorney's fees are not generally a recoverable cost of litigation." Case No. 18-cv-07274-MMC (Dist. N.D. Cal. 2019). recognizing that "an exception to American Rule exists where the underlying statute defines costs to include attorney's fees." Id. *citing*. Esposito v. Piatrowski, 223 F.3d 497 (7th Cir. 2000). The Court

goes on to hold that Rule 41(d) does not specifically allow for collection of attorney's fees and therefore that LegalZoom cannot collect its attorneys fees under the statute. Id. The conclusion of the Northern District is that Attorneys fees are not collectable under Rule 41(d) that holding should be persuasive on this Court and the decision should be consistent with that Courts.

This request for fees is unapologetically unfair. To task a *pro se* litigant with defending his case against such a sophisticated law firm and to have the cost of his inability to do so in the six figure range is unreasonable and unjust. For the record, it is believed Isaacs did meritoriously prosecute his claims, and the Ninth Circuit will find the same.

It is also of note that USC raised this request for fees previously in this matter. The Court did not grant that request in its final order, narrowly awarding fees for the anti- SLAPP motions. If USC was requesting the court reconsider that decision it should have expressly said so in its motion. USC has failed to follow the Court procedure for doing so, they have not requested a meet and confer on this issue, nor have they plead or met the standard for reconsideration. Due to these failures and because of the unjust nature of the requested order USC's request for fees must be denied.

**D.   USC is Not Entitled to the Fees and Costs It Incurred on All Claims**

This issue is discussed above under subsection B, in fact this section appears to be a rehashing of the same argument addressed above. As discussed above Section 1717(a) applies when a party has incurred fees to enforce a contract. The fact that this provision is to be construed liberally does not put USC any closer to its goal of collecting fees for this victory which as discussed above was not regarding the interpretation of the contract but instead was due to an argument regarding statute of limitations.

If USC would like to waive the statute of limitation argument and move to the interpretation of the contract, specifically to resolve the question as to whether they were in breach, the Plaintiff would be happy to do so. But as the record currently stands, USC did not win on their interpretation of the

contract they received an order which indicated that the statute of limitations prevents the court from looking in to whether they breached their contract with Dr. Isaacs.

It would be unjust and against the statute to order fees under these circumstances. To do so would open litigants to liability for fees when they request the court interpret contractual provisions that they are correct about, when those claims are barred under procedural rules.

Section 1717(a) includes the phrase "incurred to enforce the contract" to prevent the very result that USC is now requesting. USC did not incur these fees because it did not breach the contract under the court's interpretation of the statute, rather because any alleged breach arguably occurred more than four years ago and outside the realm of equitable estoppel. To award USC such a large request for legal fees without reaching the underlying question of whose interpretation of the contract is correct is unjust and runs afoul of the statute.

**E. The Fees Incurred by USC Are Not Reasonable, Nor is This Request Clear**

Putting the cart before the horse, USC has not delineated what fees they are seeking under their myriad of arguments. Making this section of their motion difficult, if not impossible to respond to. It bears repeating that the Court's order was for limited fees for the drafting and defense of USC's anti SLAPP motion and for that nearly $200,000 is clearly unreasonable, and not supported by the record.

Plaintiff agrees that the "lodestar" method is the correct method for calculating fees but what has been requested and provided does not delineate what fees are recoverable under which argument. This request therefore serves to mask the arguable reasonableness of the requested fee award under each theory, making the full request unreasonable.

USC also fails to provide evidence that these legal fees have been paid to their counsel for these activities, which must be documented in full in order to recuperate their fees. *See*. Ketchum v. Moses,

24 Cal. 4th 1122, 1131-33, 1141 (2001). The starting point for analyzing the reasonableness of attorney's fees and costs is a determination of the actual fees and costs incurred. Id.

In order to reach a determination on the reasonableness of fees Plaintiff requests a full evidentiary hearing so that it can be parsed out on the record which fees apply to which legal theory, whether those fees were actually paid and what each time entry is in reference to. Without such a hearing any award of fees is wholly unreasonable.

## V.     CONCLUSION

By this outrageous request for nearly a quarter of a million dollars in legal fees USC has taken this Court's narrow order on fees for their anti SLAPP motion and expanded it without authority or right. By doing so they have made arguments that were not taken up by this court in its final order, and not supported by it.

USC presents by their motion a number of theories as to why they are entitled to all of their legal fees, none of which are related to the fees actually awarded by the court. USC has unclean hands when it comes to the contract they are attempting to enforce and therefore should not be granted any fees under the presented theories. On February 3, 2020 this Court entered in to a Final Order in this matter. The order indicates the following request of the Court: "The Court will enter judgment in favor of the Defendants without further delay. USC and Gibson Dunn may file a motion for a determination of reasonable attorney's fees **under § 425.16** no later than February 24, 2020." The Court's request for a motion was clear, that a motion for fees should be limited to those available under Cal. Civ. Pro § 425.16. Instead of filing a request for those fees USC takes the unreasonable tact of attempting to warp this Court's order to create a finding for Attorney's fees that was not granted by the Court. USC's motion requests all of the fees that they incurred in both this and a previous action, well beyond the fees that were ordered by the Court here.

Dr. Isaacs made a claim that USC breached their contract with him. The Court did not order that the contract was not breached by USC but instead found that he had missed his window to sue USC on this issue and dismissed his claim under the relevant statute of limitations. In light of that procedural dismissal USC inexplicably takes the opportunity to attempt to collect legal fees from Dr. Isaacs. This type of unilateral expansion of court orders cannot stand. Dr. Isaacs is being abused by USC by this unreasonable and unlawful request.

Dr. Isaacs requested from this court an interpretation of the contract he signed with USC, he did not receive one, but neither did USC. These are ongoing matters, and likely to be adjudicated in the future. The parties were informed that the Court would not hear these arguments because statute of limitations purportedly expired. Dr. Isaacs maintains that USC breached this contract causing him years of intense stress and aggravation and effectively destroying his medical career. To have that very entity request close to a quarter of a million dollars in legal fees claiming that they won the contractual interpretation issue when his case was dismissed on statute of limitations grounds is unconscionable. It is bad enough that Dr. Isaacs has not received the benefit of his bargain with USC, and has been prevented from seeking justice for their failures under the contract because of the timing of this litigation, that he be expected to pay fees for the full extent of the litigation is against the interest of justice.

The Court correctly notes that Dr. Isaacs has spent a large amount of his life litigating these issues. It is unfortunate that a statute of limitations issue prevents him from pursuing them further but he should not be expected to pay such a large fee award because his argument on that issue did not get considered in discovery under equitable estoppel theory.

The fees motion before this court is a continuation of the abusive litigation conduct that USC has targeted at Dr. Jeffrey Isaacs throughout this case. USC requested fees under a myriad of theories

throughout this litigation, the only fees that were ordered were under Cal. Civ. Pro. § 425.16, this motion requests a reconsideration of the final order, not the enforcement of it.

Given that USC missed the deadline to file for fees under Cal. Civ. Pro § 425.16, and miraculously have failed to delineate those fees that would be recoverable under the statute in their motion, they have waived their request for those fees. Additionally, their request for all of their legal fees should be dismissed because of *res judicata* and because their legal arguments for those fees fail. Judge Feess never touched or ruled upon the meaning of sealed records, i.e. the individual settlement agreement. Isaacs provided substantial evidence that warranted discovery into USC's academic records modification policy. Even absent discovery, he should have prevailed as the first settlement agreement was a "clean" negotiation and clearly intended to let Isaacs move on with his medical career. USC didn't prevail on this contract dispute. They've just confused about a dozen separate venues on an area of little legal precedent- sealed academic records.

Not only is their motion not appropriate given the final order of this Court it also serves to obfuscate the issue that should be before this court, how much of USC's fees were spent on their anti-SLAPP motion. By failing to request those fees when asked USC has waived its request for those fees and should therefore be awarded no attorney's fees under the final order. Moreover, in light of the national emergency, the Court should adjudicate as a matter of first impression that Dr. Isaacs' academic record is sealed and expunged, and thereby issue a court order restraining and enjoining any entity from interfering with his right to volunteer immediately on the basis of academic disciplinary credentials.

Isaacs v. Keck USC et al
Case No. 19-CV-08000-DSF

Respectfully submitted, this 7th day of April, 2020.

/s/ Keith Mathews
Keith Mathews, Esq.
NH Bar No. 20997
Associated Attorneys of New England
PO Box 278
Manchester, NH 03105
Ph. 603-622-8100
keith@aaone.law

**CERTIFICATE OF SERVICE**

I, Keith Mathews, do declare as follows:

I certify that a copy of the foregoing was delivered electronically to counsel for the Defendants with counsel, and emailed to those without known counsel.

Executed on this 7th day of April 2020

/s/ Keith Mathews
Keith Mathews
Attorney for Plaintiff